EOD 1-31-00

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT

00 JAN 28 PM 5:28

TX EASTERN-BEAUMONT

BY _____

| | | | |
|---|---|---|---|
| (1) | Ethan Shaw and | § | No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § | Jury Demanded |
| | of themselves and all others | § | |
| | similarly situated | § | |
| | | § | |
| VS. | | § | |
| | | § | Class Action Complaint for |
| (1) | Toshiba America Information | § | Equitable Relief and Monetary |
| | Systems, Inc., | § | Damages |
| (2) | NEC Electronics, Inc. | § | |
| (3) | Toshiba Corporation, | § | |
| (4) | Toshiba America, Inc., | § | |
| (5) | Toshiba America Electronic | § | |
| | Components, Inc., and | § | |
| (6) | NEC Corporation | § | |

**ORDER OF FINAL APPROVAL
AND
FINAL JUDGMENT**

On this 28th day of January, 2000, the Court considered the Motion For Final

Approval Of Class Action Settlement and the Settlement Agreement And Release filed with the

Court preliminarily approved by the Court on October 28, 1999, and the First Amendment To

Settlement Agreement And Release dated January 19, 2000 and filed with the Court on January

19, 2000 , and the Second Amendment To Settlement Agreement And Release dated January 19,

2000 and filed with the Court on January 19, 2000, and the objections regarding the settlement

and Settlement Agreement. A copy of the Settlement Agreement And Release and the First

Amendment To Settlement Agreement And Release and the Second Amendment To Settlement

Agreement And Release are attached as Exhibit 1 and incorporated herein by reference and are

called herein the "Settlement Agreement." When capitalized words are used in this Final

330

Judgment they have the same meaning as those terms have in the Settlement Agreement, unless

another meaning peculiar to such term is attributed to the term expressly by this Final Judgment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Court finds that the Settlement Class, as defined in the Settlement

Agreement, meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure

("FRCP 23"), and certifies a Settlement Class defined as follows:

> All Persons, other than the Settling Defendants, who are United States
> citizens or residents and who Own a Toshiba Laptop Computer of any
> model, except for those Toshiba Laptop Computer Units excluded by the
> next sentence. All models of Toshiba Laptop Computers are within the
> settlement class, except: [A] Librettos (which do not contain internal
> floppy disk drives); and [B] models purchased after November 8, 1999,
> that have a serial number that end in a "U". (Some models purchased after
> November 8, 1999, other than those with serial numbers that end in a "U,"
> are within the Settlement Class).

All capitalized terms have the same meaning as those capitalized terms have in the Settlement

Agreement.

2.     The Court finds that the members of the Settlement Class are so numerous that

joinder of all members would be impracticable.  The Court further finds that there are questions

of law and fact common to the claims of the members of the Settlement Class.

3.     The Court finds that Ethan Shaw and Clive D. Moon are designated as class

representatives and are found to be adequate representatives with typical claims. Counsel for the

class, Wayne Reaud and Mike Jamail of The Reaud Law Firm, Hubert Oxford III of Hubert

Oxford III P.C., DeWayne Layfield, and Buddy Low, Gary Reger, Allan Jones, and Jack Carroll

of Orgain, Bell & Tucker, L.L.P., and the other members of the foregoing firms who are actively

involved in this case are found to be experienced and skilled attorneys capable of adequately

representing the Settlement Class. Plaintiffs and Settlement Class Counsel have no interest antagonistic to or in conflict with the interests of the Settlement Class Members.

4.      The Court finds that certification of the Settlement Class is appropriate pursuant to FRCP 23. Further, the Court finds that the questions of law or fact common to the class "predominate" over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy and that certification also is appropriate under both FRCP Rule 23(b)(2)and 23(b)(3).

5.      The Court approves the Settlement Agreement and finds that the Settlement Agreement is a reasonable compromise of the claims of the Settlement Class and is fair, just, reasonable and adequate to, and in the best interests of, the Settlement Class. The settlement achieves a definite and certain result for the benefit of the Settlement Class that is preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay and cost. The Court also finds that the Settlement Agreement was reached by the parties after extensive discovery and intensive arms-length negotiations involving an independent court appointed mediator, Thomas A. Thomas.

6.      The Court determines that the class action settlement notices were given as required by this Court's orders dated October 28, 1999 and November 4, 1999. The Court finds that the notice given of the proposed settlement, as approved by the Court's order dated November 4, 1999, was the best practical notice under the circumstances to provide and provided all class members desiring to object to the Settlement Agreement with fair and adequate notice of the terms of the proposed settlement and of the hearing to consider final approval commencing on January 19, 2000. The Court finds that the notice satisfied the requirements of FRCP 23 and applicable law.

7.      The Court therefore finally approves the Settlement Agreement and its plan of distribution and the parties are directed to implement the Settlement Agreement and its plan of distribution in accordance with its terms.  All terms, definitions and provisions of the Settlement Agreement are adopted and incorporated herein.  The Settlement Agreement is binding on the parties to the Settlement Agreement and the Settlement Class Members.

8.      When this Final Judgment becomes "Final", the Plaintiffs and Settlement Class Members shall be forever barred from bringing or presenting any action or proceeding against any of the Released Parties (as defined in the Settlement Agreement) that involves or asserts any of the claims expressly released in the Settlement Agreement, and that the Plaintiffs and Settlement Class Members shall be deemed to have released and forever discharged the Released Parties from all claims expressly released in this Settlement Agreement.  The Retained Rights (as defined in the Settlement Agreement) are not released or affected by this Final Judgment and are preserved.  All relief not expressly granted the Settlement Class Members is denied.

9.      Pursuant to a separately filed opinion, the Court hereby awards the following fees and expenses and finds that same are fair and reasonable:

    i.      [A] Total attorney fees to Settlement Class Counsel of $147,500,000. The attorney fees awarded to Settlement Class Counsel shall be payable by Settling Defendants and secured as provided in the Settlement Agreement.
    [B] Total attorney fees of $6,000,000 for the coordinated efforts of objectors' counsel:

            Joseph C. Blanks;
            Hogan, Smith & Alspaugh;
            Thompson Hutsler Law Firm;
            Lindow & Treat;
            Pritchard, McCall & Jones;
            Cochran & Cochran;

4

Holman & Langdon, L.L.P.;
Cummins & Cronin;
Hooper & Griffis;
Bishop & Wilson; and
Paul S. Rothstein.

Said fee be paid to "Robert Cummins as Trustee for Objectors' Counsel" to be distributed among the listed objectors' counsel in accordance with objectors' counsels' agreement. The Court further orders that the Guaranteed Fund available to the Settlement Class Members entitled to the Cash Remedy should not be reduced by the award of attorneys' fees to the objectors' counsel and that the benefits to the Settlement Class, both monetary and non-monetary, should not be reduced in any fashion. To accomplish this, the Court orders that the fees awarded to these objectors' counsel are to be paid by Class Counsel and the Settling Defendants as they may agree, but without diminution in the value afforded to the class. The $6,000,000 attorney fee awarded to said listed objectors' counsel shall be payable as and when Settlement Class Counsel is paid the fee awarded to them;

ii.    $25,000 to Ethan Shaw and $25,000 to Clive D. Moon as class representative fees, payable as provided in the Settlement Agreement;

iii.   Two Million Nine Hundred Ninety-nine Thousand Nine Hundred Ninety-nine and 00/100 Dollars ($2,999,999.00) to reimburse Settlement Class Counsel under §10.3 of the Settlement Agreement, for expenses and costs incurred in prosecution of this case;

iv.     An additional amount of fees and expenses payable to Settlement Class Counsel for responding to questions of Settlement Class Members as provided in §10.2 of the Settlement Agreement and an additional amount of fees and expenses for administrative functions as provided in §13.1 of the Settlement Agreement;

10.   A.     Citibank, N.A. is hereby appointed Claims Administrator pursuant to the Settlement Agreement.

B.     The Claims Administration Agreement by and between the Settling Defendants, Settlement Class Counsel and the Class Administrator, and the related letter agreement by and between Citibank, N.A. and ACS Financial & Securities Services, with respect to Claims Administration pursuant to the Settlement Agreement, a copy of both of which are attached as Exhibit 2, are hereby approved and incorporated herein by reference. Settlement Class Counsel are authorized and directed to execute and deliver and perform the Claims Administration Agreement (one of the agreement attached as Exhibit 2) in the capacity therein stated, as may be affected by the said related letter agreement by and between Citibank, N.A. and ACS Financial & Securities Services. Without limiting any other retention of jurisdiction, this Court retains jurisdiction over the Claims Administration Agreement and said letter agreement by and between Citibank, N.A. and ACS Financial & Securities Services, and the respective parties to each of them as provided therein.

C.     Based on an "Effective Date" of March 10, 2000, which assumes that no FRAP 4 motions are timely filed and no notice of appeal is timely filed, the Court hereby establishes June 12, 2000 as the "Final Claims Bar Date". Based on an "Effective Date" of March 10, 2000, which assumes  that no FRAP 4 motions are timely filed and no notice of

appeal is filed, the Court hereby sets the following other deadlines which follow from the Effective Date and modify and supersede the dates shown on Exhibit A to the Settlement Agreement as follows: the "Last Day To Elect Hardware Replacement" is October 12, 2000; and the second installment of attorney fees owed to Settlement Class Counsel is due and payable on March 10, 2001.

D.     The Court hereby establishes October 12, 2001 as the "Closing Date" (as provided in the Settlement Agreement) by which Claims Administration (as defined in the Settlement Agreement) shall be fully completed and closed.

E.     The Claims Administrator (and its owners, officers, directors, partners, shareholders, members, manager, employees, and agents) shall be liable only for acts and omissions and conditions as provided in the Settlement Agreement and the Claims Administration Agreement approved above.

11.     Any portion of the Guaranteed Fund (as defined in the Settlement Agreement), excluding interest, that is not paid to allowed claims entitled to the Cash Remedy under the Settlement Agreement shall be paid to the Charity, as provided in the Settlement Agreement.

12.     Pursuant to and consistent with the Settlement Agreement, judgment is hereby entered dismissing with prejudice to the refiling of same: (i) all claims asserted in the Plaintiffs' Fourth Amended Complaint against the Settling Defendants; and (ii) all claims asserted in this action by the Settling Defendants against the Plaintiffs, Settlement Class Counsel, and the Settlement Class. The claims of the Settlement Class against NEC Corporation and NEC Electronics, Inc. are dismissed without prejudice. All members of the Settlement Class who did not timely and properly exclude themselves from the Settlement Class in the manner provided by the Court's Order of October 28, 1999 are bound by the judgment hereby entered. All parties

shall bear their own costs and attorneys' fees except as otherwise provided in the Settlement

Agreement and this Final Judgment.

13.     The Settlement Agreement governs the implementation of the terms of this Order

and Final Judgment (except as herein expressly implemented or modified) and shall survive this

Final Judgment.

14.     Based on the consent and agreement of the Settling Defendants to the entry of the

following consent order, the Settling Defendants and their respective successors are hereby

ordered as follows: [A] from and after November 8, 1999, no Toshiba Laptop Computer which

incorporates a floppy disk controller shall be  manufactured or sold in the United States unless

any and all of the  floppy disk controllers in the Toshiba Laptop Computer incorporate a

Hardware Fix that comply with the definition set forth in the Settlement Agreement; and [B]

through at least December 31, 2003, the Software Patch (as defined in the Settlement

Agreement) shall remain available on TAIS's (or its corporate successors') Internet support web

site, free of charge, to all owners of Toshiba Laptop Computers (regardless of model or year of

purchase), provided that the access to and use of the Software Patch shall be limited as set forth

in §8.1.1 of the Settlement Agreement.

15.     A first, prior, and superior judicial lien and a trust is imposed and granted, in the

exclusive favor of the Settlement Class Members who have an allowed claim to the Cash

Remedy, on the Guaranteed Fund (excluding interest after transferred to Settling Defendants)

and the "Deposit" of same with Citibank, N.A. (as defined in the "Deposit Agreement" approved

below) to secure, and for the exclusive use for, payment of allowed claims for the Cash Remedy.

16.     The "Notice of Final Approval" that is attached as Exhibit 3 is hereby approved and the parties are ordered to disseminate and publish it as provided in §6.2 of the Settlement Agreement.

17.     A.     The modified "Claim Form" that is attached as Exhibit 4 is hereby approved as an additional Claim Form under the Settlement Agreement and the parties are ordered to disseminate it. Both the Claim Form previously approved by this Court and the Claim Form attached as Exhibit 4 are valid Claim Forms under the Settlement Agreement.

B.     The Deposit Agreement with Citibank, N.A. that is attached as Exhibit 5 is hereby approved as the contract governing the deposit and disbursement of the Guaranteed Fund with and by Citibank, N.A.  Settlement Class Counsel are authorized and directed to execute and deliver and perform the Deposit Agreement (Exhibit 5) in the capacity therein stated. Subject to further order of this Court, the Claims Administrator (with the written acknowledgment of Settlement Class Counsel for the limited purpose provided hereunder) is authorized to instruct Citibank, N.A. under the Deposit Agreement to transfer funds from the "Deposit" (as defined in the "Deposit Agreement") to the account of the Claims Administrator for and only for paying allowed claims to the Settlement Class Members who are entitled to the Cash Remedy under the Settlement Agreement. The requirement of acknowledgment of transfer by Settlement Class Counsel is not an agreement by them that the withdrawal or subsequent Payment of funds is proper, but is for the sole purpose of monitoring disbursements from the said "Deposit" at Citibank, N.A. and is not a joinder by Settlement Class Counsel in the allowance or payment of any claims and they have no duty or liability in the event that the request for transfer or payment by the Claims Administrator is not proper. Without limiting any other retention of jurisdiction,

this Court retains jurisdiction over the "Guaranteed Fund", the Deposit Agreement, the "Deposit" therein defined and the parties to the Deposit Agreement, as provided therein.

C.    The Standby Letter Of Credit issued by Citibank, N.A. for the benefit of Settlement Class Counsel that is attached as Exhibit 6 is approved. Without limiting any other retention of jurisdiction, this Court retains jurisdiction over the Letter of Credit and the parties to it as provided therein.

18.    Continuing Jurisdiction And Exclusive Venue.

A.    The Settling Defendants and each member of the Settlement Class and Citibank, N.A. hereby are made subject to the exclusive jurisdiction and venue of the Eastern District of Texas, Beaumont Division, for any suit, action, proceeding, case, controversy, or dispute relating to this Settlement Agreement and Exhibits hereto and negotiation and performance or breach of same. All Settling Defendants, Settlement Class Members, Citibank, N.A. and persons in privity with them, including all persons represented by them, are barred and enjoined from commencing or continuing any suit, action, proceeding, case, controversy, or dispute relating to this Settlement Agreement and Exhibits hereto and negotiation and performance or breach of same, or seeking to raise any objections or challenges, in any state or federal court or other body other than the Eastern District of Texas, Beaumont Division.

B.    This Court shall have exclusive jurisdiction and authority in the United States to consider, rule upon, and issue a final order with respect to the subject matter of any such action, suit, or proceeding whether judicial, administrative or otherwise, which may be instituted by any person or entity, individually or derivatively, with respect to [A] the validity or enforceability of the Settlement Agreement or the Exhibits hereto, [B] the authority of any of the Settling Defendants or Citibank, N.A. to enter into or perform the Settlement Agreement or any

of the Exhibits in accordance with their respective terms, or [C] the remedies afforded by this Final Judgment and the Settlement Agreement or the Exhibits hereto, or the attorney fees, representatives' fees, costs, and expenses provided for in this Final Judgment, or [D] any other foreseen or unforeseen case or controversy in the United States related to or impacted by this Final Judgment and the Settlement Agreement or the Exhibits hereto, or [E] the enforcement, construction, or interpretation of the Settlement Agreement, any of the Exhibits hereto and this Final Judgment.  This reservation of jurisdiction does not limit any other reservation of jurisdiction in this Final Judgment nor do any other such reservations limit the reservation in this sub-section.

   C.  Further, all cases and controversies regarding the Toshiba floppy disk controller in Toshiba Laptop Computers (other than cases and controversies involving only Retained Rights as defined in the Settlement Agreement) shall be filed, heard, and decided only in this Court and all Settlement Class Members are permanently enjoined from bringing or continuing the prosecution of any such suits, except in this Court.

  19.  The Court has issued separate orders regarding motions to intervene and certain objections and has issued separate findings of fact and conclusions of law in support of this Final Judgment.

  SIGNED this *28* day of January, 2000.

          _____

          PRESIDING JUDGE

AGREED AS TO FORM AND SUBSTANCE AND RIGHT TO APPEAL WAIVED BY:

SETTLEMENT CLASS COUNSEL

By:

The Reaud Law Firm
801 Laurel
Beaumont, Texas 77701
409-838-1000 – phone
409-833-8236 – fax

SETTLING DEFENDANTS

By:

Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
713-651-5151 - phone
713-651-5246 - fax

By: _WAYNE A. REAUD /BY PERMISSION/_
  Wayne A. Reaud
  TSB No. 16642500

By: _Frank Jones /by permission David Levy_
  Frank G. Jones
  TSB No. 10883000

Hubert Oxford III P.C.
3535 Calder Avenue, 3rd Fl.
P.O. Box 150
Beaumont, Texas 77704-0150
409-833-9182 – phone
409-835-8819 – fax

By: _HUBERT OXFORD III /BY PERMISSION/_
  Hubert Oxford III
  TSB No. 15392000

Orgain, Bell & Tucker, L.L.P.
470 Orleans, 4th floor
P.O. Box 1751
Beaumont, Texas  77704-1751
409-838-6412 – phone
409-838-6959 – fax

By: _Gilbert I. Low by permission GI._
    Gilbert I. Low
    TSB No. 12619000
    Gary Neale Reger
    TSB No. 16733200
    D. Allan Jones
    TSB No. 10868500
    Jack P. Carroll
    TSB No. 03886000


Law Office Of L. DeWayne Layfield
P.O. Box 3829
Beaumont, Texas 77704-3829
409-832-1891 – phone
409-832-2156 – fax

By: _____
    L. DeWayne Layfield
    TSB No. 12065710

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT
99 OCT 29 AM 9:11
TX EASTERN-BEAUMONT
BY_____

| | | |
|---|---|---|
| (1) | Ethan Shaw and | § No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § Jury Demanded |
| | of themselves and all others | § |
| | similarly situated | § |
| | | § |
| VS. | | § |
| | | § Settlement Class Action Complaint for |
| (1) | Toshiba America Information | § Equitable Relief and Monetary |
| | Systems, Inc., | § Damages |
| (2) | NEC Electronics, Inc. | § |
| (3) | Toshiba Corporation, | § |
| (4) | Toshiba America, Inc., | § |
| (5) | Toshiba America Electronic | § |
| | Components, Inc., and | § |
| (6) | NEC Corporation | § |

## SETTLEMENT AGREEMENT AND RELEASE

**By And Among**
**Defendants Toshiba America Information Systems, Inc.,**
**Toshiba Corporation, Toshiba America, Inc. and**
**Toshiba America Electronic Components, Inc.**
**and Plaintiffs Ethan Shaw, Clive D. Moon and the  Settlement Class**

$\mathcal{E}$xhibit 1

SETTLEMENT AGREEMENT AND RELEASE

## *TABLE OF CONTENTS*

1. Definitions ........................................................................................................... 3

2. The Class Action And Settlement Class Covered By this Settlement Agreement ..................... 14

3. Commitment To Support ..................................................................................... 15

4. Procedure For Certification And Approving Settlement ........................................... 16

5. Procedure For Final Approval ............................................................................. 18

6. Notice To Class ................................................................................................. 22

7. Per Unit Settlement Packages ............................................................................. 26

8. Future Action ................................................................................................... 36

9. Cost of Notice ................................................................................................... 37

10. Attorney Fees, Class Representative Fees, And Litigation Costs And Expenses ................... 38

11. Opt Out Rights ................................................................................................ 41

12. Claims Procedure ............................................................................................ 43

13. Claims Administration ...................................................................................... 44

14. Reversion Of UnClaimed Guaranteed Funds And Disallowed Fees ................................ 51

15. Release ........................................................................................................... 51

16. Retained Rights ............................................................................................... 53

17. Final Approval Of This Agreement ..................................................................... 54

18. Final Judgment ............................................................................................... 55

19. Effect Of Failure Of Court To Approve .............................................................. 55

20. Successors & Assigns ....................................................................................... 57

21. Entire Agreement ............................................................................................ 58

22. Exhibits ......................................................................................................... 58

23. No Presumption Against Drafter ........................................................................ 58

24. Governing Law ............................................................................................... 59

25. Continuing Jurisdiction And Exclusive Venue ..................................................... 59

26. Authority ....................................................................................................... 60

27. Currency, Dates & Times ................................................................................. 61

28. Notices .......................................................................................................... 61

29. Stay .............................................................................................................. 62

30. Aggregate Value And Cost ............................................................................... 62

31. Sealing & Unsealing ........................................................................................ 62

32. Counterparts .................................................................................................. 63

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | | |
|---|---|---|---|
| (1) | Ethan Shaw and | § | No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § | Jury Demanded |
| | of themselves and all others | § | |
| | similarly situated | § | |
| | | § | |
| VS. | | § | |
| | | § | Settlement Class Action Complaint for |
| (1) | Toshiba America Information | § | Equitable Relief and Monetary |
| | Systems, Inc., | § | Damages |
| (2) | NEC Electronics, Inc. | § | |
| (3) | Toshiba Corporation, | § | |
| (4) | Toshiba America, Inc., | § | |
| (5) | Toshiba America Electronic | § | |
| | Components, Inc., and | § | |
| (6) | NEC Corporation | § | |

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Settlement Agreement") is made

effective upon preliminary approval by the Court as provided in §4.1, by and among defendants

Toshiba America Information Systems, Inc., Toshiba Corporation, Toshiba America, Inc. and

Toshiba America Electronic Components, Inc. (collectively, the "Settling Defendants") and

plaintiffs Ethan Shaw and Clive D. Moon ("Plaintiffs") and the  Settlement Class, as defined in

Section 2 of this Settlement Agreement.

WHEREAS, the Plaintiffs and the Settlement Class  have alleged that the defendants,

including the Settling Defendants, have acted improperly in various ways;

WHEREAS, the Settling Defendants deny each and every one of the Plaintiffs' and the

Putative Class' and Settlement Class' allegations of improper conduct and have asserted a number

Page 1 of 64

of defenses to the Plaintiffs' and the Putative Class Members' and Settlement Class Members' claims;

WHEREAS, the Plaintiffs, the Settlement Class and the Settling Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any Settling Defendant or of the truth of any of the claims or allegations alleged in the above-captioned litigation (the "Class Action") or otherwise;

WHEREAS, arm's length settlement negotiations have taken place between Plaintiffs, Settlement Class Counsel, and the Settling Defendants;

WHEREAS, as a product of those negotiations,  this Settlement Agreement, including its exhibits, which embodies all of the terms and conditions of the settlement between the Settling Defendants and the Plaintiffs, both individually and on behalf of the Settlement Class, has been reached, subject to the final approval of the United States District Court for the Eastern District of Texas, Beaumont Division (the "Court");

WHEREAS, Settlement Class Counsel and the Plaintiffs have concluded, after due investigation and after carefully considering the relevant circumstances of the Settling Defendants, the Class Action and the applicable law, that it would be in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class, and further, that Settlement Class Counsel and the Plaintiffs  consider the settlement set forth herein to be fair, reasonable,  adequate, and in the best interests of the Settlement Class;

WHEREAS, the Settling Defendants, without admitting liability, have concluded, despite their belief that they are not liable for the claims asserted and have good defenses thereto, that they

Page 2 of 64

will enter into this Settlement Agreement solely to avoid the further expense, inconvenience and burden of this protracted and complex litigation, the risks inherent in uncertain complex litigation, and the distraction and diversion of their personnel and resources, and thereby to put to rest this controversy.

NOW THEREFORE, it is agreed by and among the undersigned, on behalf of the Settling Defendants, the Plaintiffs, and the Settlement Class, that the Settlement Class Action be conditionally settled, compromised and dismissed on the merits and with prejudice as to all Settling Defendants, subject to the approval of the Court, on the following terms and conditions:

1. <u>Definitions</u>.

"Agreement" and "Settlement Agreement" both mean this agreement by and among Toshiba America Information Systems, Inc., Toshiba Corporation, Toshiba America, Inc. and Toshiba America Electronic Components, Inc. and plaintiffs Ethan Shaw, Clive D. Moon and the Settlement Class, as defined in §2 of this Settlement Agreement.

"Agreement Approval Hearing" means the hearing set by the Court to preliminarily approve this Settlement Agreement and conditionally certify a provisional Settlement Class.

"Agreement Approval Hearing Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline

Page 3 of 64

for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Cash Remedy" means the remedy provided for in §7.2.

"Charity" means an Internal Revenue Code Section 501 entity to be formed by Settlement Class Counsel by no later than January 10, 2000, to be formed and operated for the purpose of purchasing Toshiba laptop and desktop computers and distributing them in the United States to schools, churches, non-profit organizations, libraries, hospitals, and the poor. The Charity shall ensure that the computers are distributed equitably across the United States consistent with the makeup of the nationwide Settlement Class. The Charity shall be prohibited from engaging in any activity that is contrary to the best interests of Settling Defendants. There shall be three (3) initial directors, two (2) of whom shall be selected by Settlement Class Counsel and one (1) of whom shall be selected by Settling Defendants. The number of directors will not be changed during the existence of the Charity except by a unanimous vote. The rights to appoint the directors will remain as herein specified during the existence of the Charity, and the three seats on the board are to be held permanently by representatives and their successors who are appointed in the manner herein stated. At Settling Defendants' option, the name of the Charity will include the name "Toshiba." Further, all computers distributed by the Charity shall be Toshiba brand computers purchased from TAIS or a distributor, reseller, or dealer designated by TAIS. The "Charity" is the charity to which undistributed Guaranteed Funds and any disallowed fees are to be paid, as provided in §14. The Charity shall ensure that all of the money in the Charity is expended and Toshiba brand computer products distributed over a five

Page 4 of 64

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

ao

(5) year period after the date on which the Charity was first funded with funds from the Guaranteed Fund. All expenses for the administration of the Charity shall be paid from the funds contributed to the Charity. The Charity shall have no authority to solicit additional funds, nor shall the mission or purpose of the Charity be changed. It is understood and agreed that the Charity shall not be self perpetuating and that it shall cease to exist when its funding has been exhausted or five (5) years from the date of its first funding from the Guaranteed Fund, whichever occurs first. If funds remain when the Charity ceases to exist, then the directors shall expend the remainder for the purposes of the Charity.

"Claim Form" means the form to be used by Settlement Class Members to make a claim under this Settlement Agreement in a form to be submitted to the Court by the Submission Date and thereafter approved by the Court.

"Claims Administration" means the process by which this Settlement Agreement is administered pursuant to §13.

"Claims Administrator" means the person or entity appointed by the Court to administer this Settlement Agreement pursuant to §13.1.

"Class Action" means the above-captioned litigation.

"Class Notice" and "Summary Notice of Settlement" means the Court approved forms of notice of the conditional certification of the Settlement Class and notice of Fairness Hearing to the

Page 5 of 64

Putative Class Members, which shall be in a form to be submitted to the Court by the

Submission Date and thereafter approved by the Court.

"Closing Date" means the date so designated on Exhibit A that is attached hereto and incorporated

herein by reference, or such other date as may be set by the Court for the doing or completion

of the acts required to be completed by said date, as contemplated by this Agreement when

using said defined term. If the Court sets a date or deadline for doing or completing such acts

other than the date designated on Exhibit A, then this defined term shall mean the date set by

the Court rather than the date designated on Exhibit A.

"Coupon" means one or more of the various coupons to which Settlement Class Members are

entitled as provided in §7, which have various denominations, uses, and characteristics.

"Court" means the United States District Court for the Eastern District of Texas, Beaumont

Division.

"Effective Date" means the date so designated on Exhibit A that is attached hereto and

incorporated herein by reference, or such other date as may be set by the Court for the doing or

completion of the acts required to be completed by said date, as contemplated by this

Agreement when using said defined term. If the Court sets a date or deadline for doing or

completing such acts other than the date designated on Exhibit A, then this defined term shall

mean the date set by the Court rather than the date designated on Exhibit A.

Page 6 of 64

"Equitable Remedy" means the package of remedies provided for in §7.4.

"Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to certify the Settlement Class, approve this Settlement Agreement, approve payment of fees, expenses, enter the Final Judgment, and make such other final rulings as are contemplated by this Settlement Agreement.

"Fairness Hearing Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Final Claims Bar Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets for a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Final Judgment" means the final judgment by which the Court certifies the Settlement Class, approves this Settlement Agreement, and approves payment of fees, expenses, and makes such

Page 7 of 64

other final rulings as are contemplated by this Settlement Agreement. The Final Judgment must be substantially in the form attached as Exhibit C, with such additional orders as may be determined by the Court when this Settlement Agreement leaves matters to the determination of the Court.

"Forms And Notices Approval Hearing" means the hearing set by the Court to determine and approve the forms, notices, and manner of Notice as provided by §4.2.

"Forms And Notice Approval Hearing Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Guaranteed Fund" means the guaranteed amount of the "Cash Remedy" as provided in §7.2.

"Hardware Fix" means a redesigned Toshiba floppy disk controller that can set the overrun/underrun error flag on read and write operations to and from all sectors, including the last byte of a sector. Settling Defendants jointly and severally represent and warrant that the Hardware Fix correctly performs its functions with no overall diminution of performance on Toshiba Laptop Computers and with no patent violations.

Page 8 of 64

"Hardware Replacement Documentation" means [A] the sworn statement and [B] either the $225 Coupon or $25 check, required by §7.3.2.

"Notice" or "Notices" means the manner in which the Class Notice, Summary Notice of Settlement, and Notice Of Final Approval are given and published as provided in §6.

"Notice Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Notice Of Final Approval" means the form of notice to be published and mailed to notify Settlement Class Members that the Court has finally approved this Settlement Agreement, in a form to be submitted by the parties and determined and approved by the Court.

"Objection Date" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

Page 9 of 64

"Opt-Out Deadline" means the date so designated on Exhibit A that is attached hereto and incorporated herein by reference, or such other date as may be set by the Court for the doing or completion of the acts required to be completed by said date, as contemplated by this Settlement Agreement when using said defined term. If the Court sets a date or deadline for doing or completing such acts other than the date designated on Exhibit A, then this defined term shall mean the date set by the Court rather than the date designated on Exhibit A.

"Opt-Out Form" means the form which must be used by Putative Class Members to exclude themselves from the Settlement Class in a form to be submitted to the Court by the Submission Date and thereafter approved by the Court.

"Own" or "Owner" both mean a Settlement Class Member who owns or leases a Toshiba Laptop Computer. With respect to a leased Toshiba Laptop Computer, the Person entitled to the benefits and remedies herein afforded shall be determined as provided in §2.

"Per Unit Settlement Packages" means the consideration afforded the Settlement Class Members under §7.

"Person" and "Persons" mean all persons and entities (including but not limited to natural persons, individuals, corporations, agencies, bodies, governments, associations, partnerships, trusts, and their predecessors, successors, administrators, heirs and assigns).

"Plaintiffs" means Ethan Shaw and Clive D. Moon.

**Page 10 of 64**

"Product Identification Documentation" means the documentation required by §§7 and 12, the Claim Form and, with respect to claims for the Cash Remedy, Proof of Purchase.

"Proof of Purchase" means the documentation required by the Claim Form with respect to claims for the Cash Remedy. Proof of Purchase will constitute any one or more of: registration on or appearance in TAIS's warranty, support, or service records; a copy of a receipt; a cancelled check; a bank copy or bank generated record of a negotiated check; a credit card bill or receipt evidencing the purchase of a Toshiba Laptop Computer; or a photograph or photocopy of the bottom of the Toshiba Laptop Computer showing the model number and serial number of the Unit, satisfactory to the Claims Administrator.

"Putative Class Members" means all Persons who are within the scope of the definition of "Settlement Class", including those who validly and timely request exclusion from the Settlement Class, as provided in this Settlement Agreement.

"Released Parties" means those Persons released under §15 and more particularly defined therein.

"Released Rights" means any all manner of claims, demands, actions, suits, and causes of action released under §15.

"Retained Rights" means all claims, demands, actions, suits, or causes of action not released.

Page 11 of 64

"Serial Number Warranty Code" means the digits embedded on the bottom of each Toshiba Laptop Computer that determine its serial number and warranty code. The Class Notice will provide the recipient with instructions on how to read the Unit's Serial Number Warranty Code to determine its status under the Settlement Agreement.

"Settlement Agreement" and "Agreement" both mean this agreement by and among Toshiba America Information Systems, Inc., Toshiba Corporation, Toshiba America, Inc. and Toshiba America Electronic Components, Inc. and plaintiffs Ethan Shaw and Clive D. Moon and the Settlement Class.

"Settlement Class" is the FRCP 23 class covered by this Settlement Agreement, as defined in §2 of this Settlement Agreement.

"Settlement Class Counsel" means The Reaud Law Firm, Hubert Oxford III, P.C., DeWayne Layfield, and Orgain, Bell & Tucker, L.L.P., and their respective members.

"Settlement Class Members" means all Persons who are within the scope of the definition of the "Settlement Class" and who have not validly and timely requested exclusion from the Settlement Class, as provided in this Settlement Agreement.

"Settlement Class Representatives" means Ethan Shaw and Clive D. Moon or such other person(s) as the Court may appoint as representatives of the Settlement Class.

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

"Settling Defendants" means Toshiba Corporation, Toshiba America, Inc., Toshiba America

Information Systems, Inc., and Toshiba America Electronic Components, Inc.


"Settling Defendants' Counsel" means Fulbright & Jaworski, L.L.P., and its members.


"Software Patch" means a device driver level or similar low level software patch that alerts the

Windows 3.x, Windows 95, Windows 98, Windows NT 4.0, Windows 2000, DOS 5.x, DOS

6.2, Free BSD 3.x, Linux 2.0, and Linux 2.2 operating systems if an overrun on the last byte of

a sector caused data to be written incorrectly to a floppy disk.  Settling Defendants jointly and

severally represent and warrant that the Software Patch correctly performs its functions  with

no overall diminution of performance on Toshiba Laptop Computers and with no patent

violations.


"Submission Date" means the date so designated on Exhibit A that is attached hereto and

incorporated herein by reference, or such other date as may be set by the Court for the doing or

completion of the acts required to be completed by said date, as contemplated by this

Agreement when using said defined term. If the Court sets a date or deadline for doing or

completing such acts other than the date designated on Exhibit A, then this defined term shall

mean the date set by the Court rather than the date designated on Exhibit A.


"Summary Notice of Settlement" and "Class Notice" means the Court approved forms of notice of

the conditional certification of the Settlement Class and notice of Fairness Hearing to the


Page 13 of 64

29

Settlement Class Members, which shall be in a form to be submitted to the Court by the

Submission Date and thereafter approved by the Court.

"TAIS" means Toshiba America Information Systems, Inc.

"Toshiba Laptop Computer" means any Toshiba laptop or notebook computer manufactured on or

after January 1, 1985, that was distributed or sold, directly or indirectly, by TAIS or its

predecessor and which incorporates a floppy disk controller.

"Unit" is one Toshiba Laptop Computer.

"Warranty Remedies" means the remedies provided for in §7.3.

2.   The Class Action And Settlement Class Covered By this Settlement Agreement.

This Settlement Agreement governs, within the scope of its subject matter, all of the

Settling Defendants and all Settlement Class Members to be certified in the Class Action.

The "Settlement Class" is defined and composed of all Persons, other than the Settling

Defendants, who are United States citizens or residents and who Own (which, as provided in §1,

includes own or lease) a Toshiba Laptop Computer of any model. However, the Settlement Class

shall not include Owners of Toshiba Laptop Computers purchased after November 8, 1999, that

incorporate a floppy disk controller with the Hardware Fix. By November 2, 1999, the Settling

Defendants will provide the Court and Settlement Class Counsel with an affidavit from a TAIS

Page 14 of 64

officer that states a manner in which an Owner of a Toshiba Laptop Computer, purchased after November 8, 1999, can conclusively determine from a Unit's model and serial number combination that the Owner's Toshiba Laptop Computer does not incorporate or make use of a floppy disk controller that does not report an overrun or underrun if it occurs on the last byte of a read or write operation. With respect to leased Toshiba Laptop Computers, the Settlement Class Member who is entitled to the remedies and benefits afforded by this Settlement Agreement shall be determined by the lease agreement between the lessor and lessee, to be established by a certification of ownership on the Claim Form; in the event of a dispute between the lessor and lessee, the dispute will be decided by the Claims Administrator and Court as provided in §§13 and 25.

3. Commitment To Support.

3.1.    Plaintiffs, the Settling Defendants, Settlement Class Counsel, and Settling Defendants' Counsel agree to recommend approval of and vigorously support this Settlement Agreement to the Court and to the Putative Class Members and to undertake their best efforts, including all reasonable steps and efforts contemplated by this Settlement Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement. Because of the special circumstances of this case, the parties agree that any delay in the Fairness Hearing and final approval by the Court would be prejudicial to the Settlement Class. The Parties shall aggressively cooperate, assist and undertake all reasonable actions in order to accomplish the above on a timely basis in accordance with the schedule established by the Court. Settling Defendants are entitled to communicate with the Putative Class Members about this Class Action and this Settlement Agreement

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

31

in the ordinary course of Settling Defendants' business. However, the Settling Defendants will not aid or encourage any objections to this Settlement Agreement (or any of its terms or provisions) nor to final certification of the Settlement Class, nor encourage any Putative Class Members to elect to opt-out.

3.2.     Settlement Class Counsel shall make every reasonable effort to encourage Putative Class Members to participate and not to opt out. In addition, Settlement Class Counsel shall make all reasonable efforts to enforce the jurisdictional and injunctive provisions of this Settlement Agreement.

3.3.     No modifications to Exhibit B (the disbursement schedule for the Guaranteed Fund) shall be permitted unless approved by the Court, but if the Court approves modifications to Exhibit B, such modifications shall not give any party the right to terminate this Settlement Agreement and said Exhibit B will be reformed to conform to modifications approved by the Court.

4.   Procedure For Certification And Approving Settlement.

4.1.   Preliminary Approval.

As soon as is possible after execution of this Settlement Agreement and in all events no later than October 28, 1999, Plaintiffs shall submit to the Court: a motion for preliminary approval of the settlement, for conditional certification of the Settlement Class, for conditional appointment of Settlement Class Counsel, and for conditional appointment of Settlement Class Representatives; a motion and order to protect the jurisdiction of the Court; the draft of proposed form of Final Judgment (the principal terms of which shall not be altered in the actual final judgment, except as provided in §3.2 or when left to determination of the Court as herein provided); and for a stay of all proceedings in the Class Action against all Putative Class Members, Settlement Class Members,

Page 16 of 64

32

Plaintiffs, Settlement Class Counsel, and Settling Defendants, until the approval of this Settlement Agreement has been finally determined. The hearing on the preliminary approval of the settlement, conditional certification of the Settlement Class, conditional appointment of Settlement Class Counsel, and conditional appointment of Settlement Class Representatives shall be referred to as the "Agreement Approval Hearing." The parties agree to urge the Court to set the Agreement Approval Hearing on the Approval Hearing Date stated on Exhibit A.

    4.2.    Forms And Notice Approval.

In the event that the Court enters the preliminary orders contemplated by §4.1, then by the Submission Date to be determined by the Court, the parties will submit to the Court for its approval mutually agreeable forms of the Opt-Out Form, Claim Form, the Class Notice, Summary Notice of Settlement and the list of additional newspapers in which Notice will be published as provided in §6. If the parties cannot agree on one or more of the foregoing forms and notices or the list of newspapers, then, by the Submission Date, each party shall submit a proposed form or list to the Court for its determination. The parties agree to urge the Court to set the Submission Date as stated on Exhibit A. The Court's approval or determination of said forms, notices and list shall be at a hearing to be set by the Court (the "Forms And Notice Approval Hearing"). The parties agree to urge the Court to set the Forms And Notice Approval Hearing as stated on Exhibit A.

    4.3.    Fairness Hearing.

Once the preliminary and conditional order(s) described in §§4.1 and 4.2 have been obtained, Settling Defendants shall disseminate the Court approved notice of the conditional certification of the Settlement Class and notice of Fairness Hearing to the Putative Class Members ("Class Notice" and "Summary Notice of Settlement"), at Settling Defendants' cost. With the Class Notice, Settling Defendants also shall disseminate the Opt-Out Form and Claim Form. Following

the dissemination of the Class Notice, the Parties shall seek the Courts' approval of this Settlement Agreement and final certification of the Settlement Class for the purpose of this Settlement Agreement.

The Settling Defendants and Plaintiffs do not agree to the conditional certification of the Settlement Class, the conditional appointment of Settlement Class Counsel, or the conditional appointment of Settlement Class Representatives for any purpose other than to effectuate this Settlement Agreement. If this Settlement Agreement is terminated pursuant to its terms, or if the Effective Date does not occur for any reason, then the conditional certification of the Settlement Class and the appointment of the Settlement Class Representatives and Settlement Class Counsel shall be vacated, and the Class Action shall proceed as though the Settlement Class had never been certified and the appointments had not been made, without prejudice to Plaintiffs' right to file a motion to certify a class or classes and seek the appointment of the class representatives and class counsel.

5.    Procedure For Final Approval.

5.1.    Overview.

As provided above, the parties contemplate that this Settlement Agreement shall be presented to the Court for preliminary approval on October 28, 1999. If approved, the Class Notice and Summary Notice of Settlement shall be mailed and published as provided herein and approved by the Court. The Opt-Out Form and Claim Form will be mailed along with the Class Notice. Settlement Class Members shall have until the Objection Date to file, in the manner specified in the Class Notice, any objection or other response to the proposed Settlement Agreement. The

Page 18 of 64

parties agree to urge the Court to set the Objection Date as stated on Exhibit A. The Class Notice and Summary Notice of Settlement also shall provide that Putative Class Members may request exclusion from the Settlement Class by providing notice, in the manner specified in the Class Notice on, or before a date set by the Court as the Opt-Out Deadline, and as more particularly provided in §§5.2 and 11. The parties agree to urge the Court to set the Opt-Out Deadline as stated on Exhibit A .

   5.2.    Opt-Out Timing.

   As more particularly provided in §11, Putative Class Members shall  be required to elect to opt-out on or before the Opt-Out Deadline. All opt-out notices must be in writing in substantially the same form as the Opt-Out Form to be approved or determined by the Court as provided in §4.2 and must be sent by certified mail to the Clerk of the Court and the Clerk shall, at Settling Defendants' cost, provide a copy to Settlement Class Counsel and Settling Defendants' Counsel. The parties will move that the Court enter an order requiring that opt-out notices state:  (1) the Person's name, address, and telephone number; (2) the approximate date of the purchase or acquisition of the Toshiba Laptop Computer(s); (3) the model number and serial number of the Toshiba Laptop Computer(s) Owned by the Person and affected by the opt-out election; and (4) a statement that the Person wishes to be excluded from the Settlement Class. Any Putative Class Member who does not timely and validly request exclusion from the Settlement Class shall be bound by all the terms of the Settlement Agreement.

   5.3.    Filing Objections Before The Fairness Hearing.

   The parties will move that the Court enter an order requiring any Settlement Class Member who wishes to be heard orally at the Fairness Hearing or who wishes for any objection to be

**Page 19 of 64**

considered to file a written notice of objection by the Objection Date and to include with said objection:

(1)    A statement of each objection asserted;

(2)    A detailed description of the facts underlying each objection;

(3)    A detailed description of the legal authorities supporting each objection;

(4)    A statement of whether the objector intends to appear and argue at the Fairness Hearing and, if so, how long the objector anticipates needing to present the objection;

(5)    A list of witnesses whom the objector may call by live testimony, oral deposition testimony or affidavit during the Fairness Hearing; and

(6)    A list of the exhibits which the objector may offer during the Fairness Hearing, along with copies of such exhibits.

The parties will further move that the Court enter an order requiring that all Settlement Class Member objectors file such notice of objection or request to be heard with the Clerk of the Court, and serve such notice of objection or request to be heard upon Settlement Class Counsel and Settling Defendants' Counsel, at the addresses set forth in §28, no later than the Objection Date. The parties will further move that the Court enter an order to the effect that: objectors who fail to properly or timely file their objections with the Court or to serve them as provided above shall not be heard during the Fairness Hearing; nor shall their objections be considered by the Court; only Settlement Class Members may object to the Settlement Agreement; and Persons who opt out of the Settlement Class may not object to the Settlement Agreement.

5.4.    Setting The Fairness Hearing And Fairness Hearing Proceedings.

A Fairness Hearing Date shall be set by the Court (and be specified in the Class Notice and Summary Notice of Settlement) for a date convenient to the Court and which comports with

Page 20 of 64

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

applicable law and due process requirements. The parties agree to urge approval so as to allow

final approval by the Fairness Hearing Date stated on Exhibit A and agree to move the Court to set

the Fairness Hearing date on the date stated in Exhibit A. The parties agree to work together to

identify and submit any evidence as may be required to satisfy the burden of proof for obtaining

approval of this Settlement Agreement. The stay of proceedings shall not prevent the filing of any

motions, affidavits, and other matters necessary to the approval of this Settlement Agreement. The

parties agree to move the Court to enter an order to the effect that should any Person desire any

discovery incident to (or which the Person contends is necessary to) the approval of this Settlement

Agreement, the Person must first obtain an order from the Court that permits such discovery.

Without limiting the obligation to support this Settlement Agreement, at the Fairness Hearing the

Settling Defendants will present evidence to support their representations that the Software Patch

and Hardware Fix work with no overall degradation in performance and no patent infringement,

the number of Units affected by the Settlement Class, the evidence to support the values and costs

set forth in this Settlement Agreement, evidence that this Settlement Agreement is fair and

reasonable, and evidence with respect to the mechanics of Claims Administration. This evidence to

be available at the Fairness Hearing will be presented to Settlement Class Counsel at least thirty

(30) days before the Fairness Hearing. Settlement Class Counsel will assume the lead in presenting

the argument and evidence at the Fairness Hearing. Settling Defendants will support such

presentation as provided in §3. Settling Defendants will produce witnesses, documents, and

affidavits by witnesses as may be requested by Settlement Class Counsel without the necessity of

subpoena. These will be made available at the Fairness Hearing or in advance of the Fairness

Hearing as may be required to support any motion incident to approval of this Settlement

Agreement, including but not limited to a motion to certify the Settlement Class.

Page 21 of 64

37

6.  Notice To Class.

    6.1.    Preliminary Notice.

    Upon preliminary approval by the Court of this Settlement Agreement and conditional certification of the Settlement Class and approval of the forms and notices contemplated by §4.2, Settlement Class Counsel and Settling Defendants' Counsel shall, at Settling Defendants' cost, as soon thereafter as is reasonably possible but in all events by the Notice Date, cause Settling Defendants to provide (with oversight by Settlement Class Counsel and Settling Defendants' Counsel) Putative Class Members who are identifiable (from Toshiba' warranty, support, or other customer records) with the Class Notice by first class mail. The parties agree to urge the Court to set the Notice Date as set forth on Exhibit A. Notice also shall be given by Settling Defendants publishing, at Settling Defendants' cost, the Summary Notice of Settlement three (3) times in the legal notices section in the national editions of THE WALL STREET JOURNAL and USA TODAY, and the additional local newspapers approved or determined by the Court at the Forms And Notices Approval Hearing, and PC WEEK. If he will accept, George Shipley of Austin, Texas, shall place and monitor the required publications. Publication shall begin as soon as is reasonably practical after preliminary approval by the Court of this Settlement Agreement. If publication in one or more of said publications on the foregoing schedule is determined not to be practicable, then either party may apply to the Court for alternative notice by publication. Within five (5) business days after the Notice Date, Summary Notice of Settlement shall also be given by publication, at Settling Defendants' cost, by link on the home page and service and support page on TAIS' web site. The notice on the TAIS web sites shall be maintained through at least the

Objection Date. At Settling Defendants' cost, Settlement Class Counsel also will, through the Final Claims Bar Date, maintain the Class Notice and Summary Notice of Settlement and such other information as they may determine is appropriate on a web site operated by Settlement Class Counsel and the Class Notice and Summary Notice of Settlement shall so advise the Settlement Class Members and TAIS will, on its website, provide a link to the other web URLs operated by Settlement Class Counsel. If the Settlement Defendants object to any information on Settlement Class Counsel's website, then they will try to resolve it by agreement and, failing agreement, reserve the right to complain to the Court. Further, should any third-party who maintains a web site, such as a so-called "Portal Site", request a link with the Notice on the TAIS web site, then the Settling Defendants will cooperate so that such link is activated and maintained through the earlier of the Objection Date or such earlier date as the third-party requestor requests if such link is practical and in furtherance of the purpose of this Settlement Agreement. The Settling Defendants agree to pay for all costs and expenses of all the foregoing methods of Notice (other than costs associated with third-party web sites); this provision survives termination of this Settlement Agreement. Such amounts shall not be refundable to the Settling Defendants, and the Plaintiffs and the Settlement Class Counsel shall have no liability for the cost of such Notice in the event the settlement is not approved or otherwise fails in any way to become final; this provision survives termination of this Settlement Agreement. Both the individual and published forms of Notice to the Settlement Class shall be subject to Court approval, but the manner, timing, content, and substance of the Notice must be substantially the same as described in this Settlement Agreement. Except for the Class Notice and Summary Notice of Settlement and information in this Settlement Agreement, Settling Defendants are not responsible for any information provided by or communications from Settlement Class Counsel. Should Settling Defendants object to same, they first will attempt to

Page 23 of 64

address the complaint to Settlement Class Counsel and, if not satisfied, then may move the Court

for relief.

6.2.    Final Notice.

Ten (10) days before the Fairness Hearing the parties will submit an agreed (or if they

cannot agree, their proposed) form of notice to the Settlement Class Members that the Court has

finally approved this Settlement Agreement which advises the Settlement Class Members of their

rights and remedies ("Notice of Final Approval"). If the parties cannot agree by the Submission

Date, they shall have until ten (10) days prior to the Fairness Hearing by which to reach an

agreement on the form of the Notice of Final Approval or to submit their proposed versions to the

Court. If the Court finally approves this Settlement Agreement, the Court shall approve and

determine the form of the Notice of Final Approval. Thereafter, on the Effective Date, Settlement

Class Counsel and Settling Defendants' Counsel shall, at Settling Defendants' cost, cause Settling

Defendants to provide (with oversight by Settlement Class Counsel and Settling Defendants'

Counsel) Settlement Class Members who are identifiable (from Toshiba's warranty, support, or

other customer records and Claim Forms on file) with the Notice of Final Approval and Claim

Form by first class mail.  Notice also shall be given by Settling Defendants' publishing, at Settling

Defendants' cost, the Notice of Final Approval three (3) times in the legal notices section in the

national editions of THE WALL STREET JOURNAL and USA TODAY, and the additional local

newspapers approved or determined by the Court at the Forms And Notices Approval Hearing, and

PC WEEK. If he will accept, George Shipley of Austin, Texas, shall place and monitor the

required publications. Publication shall begin as soon as is reasonably practical on and after the

Effective Date. If publication in one or more of said publications on the foregoing schedule is

determined not to be practicable, then either party may apply to the Court for alternative notice by

Page 24 of 64

publication. Within five (5) business days after the Effective Date, the Notice of Final Approval shall also be given by publication, at Settling Defendants' cost, by link on the home page and service and support page on TAIS' web site. The notice on the TAIS web sites shall be maintained through at least the Final Claims Bar Date. At Settling Defendants' cost, Settlement Class Counsel also will, through the Final Claims Bar Date, maintain the Notice of Final Approval and Summary Notice of Settlement and such other information as they may determine is appropriate on a web site operated by Settlement Class Counsel and the Notice of Final Approval shall so advise the Settlement Class Members and TAIS will, on its website, provide a link to such other web URL's operated by Settlement Class Counsel. If the Settling Defendants object to any information on Settlement Class Counsel's website, they will try to resolve it by agreement and, failing agreement, reserve the right to complain to the Court. Further, should any third- party who maintains a web site, such as a so-called "Portal Site", request a link with the Notice on the TAIS web site, then the Settling Defendants will cooperate so that such link is activated and maintained through the earlier of the Final Claims Bar Date or such earlier date as the third-party requestor requests. The Settling Defendants agree to pay for all costs and expenses of all the foregoing methods of Notice (other than costs associated with third-party web sites). Both the individual and published forms of the Notice of Final Approval to the Settlement Class shall be subject to Court approval, but the manner, timing, content, and substance of the Notice of Final Approval must be substantially the same as described in this Settlement Agreement.

Page 25 of 64

7. <u>Per Unit Settlement Packages</u>.

    7.1.    Joint & Several Obligations.

The Settling Defendants are jointly and severally obligated to provide the Per Unit Settlement Package provided in this §7.

    7.2.    The Cash Remedy.

    7.2.1.  All Settlement Class Members who Own a Toshiba Laptop Computer that was purchased new on or after March 5, 1998, and who either [A] Own any Toshiba Laptop Computer with a Serial Number Warranty Code evidencing that the Unit was manufactured on or after February 1, 1998 <u>or</u> [B] have "Proof of Purchase" evidencing that the Unit was purchased on or after March 5, 1998, shall be entitled to the "Cash Remedy," which is cash in an amount that is calculated with respect to each particular Toshiba Laptop Computer Unit as set forth on the table that is attached as Exhibit B, attached hereto and incorporated herein by reference. Settling Defendants represent that there are 1,800,000 (1.8 million) Toshiba Laptop Computer Units entitled to the Cash Remedy and the parties agree that the evidence supports an average face value for this remedy of $331.94 per Unit or approximately $597,500,000.00 ($597.5 million) in the aggregate. The aggregate value is guaranteed as provided in §7.2.2 and is subject to a limited opt-out adjustment as provided in §11.3. Settlement Class Members who qualify for the Cash Remedy also will qualify for and be entitled to the Warranty Remedies provided for in §7.3.

    7.2.2.  The total amount of cash to be paid by Settling Defendants with respect to the Cash Remedy shall be $597,500,000.00 ($597.5 million), which is guaranteed jointly and severally by the Settling Defendants, each as primary obligors, regardless of the amount of allowed claims entitled to the Cash Remedy (the "Guaranteed Fund"). On or before the Fairness Hearing Date,

Page 26 of 64

42

one or more of the Settling Defendants shall confirm a reserve on their books in the amount of the Guaranteed Fund, which will be established by an affidavit of an officer of Toshiba Corporation. On or before the Effective Date, one or more of the Settling Defendants will either [A] deposit the full amount of the Guaranteed Fund into an interest bearing account at a mutually acceptable bank or banks, subject to the jurisdiction of, and approved by, the Court; or [B] secure the obligation to create, maintain, distribute, and pay the Guaranteed Fund with a standby letter of credit issued by a mutually agreeable U.S. bank (or banks), subject to the jurisdiction of, and approved by, the Court. Should the parties not be able to agree regarding the bank or details of the alternatives selected by the Settling Defendants, then the Court shall decide the bank or disputed detail. If the letter of credit alternative applies, the letter of credit shall be issued in favor of the Court, and can be drawn on by presentation of a sight draft accompanied by affidavit by the Claims Administrator or Settlement Class Counsel (approved by the Court) that there has been a breach of the agreement with respect to the Guaranteed Fund, or that a valid claim has been made on the Guaranteed Fund, depending upon the payment mechanism agreed upon by the Claims Administrator and the Settling Defendants and Settlement Class Counsel. The letter of credit shall have an expiry date no earlier than thirty (30) days after the Closing Date and shall be irrevocable prior to the expiry date. If it is the policy of the issuing bank(s) not to issue letters of credit for such period, then a letter with a shorter term may be issued if it provides for automatic renewal unless at least thirty (30) days notice to the Claims Administrator is given of the intent not to renew and the Court has the right to draw on the letter of credit before its expiry date based on non-renewal. The Claims Administrator will report to the Settling Defendants' Counsel and Settlement Class Counsel on a periodic basis, to be decided upon by the Claims Administrator and the Settling Defendants and Settlement Class Counsel, to enable the Settling Defendants to adjust and reduce the amount of the letter of credit to

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

reflect the amount of claims on the Guaranteed Funds paid by the Claims Administrator. This process will be specified in the form of letter of credit to be approved by the Court at the Fairness Hearing. The form and substance of the bank deposit or letter of credit shall be presented to the Court and Settlement Class Counsel ten (10) days before the Fairness Hearing, for the Court's approval.  No distributions of allowed claims to Settlement Class Members entitled to the Cash Remedy shall be made until at least ten (10) calendar days after the Final Claims Bar Date. Interest on the Guaranteed Fund (either earned or accrued at Toshiba's internal rate of interest), depending on the option selected by the Settling Defendants) shall be income, if to anyone, of the Settling Defendants earning or accruing same, but shall be used by the Settling Defendants to pay costs of Notice, costs of Claims Administration, hourly fees to Class Counsel for post-Notice assistance to Settlement Class Members, class litigation costs and expenses, court costs, and Settlement Class Counsel Claims Administration oversight fees. If the interest earned or accrued exceeds such costs, then the interest will revert to Settling Defendants. Said interest does not, however, limit any obligation of the Settling Defendants to pay amounts owed under this Settlement Agreement. In the event that taxes are owed with respect to interest earned or accrued on the Guaranteed Fund, then it shall be owed and paid by the Settling Defendants, jointly and severally. It is anticipated that the Guaranteed Fund will be consumed by allowed claims entitled to the Cash Remedy. However, in the event that the allowed claims entitled to the Cash Remedy do not equal or exceed the Guaranteed Fund, then the remaining (unclaimed) part of the Guaranteed Fund (excluding earned or accrued interest) shall be paid and distributed to the Charity as provided in §14, such distribution to be made by the Closing Date. The parties agree to urge the Court to order that the Closing Date be the "Closing Date" stated on Exhibit A. If the allowed claims entitled to the Cash Remedy exceed the Guaranteed Fund (excluding earned or accrued interest), then the Claims Administrator

Page 28 of 64

44

shall adjust the payments from the Guaranteed Fund as provided in §13.7, and it is expressly agreed and understood that the Settling Defendants will _not_ be obligated to pay any of the excess amount.

7.3.   The Warranty Remedies.

7.3.1.   All Settlement Class Members who Own a Toshiba Laptop Computer of any model that is or are covered by the standard or extended written express limited warranty of TAIS or its predecessor (as of and from and after March 5, 1999) shall be entitled to the following remedies: [A] the Software Patch; _and_ [B] if they are not satisfied with the Software Patch, a hardware replacement alternative as provided in §7.3.2; _and_ [C]  the Coupon provided for in sub-section §7.3.3. (the "Warranty Remedies"). Proof of Purchase is _not_ required to receive the Warranty Remedies. Coverage of a particular Settlement Class Member under the foregoing described warranties shall be determined by the model number and Serial Number Warranty Code on each Unit as supplemented by the warranty records of TAIS to identify any Units under extended warranty, per the customary practices of TAIS.

7.3.2.   Hardware Replacement Alternative.

7.3.2.1.   In order to qualify for the hardware replacement alternative provided for in §7.3.1[B], a Settlement Class Member who qualifies for said remedy must [A] submit a Claim Form on or before the Final Claims Bar Date and [B] give the Claims Administrator notice of such Settlement Class Member's dissatisfaction with the Software Patch in writing and under oath by no later than one hundred twenty (120) days following the Final Claims Bar Date. The required statement must be under oath, but need not be witnessed or notarized. The Claim Form will include a format for such sworn statement. To obtain the hardware replacement alternative, such Settlement Class Member also must return the $225 Coupon he received as set forth in §7.3.3 (but

Page 29 of 64

will be entitled to receive the $200 Coupon as set forth in §7.3.3) or, if he no longer has the $225 Coupon that he received, he must return a good check for $25.00 made payable to TAIS and sent to the Claims Administrator to be forwarded to TAIS (and will not be entitled to the $200 Coupon as set forth in §7.3.3). If a $25 check is required to be tendered, then the Claims Administrator may delay providing the hardware replacement until the check is collected. The Claims Administrator has discretion to adjust the foregoing without altering the net effect or intention of the foregoing (for example, but without limitation, for a claimant who certifies his dissatisfaction with the Software Patch *before* receiving any Coupon).

7.3.2.2.     As to each Toshiba Laptop Computer for which there is an allowed claim for a hardware replacement alternative under §7.3.1[B], subject to §7.3.2.3, Settling Defendants shall provide the hardware replacement alternative by providing the Owner of such Toshiba Laptop Computer with a Coupon for the purchase of the compatible Toshiba model external PCMCIA floppy disk drive (card, cable, and drive included), which does not operate through the Toshiba Laptop Computer's floppy disk controller. The Coupon provided for in this sub-section is not assignable and may be used only to purchase the compatible Toshiba model external PCMCIA floppy disk drive. All Coupons described in this section will be bearer certificates with a cash equivalent value, but may not be redeemed for cash. Coupons may be redeemed only at participating resellers or retailers. The Settlement Class Member who uses the Coupon shall be required to pay any sales tax (if any) due on account of the transaction in which the Coupon is used. The list of participating resellers or retailers will be presented to the Court and Settlement Class Counsel for approval at least ten (10) days before the Fairness Hearing and must include at least one mail order option with the capacity to handle the expected volume. The approved list of participating resellers or retailers shall be mailed to allowed claimants along with their Coupons.

Page 30 of 64

Coupons shall expire one-hundred eighty (180) days after mailed to an allowed claimant and bear a corresponding expiration date.

     7.3.2.3.     At the option of a particular Settlement Class Member who: [A] is entitled to the hardware replacement alternative under §7.3.2.1; and [B] does not want the external PCMCIA floppy disk drive that is available as the hardware replacement under §7.3.2.2 (the external PCMCIA floppy disk drive), the Settling Defendants shall provide a Hardware Fix as provided in this sub-section to be made by TAIS at its service depot in Irvine, California, or other location designated by TAIS in the 48 contiguous states of the United States. The Hardware Fix available in this sub-section is in lieu of the hardware replacement provided for under §7.3.2.2. Settlement Class Members who elect the Hardware Fix under this sub-section must comply with the following procedure:

     (i)     all system software must be "backed-up" (TAIS depot will not reconfigure the computer);

     (ii)     all non-standard external options (e.g. PCMCIA cards, external extra memory) must be removed;

     (iii)     the affected Unit must be packed according to instructions in containers suitable for shipment (the Claims Administrator will provide such instructions);

     (iv)     the Settling Defendants shall have no liability for loss or damage in shipment and the electing Settlement Class Member shall be advised that the Unit should be insured by the electing Settlement Class member for incoming and outgoing shipment;

Page 31 of 64

(v)   The electing Settlement Class Member must call the TAIS InTouch Center

(phone number 1-800-999-4273) to obtain an assigned case number or Return

Material Authorization number prior to shipment;

(vi)  The electing Settlement Class Member must allow forty-five (45) days for

return of the affected Unit.

7.3.2.4.   The deadline for electing the hardware replacement under §§7.3.2 shall be one-

hundred (120) days after the Final Claims Bar Date. However, any Settlement Class Member whose

Unit remains covered by the TAIS standard or extended warranty beyond  one-hundred (120) days

after the Final Claims Bar Date retains his right to seek an external floppy disk drive replacement

for the floppy disk controller or the Hardware Fix for the remaining period of his warranty, but the

qualification for such remedies (after one-hundred (120) days after the Final Claims Bar Date) shall

be governed by the warranty and not by this Settlement Agreement and said claim will be an

individual matter between the applying Settlement Class Member and TAIS, and not subject to

administration by the Claims Administrator.

7.3.3.   In addition, all Settlement Class Members entitled to the Warranty Remedies who

do not elect to receive a hardware replacement alternative are entitled to a Coupon in the amount of

$225. Those Settlement Class Members entitled to the Warranty Remedies who do elect to receive a

hardware alternative are entitled to a Coupon in the amount of $200, subject to the conditions set

forth in §7.3.2.1. The $225 Coupon will be mailed to qualifying Settlement Class Members within

five (5) business days after said Settlement Class Member's claim is allowed and shall be

accompanied by conspicuous notice regarding the right to receive a hardware replacement and the

procedure for obtaining said replacement. Both types of Coupons received by those entitled to the

Warranty Remedies can be used toward the purchase of any Toshiba Computer Product. The

**Page 32 of 64**

Coupons provided for in this sub-section will be bearer certificates that are freely assignable and may be aggregated. However, they may not be redeemed for cash, nor for anything other than toward the purchase of any Toshiba Computer Products. "Toshiba Computer Products" are any computer related product sold under the Toshiba name and distributed in the United States by TAIS, including but not limited to laptop computers, notebook computers, desktop computers, monitors, docking stations, extra memory, batteries, cases, and other accessories. Coupons may be redeemed only at participating resellers or retailers. The Settlement Class Member (or assign) who uses the Coupon shall be required to pay any sales tax (if any) due on account of the transaction in which the Coupon is used. The list of participating resellers or retailers will be presented to the Court and Settlement Class Counsel for approval at least ten (10) days before the Fairness Hearing and must include at least one mail order option with the capacity to handle the expected volume. The approved list of participating resellers or retailers shall be mailed to allowed claimants along with their Coupons. Coupons shall be coded by model and serial number and there shall be only one coupon redeemed per model and serial number combination. Coupons shall expire one-hundred eighty (180) days after mailed to an allowed claimant and bear a corresponding expiration date. All Coupons described in this section have a cash equivalent value, but may not be redeemed for cash.

7.3.4.   The Software Patch available to those entitled to the Warranty Remedies will be provided free of charge, but access to and use of the Software Patch shall be limited as set forth in §8.1.1.

7.3.5.   The Settling Defendants agree to provide the cash or Coupon components of the Warranty Remedies within five (5) business days after a particular claim is allowed by the Claims Administrator. In no event are the Settling Defendants obligated to provide the requested Warranty Remedies prior to the Effective Date. Should more than one Person submit a claim under the same

Page 33 of 64

49

model and serial number combination, then the first filed claim that satisfies the criteria of §§7.3.1, 12, and 13 for allowance, will be allowed and the Claims Administrator and Settling Defendants have no duty or obligation to investigate or resolve competing claims. Settling Defendants project that there are approximately 3,000,000 (3.0 million) Units entitled to the Warranty Remedies and the parties agree that the evidence supports a face value for this remedy of $320.00 per Unit or approximately $960,000,000.00 ($960.0 million) in the aggregate.

   7.4.   The Equitable Remedy.

   All Settlement Class Members, regardless of when they purchased a Toshiba Laptop Computer and regardless of whether the Toshiba Laptop Computer is under warranty, who do not qualify for a remedy under §§7.2 or 7.3, shall be entitled to the Software Patch free of charge, plus a Coupon in the amount of $100.00, which can be used toward the purchase of any Toshiba Computer Products. The Coupons provided for in this sub-section will be bearer certificates that are freely assignable and may be aggregated. However, they may not be redeemed for cash, nor for anything other than toward the purchase of any Toshiba Computer Products. "Toshiba Computer Products" are any computer related product sold under the Toshiba name and distributed in the United States by TAIS, including but not limited to laptop computers, notebook computers, desktop computers, monitors, docking stations, extra memory, batteries, cases, and other accessories. Coupons may be redeemed only at participating resellers or retailers. The Settlement Class Member (or assign) who uses the Coupon shall be required to pay any sales tax (if any) due on account of the transaction in which the Coupon is used. The list of participating resellers or retailers will be presented to the Court and Settlement Class Counsel for approval at least ten (10) days before the Fairness Hearing and must include at least one mail order option with the capacity to handle the expected volume. The approved list of participating resellers or retailers shall be mailed to allowed claimants along

Page 34 of 64

with their Coupons. Coupons shall be coded by model and serial number and there shall be only one Coupon redeemed per model and serial number combination. Should more than one Person submit a claim under the same model and serial number combination, then the Claims Administrator shall have the duty to resolve competing claims. Coupons shall expire one-hundred eighty (180) days after mailed to an allowed claimant and bear a corresponding expiration date. All Coupons described in this Section have a cash equivalent value, but may not be redeemed for cash. The Settling Defendants agree to provide this remedy within five (5) business days after a particular claim entitled to the Equitable Remedy is allowed. The Settling Defendants project that there are approximately 2,000,000 (2.0 million) Units entitled to the Equitable Remedy and the parties agree that the evidence supports a face value for this remedy of $129.00 per Unit or approximately $258,000,000.00 ($258.0 million) for those entitled to the Equitable Remedy. The Software Patch will be provided free of charge, but access to and use of the Software Patch shall be limited as set forth in §8.1.1.

7.5.    Settling Defendants will establish and maintain inventory, personnel, participating resellers, and distribution channels that will enable them to fill Coupon orders in time and manner equivalent to filling orders for typical customers.

7.6.    Collective Reference.

The remedies provided for in §7 are hereafter collectively called the "Per Unit Settlement Packages." The parties agree that the evidence supports a total aggregate face value of the Per Unit Settlement Packages of about $1,902,500,000.00 ($1.9025 billion).

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

8. Future Action.

8.1.   Without admitting that the floppy disk controllers in Toshiba Laptop Computers are defective, Settling Defendants agree to the entry of a consent order that [A] from and after November 8, 1999, no Toshiba Laptop Computer which incorporates a floppy disk controller shall be manufactured for sale in the United States unless its floppy disk controller incorporates the Hardware Fix; and [B] through at least December 31, 2003, the Software Patch shall remain available on TAIS's Internet web site, free of charge, to all owners of Toshiba Laptop Computers (regardless of model or year of purchase), provided that the access to and use of the Software Patch shall be limited as set forth in §8.1.1. The Settling Defendants admit that, but for this lawsuit, they would not have developed or made available either the Software Patch or Hardware Fix. The Settling Defendants project that, but for this lawsuit, they would have manufactured and sold an additional 1,750,000 laptop and notebook computer units after November 8, 1999, without either the Software Patch or the Hardware Fix being available or incorporated into the new units. The parties agree that there is evidence that this incorporation of the Hardware Fix has a face value of at least $29 per Unit or an aggregate face value of $50,750,000.00 ($50.750 million) for the Settlement Class.

8.1.1.   Before being made available to the public or owners of Toshiba Laptop Computers, the Software Patch shall be copyrighted in the United States. The Software Patch shall be distributed and downloaded via TAIS's Internet web page or, at the request of an Owner of a Toshiba Laptop Computer, mailed to the Owner (without cost to the Owner), but only to those Owners who identify themselves by verified model and serial number. Further, the Software Patch will be licensed to the Owner downloading or receiving same, with no right of duplication or further distribution, licensing, or sub-licensing; this sub-section shall survive termination of this Settlement

Agreement. The foregoing does not prohibit the Settling Defendants from licensing the Software

Patch to third-parties for whatever consideration may be agreed between the Settling Defendants

and the third-party licensee.

8.1.2.   Settling Defendants jointly and severally represent and warrant that the Hardware

Fix correctly performs its functions with no overall diminution of performance on Toshiba Laptop

Computers and does not violate any existing patents. Settling Defendants jointly and severally

represent and warrant that the Software Patch correctly performs its functions with no overall

diminution of performance on Toshiba Laptop Computers and does not violate any existing patents.

**Settling Defendants indemnify and agree to defend Settlement Class Members (and their**

**agents and Settlement Class Counsel) from and against the consequences of the foregoing**

**representations being untrue, including but not limited to the fees, costs, and expenses of**

**defense, even if the indemnified Person was negligent, in whole or in part, or is strictly liable.**


9.   Cost of Notice.

     The Settling Defendants jointly and severally agree to pay the cost of all Notice to the

Putative Class Members and Settlement Class Members that is required by this Settlement

Agreement or by order of the Court (including but not limited as provided in §6.1 and §6.2).

Payment by the Settling Defendants of this cost of Notice shall be non-refundable and shall be in

addition to the other agreements made herein. Interest on the Guaranteed Fund may be used to

reimburse Settling Defendants for cost of Notice and publication, but does not limit any obligations

for such cost of notice and publication..

10. Attorney Fees, Class Representative Fees, And Litigation Costs And Expenses.

10.1.    Defendants Shall Pay Plaintiffs' Attorney Fees And Pay The Class Representatives A Fee.

10.1.1. After an agreement was reached among the parties as to all principal terms and conditions of this Settlement Agreement, the parties first entered into discussions regarding attorneys' fees for Settlement Class Counsel and fees to the Class Representatives. Settling Defendants agreed and agree to pay Settlement Class Counsel a fee of $147,500,000.00 ($147.5 million), which they agree is reasonable. This amount is in addition to and separate from all other consideration and remedies paid to and available to the Settlement Class. Based on those agreements, Settlement Class Counsel intend to seek approval from the Court of attorneys' fees in the amount of $147,500,000.00 ($147.5 million), and to seek fees to each of the two named Class Representatives of $25,000.00 each. As part of this settlement, Settling Defendants jointly and severally agree to pay these fees and awards up to these amounts, in addition to the other consideration afforded the Settlement Class and further jointly and severally agree to vigorously support these fees as reasonable and appropriate and not to object to such request nor appeal an award up to the amounts specified above.  In no event shall Settling Defendants be obligated to pay Settlement Class Counsel or Class Representatives an amount greater than these agreed upon fees, and such amounts are the only consideration and fees that Released Parties shall be obligated to give Settlement Class Counsel or Class Representatives as a result of prosecuting and settling this Settlement Class Action, other than the additional express agreements made herein.  Payment of these fees shall be in addition to and shall not decrease or increase the Per Unit Settlement Packages or Guaranteed Fund. The Settling Defendants and Settlement Class Counsel have agreed that upon final approval, attorneys fees shall be payable to Settlement Class Counsel in two annual

Page 38 of 64

installments: $73,750,000.00, due and payable on the Effective Date, and $73,750,000.00 due and payable on the first anniversary of the Effective Date. If any portion of the attorney fees is disallowed, that amount shall be deducted from the sum due as the second installment. Attorneys fees and fees to the Class Representatives shall not bear interest if paid when and how due. The Settling Defendants may pre-pay the second installment of attorney fees at any time without penalty and, if they pay the attorney fees in full by the Effective Date, then the provisions in this sub-section regarding securing the obligation with a letter of credit shall not apply. The Class Representatives' fees will be due and payable, in cash, on the Effective Date. Payment of the attorneys' fees and representatives' fees shall be in cash in immediately available funds, wired to one or more United States financial institutions as the Settlement Class Counsel may direct in writing ten (10) business days prior to the date that the payment is due. Past due amounts shall bear interest at the highest rate of interest to which parties may, by contract, agree under Texas law, which both parties now understand is eighteen percent (18%) per annum. The obligation to pay the second installment of attorney fees shall be secured by a standby letter of credit issued by a mutually agreeable U.S. bank (or if the parties cannot agree, then as may be approved by the Court), which letter of credit shall be issued in favor of the Settlement Class Counsel and can be drawn on by presentation of a sight draft accompanied by affidavit by at least three of the Settlement Class Counsel that there has been a breach of the agreement to pay the second installment of the attorney fees. The letter of credit shall have an expiry date no earlier than thirty (30) days after the date on which the second installment of attorney fees is due and shall be irrevocable prior to the expiry date. If the policy of the issuing bank is not to issue letters of credit for such period, then a letter of credit with a shorter term may be issued if it provides for automatic renewal unless at least thirty-five (35) days written notice to the Settlement Class Counsel is given of non-renewal and the Settlement Class Counsel (by sight draft

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

and affidavit of any three of them) has the right to draw on the letter of credit before its expiry date based on non-renewal. The form and substance of the letter of credit shall be presented to the Court and Settlement Class Counsel at least ten (10) days before the Fairness Hearing, for the Court's approval. When and if Settling Defendants transfer funds to the financial institution designated by Settlement Class Counsel for receipt of attorney fees and said amount is actually received, and collected in immediately available funds, then Settling Defendants are relieved of their obligation regarding payment of that amount as among the Settlement Class Counsel.  The parties agree that this agreement is an additional value to the Settlement Class.

10.1.2. Any disallowed fees shall be paid to the Charity as provided in §14.

10.2.   Defendants Shall Pay Plaintiffs' Continuing Attorney Fees.

In addition to the attorney fees provided for in §10.1, Settling Defendants shall pay Settlement Class Counsels' fees, expenses, and costs in responding, after the Notice Date, to questions from the Putative Class Members and Settlement Class Members, on an hourly basis based on conventional rates equivalent to Settling Defendants' Counsel's rates to Settling Defendants. Settling Defendants may use interest accrued or earned on the Guaranteed Fund to pay these fees, but does not limit any obligation. This provision survives termination of this Settlement Agreement if termination occurs pursuant to §19.1. The parties agree that this agreement is an additional value to the Settlement Class.

10.3.   Defendants Shall Pay Litigation Expenses.

In addition to payment of attorney fees, Settling Defendants jointly and severally agree to pay an additional amount equal to Settlement Class Counsels' costs and expenses incurred in this Class Action. Settling Defendants will not object so long as the costs and expenses do not exceed $3,000,000.00. Costs and expenses include but are not limited to filing fees, court costs, internal

Page 40 of 64

copy charges (.25 cents per page), copy charges incurred with third-parties, courier charges, fax charges, Westlaw research, Lexis research, consulting experts, testifying experts, fairness experts, translators, depositions, videos, trial and mediation exhibits, mediator charges, travel, lodging, long distance phone, and other expenses, as well as expenses customarily reimbursed by clients. The amount of said costs and expenses shall be determined as of the Fairness Hearing Date based on supporting documents provided by the Settlement Class Counsel, and, in the event of a disagreement between Settlement Class Counsel and Settling Defendants as to amount (if the amount exceeds $3,000,000.00), then shall be determined by the Court. Payments of these costs and expenses shall be in addition to and shall not decrease or increase the attorney fees, Per Unit Settlement Packages or Guaranteed Fund. However, interest accrued or earned on the Guaranteed Fund may be used to pay such costs and expenses, but does not limit any obligation to pay such costs and expenses. The awarded costs and expenses shall be due and payable in cash on the Effective Date under the same terms that apply to payment of the first installment of attorney fees under §10.1. The cost and expenses award will not bear interest if paid when and how due. Past due amounts shall bear interest at the highest rate of interest to which parties may, by contract, agree under Texas law, which both parties now understand is eighteen percent (18%) per annum. The parties agree that this agreement has additional value to the Settlement Class.

## 11. Opt Out Rights.

11.1.    Settlement Class Members have the right to exclude themselves ("opt out") from this Settlement Agreement and from the Settlement Class by timely submitting to the Clerk of the Court a completed "Opt-Out Form" (in a form to be determined by the Court at the Forms And Notices Approval

57

Hearing) pursuant to the agreed upon opt-out procedure  approved by the Court. Class Members who so

timely elect to opt out shall be excluded from this Settlement Agreement and from the Settlement Class.

Such opt-out rights must be exercised by the "Opt-Out Deadline" by which the Court establishes the

deadline for filing the Opt-Out Form. Within ten (10) days after the Opt-Out Deadline, Settlement Class

Counsel shall furnish Settling Defendants' Counsel with a complete list of all timely and valid requests for

exclusion. Any Putative Class Member who does not submit a properly completed Opt-Out Form  by the

Opt-Out Deadline shall be a Settlement Class Member and shall be bound by the terms of this Settlement

Agreement and the Final Judgment, provided that, in order to share in the Per Unit Settlement Packages, a

Settlement Class Member must timely submit a Claim Form as provided in §12. Any Putative Class

Member who timely submits an Opt-Out Form in compliance with §11.1 shall have until the Fairness

Hearing to file a written revocation of the Opt-Out Form.

11.2.    This Settlement Agreement survives and applies even if there are Settlement Class

Members who opt-out. Further, except as provided in §11.3, there shall be no adjustment in amount of the

agreements  or consideration or Guaranteed Fund or Per Unit Settlement Packages, or fees, or expenses

provided for in this Settlement Agreement on account of putative Settlement Class Members who may opt-

out.

11.3.    If the United States Government or its agencies opt out, then a portion of the cash

Guaranteed Fund available to the  Settlement Class provided for in §7.2 may be diverted by the Settling

Defendants, but only as provided in this sub-section. The amount that may be diverted under this sub-

section shall be calculated on a per Unit basis. The parties shall determine which Toshiba Laptop

Computers are affected by the U.S. government opt out and the status of those Units under §7.2 above. The

amount that may be diverted under this sub-section shall be the sum of the cash to which the opting out

U.S. government agency would have been entitled to under §7.2  for the Units affected by the opt-out. The

Page 42 of 64

burden of proof (based on a preponderance of the evidence) as to the amount that may be diverted under this subsection will be on the Settling Defendants. The amount that may be diverted under this sub-section may be used by the Settling Defendants for (and only for) payment to the opting out United States government agency in payment of any settlement or judgment which may be made or entered between the Settling Defendants and the opting out U.S. government agency with respect to said affected Units or any floppy disk controller dispute associated with said Units. If this sub-section applies, then the Settling Defendants will make a quarterly accounting to the Court and Settlement Class Counsel. If within thirty (30) days of the Closing Date, funds that were diverted under this sub-section were not paid to the United States government or its agencies, for the purpose permitted by this sub-section, then the diverted amount shall be returned to the Guaranteed Fund.

12. Claims Procedure.

In order to receive the Per Unit Settlement Package available under §7, a Settlement Class Member must mail to the Claims Administrator, postmarked on or before the Final Claims Bar Date:

    (i)    the model number and the serial number of the affected Toshiba Laptop Computer; and

    (ii)    a properly completed and executed Claim Form (in a form to be determined at the Forms And Notices Approval Hearing); and

    (iii)    a photograph or photocopy of the entire bottom of the affected Toshiba Laptop Computer Unit; and

(iv)   any other Product Identification Documentation that is expressly required by the applicable sub-section of Section 7 with respect to the particular claim being made.

The Final Claims Bar Date shall be determined by the Court. The parties urge the Court to set said date to the Final Claims Bar Date stated on Exhibit A.

## 13. Claims Administration.

### 13.1.   Claims Administrator.

The Court will appoint the Claims Administrator. At the Fairness Hearing, the Plaintiffs and Settling Defendants will jointly recommend the appointment of a nationally known "fulfilment firm" or class action claims administration firm as the Claims Administrator, to be appointed by the Court for the purpose of processing and classifying the Claim Forms, Product Identification Documentation, Proof of Purchase (when required), and Hardware Replacement Documentation (when required) and for the purpose of assigning the status of approved Settlement Class claims and thereafter tendering to allowed Settlement Class claimants the Per Unit Settlement Packages to which they are entitled by this Settlement Agreement (the "Claims Administration"). By no later than December 31, 1999, the parties will endeavor to agree upon the firm to recommend and, failing agreement, will each have the right to make a recommendation to the Court. A preference shall be given to a qualified Claims Administrator that commits to perform a substantial portion of the Claims Administration in Jefferson County, Texas. The Claims Administrator shall be entitled to a reasonable fee and cost reimbursement approved by the Court. Settlement Class Counsel will have the right to continuing oversight of the Claims Administrator and Claims Administration and shall be paid a fee and be reimbursed the expenses of performing such function, in addition to the

Page 44 of 64

60

attorney fees and expenses allowed herein; said oversight fee will be paid on an hourly basis, based on conventional rates equivalent to Settling Defendants' Counsel's rates to Settling Defendants. Settling Defendants may use interest accrued or earned on the Guaranteed Fund to pay these fees, plus costs and expenses, but said interest will not limit their obligation to pay the entire cost, expense and fees of Claims Administration. Settling Defendants will pay the entire cost, expenses and fees of Claims Administration, in addition to other amounts payable hereunder. The parties agree that this agreement has additional value to the Settlement Class. In no event shall the cost, expense or fees of Claims Administration reduce or be paid by the Guaranteed Fund. However, Settling Defendants may use any interest earned or accrued on the Guaranteed Fund remaining at the Closing Date to reimburse the costs, fees, and expenses of Class Administration. The Claims Administrator and Claims Administration shall be under the authority and continuing jurisdiction of the Court. The Claims Administration process will be subject to a contract between the Settling Defendants, Settlement Class Counsel, and the Claims Administrator that governs the respective duties and obligations of the parties, in a form to be agreed upon between them by no later than January 10, 2000. In the event the parties cannot agree, then the Court shall establish the terms and respective duties, obligations and liabilities of the Class Administration, as between the Claims Administrator, Settlement Class Counsel, and the Settling Defendants. The Claims Administrator shall be subject to removal by the Court for cause. If the Claims Administrator resigns (as may be permitted in the Claims Administrator contract approved by the Court), or is removed, the Court shall appoint a new Claims Administrator after notice and hearing, and approval by the Court.

13.2. General Processing Guidelines.

The Claims Administrator shall promptly process Claim Forms as received, approve or disapprove claims as received, process allowed claims and tender the appropriate Per Unit

Page 45 of 64

Settlement Package to allowed Settlement Class Members, administer the process by which certain Settlement Class Member's obtain the hardware replacement (through the deadline established by §7.3.2.3), and shall otherwise carry out and comply with the provisions of this Settlement Agreement that require administrative management. Within forty (40) days after the Final Claims Bar Date, the Claims Administrator shall submit to the Court, Settling Defendants' Counsel, and Settlement Class Counsel a written report detailing the allowed claims.

13.3.   Claims Administrator To Rely On Submitted Documents.

In allowing claims, disallowing claims, and tendering the Per Unit Settlement Packages to the allowed Settlement Class Members, the Claims Administrator shall rely solely on the Opt-Out Form, Claim Form, Proof of Purchase (when required), Product Identification Documentation and Hardware Replacement Documentation that is timely submitted to the Claims Administrator by the Settlement Class Members, as well as the sales records, warranty records, and prior Settlement Class Member documents in the possession of the Claims Administrator or provided by the Settling Defendants. The Claims Administrator shall have no duty to investigate a particular claim beyond examination of such documentation. Except as otherwise expressly provided herein, the Claims Administrator is not obligated to examine or consider documentation that is received beyond the respective deadlines established by the Court, but, as provided in §13.4, may do so if the Claim Form was timely received, in its discretion without setting a course of dealing, practice, or policy and without obligating the Claims Administrator or Settling Defendants to make the same or similar exceptions for other Settlement Class Members. Notwithstanding the foregoing, Settling Defendants, Settlement Class Counsel, and the Claims Administrator shall take reasonable steps to prevent fraud in the Claims Administration process.

13.4.   Deficiencies In Documentation.

**Page 46 of 64**

In the event that, during claims processing, the Claims Administrator finds technical deficiencies exist in the Claim Form or Product Identification Documentation or Hardware Replacement Documentation or Proof of Purchase from a Settlement Class Member, which the Claims Administrator, in its discretion, believes may be correctable, then the Claims Administrator shall notify via telephone or certified mail the Settlement Class Member of the technical deficiencies, and shall allow the Settlement Class Member thirty (30) calendar days from the date of receipt of such notice to correct the deficiencies. If the deficiencies are not corrected within the thirty (30) day period, the Claims Administrator shall reject the claim without prejudice to the right of the Settlement Class Member to resubmit the Opt-Out Form or Claim Form or Hardware Replacement Documentation or Proof of Purchase or Product Identification Documentation, provided the resubmission by the Settlement Class Member meets the deadlines and other requirements set forth in this Settlement Agreement or established by the Court.

"Technical deficiencies" as used in this subsection do not include missing the Final Claims Bar Date, which absolutely bars allowance of a claim, except as set forth in §7.3.2.1.

13.5.   Approval or Rejection of Claims.

In order for a particular Settlement Class Member to become an allowed claimant, the Claims Administrator must be satisfied and certify that:

    (i)    the claimant did not Opt-Out;

    (ii)    the claimant's Proof of Purchase documentation (if required) and Product Identification Documentation was forwarded to the Claims Administrator postmarked on or before the Final Claim Bar Date and such documentation meets the criteria outlined in Section 7 of this Agreement for the particular claim being made;

Page 47 of 64

63

(iii)   the claimant forwarded a properly completed, sworn, and executed Claim

Form to the Claims Administrator postmarked on or before the Final Claim

Bar Date.

13.6.   Reports.

The Claims Administrator shall report the results of processing all claims, all cash and

Coupons distributed, and the balance of the Guaranteed Fund to the Court, Settlement Class

Counsel, and Settling Defendants' Counsel. The reports shall be filed quarterly, with a final report,

as of the Closing Date, due forty (40) days after the Closing Date. The Claims Administrator shall

make any adjustments to the results as ordered by the Court.

13.7.   Payments.

Subject to Section 7.2 with respect to cash payments from the Guaranteed Fund, the Claims

Administrator shall promptly make arrangements to satisfy allowed claims as and when allowed

after the Effective Date. Settling Defendants agree to make the cash and Per Unit Settlement

Packages available to the Claims Administrator in a timely fashion so as to allow the Claims

Administrator to promptly satisfy allowed claims as and when allowed (subject to §7.2 with respect

to the cash payments from the Guaranteed Fund). The funds and Coupons for each allowed claim

shall be delivered to the allowed claimant by the Claims Administrator placing a check or Coupon

(or both) in the first class United States mail, return receipt requested, forwarding address

requested, to each of the allowed claimants at the address shown for the allowed claimant on his,

her, or its Claim Form. For all allowed claimants to whom the Claims Administrator was

unsuccessful in attempting to deliver checks and as to whom the Claims Administrator recommends

taking no further actions to deliver their checks or Coupons, the Court will enter an order that states,

for each, either that the Claims Administrator need not make any further effort to deliver the check

Page 48 of 64

64

or Coupon or that directs further efforts to be taken by the Claims Administrator. The cost of such delivery and efforts to deliver shall be jointly and severally borne by the Settling Defendants. As to all Settlement Class Members to whom the Court agrees checks are undeliverable, on or before the Closing Date the amounts of such checks shall revert to the Charity, as provided in §14. In no event shall the Settling Defendants or the Claims Administrator have any liability or obligation for the Cash Remedy claims beyond the Guaranteed Fund (excluding interest). In the unlikely event that the Guaranteed Fund (excluding interest) appears insufficient to cover all claims or allowed claims for the Cash Remedy, the time for paying said Cash Remedy will be extended sixty (60) days and, as soon as possible in advance of such extended time, the Claims Administrator will readjust the table attached as Exhibit B to allow a lesser amount to be paid for each Unit (consistent with the factors reflected in Exhibit B). The readjusted Exhibit B will be filed with the Court and served on Settlement Class Counsel and Settling Defendants' Counsel and if approved by the Court shall be the basis for distributing the Guaranteed Fund.

13.8.   Appeal of Disallowed Claims.

Any member of the Settlement Class shall have the right to appeal the determination of the Claims Administrator regarding said claimant's disallowed claim. Appeals shall be in writing and must be first submitted to the Person designated, from time to time, by the Claims Administrator to decide such appeals. The procedure for such appeals shall be in the Class Administration contract approved by the Court under §13.1. If the claimant remains unsatisfied, then appeal may be had to the Court. Any appeal to the Court shall be by motion filed no later than fifteen (15) days after final action by the Claims Administrator on such appeal and shall be determined after notice to the appealing claimant, the Claims Administrator, Settlement Class Counsel, and Settling Defendants' counsel.

Page 49 of 64

13.9.   Closing Of Administration.

The parties shall urge the Court to establish a date in the Final Judgment by which Claims Administration shall be fully completed and closed (the "Closing Date"). The parties agree to urge the Court to set this date to the Closing Date stated on Exhibit A. Within forty (40) calendar days after the Closing Date, the Claims Administrator shall file a motion with the Court to close the Claims Administration and shall serve same on the Settlement Class Counsel, the Settling Defendants' Counsel, and any other persons who filed a pleading with the Court in the case, as an intervener, objector, or as a claimant appealing a disallowance of a claim. When satisfied that the Class Administration should be closed, the Court will enter an order closing same and discharging the Claims Administrator and Settlement Class Counsel.

13.10.   Limited Liability Of Claims Administrator.

The Claims Administrator (and its owners, officers, directors, partners, shareholders, members, manager, employees, and agents) do not owe a fiduciary duty to the Settlement Class Members, the Plaintiffs, nor to the Settling Defendants. The parties will ask the Court to grant the Claims Administrator limited immunity from liability to the effect that the Claims Administrator (and its owners, officers, directors, partners, shareholders, members, manager, employees, and agents) shall be liable only for breach of contract, actual fraud and negligence. As part of its obligation to pay the expenses and costs of Claims Administration, Settling Defendants jointly and severally indemnify the Claims Administrator (and its owners, officers, directors, partners, shareholders, members, manager, employees, and agents) from and against any and all claims, proceedings, causes of action, judgments, orders, awards, penalties, taxes, fines, damages, injuries, costs, expenses, and fees of defense, or other consequences related to or arising out of the Claims Administration to the extent as may be provided in the Claims Administration contract approved by

Page 50 of 64

the Court in §13.1, and in no event shall the foregoing be paid from the Guaranteed Fund. The

parties shall request that the Court impose a first and prior judicial lien and trust on the Guaranteed

Fund (exclusive of interest) in the exclusive favor of the Settlement Class Members and for the

exclusive purpose of paying allowed claims to those entitled to the Cash Remedy.


14. Reversion Of UnClaimed Guaranteed Funds And Disallowed Fees.

By no later than the Closing Date, any portion of the Guaranteed Fund (excluding any

remainder of interest earned or accrued on the Guaranteed Fund but not used as permitted by this

Settlement Agreement) that  is not paid to allowed claimants entitled to the Cash Remedy, shall be

paid by the Claims Administrator and Settling Defendants, in the name of Settling Defendants, to

the Charity. By no later than the Effective Date, any portion of disallowed fees shall be paid by

Settling Defendants, in the name of Settling Defendants, to the Charity.


15. Release.

15.1.   In addition to the effect of any Final Judgment entered in accordance with this

Settlement Agreement, and except as expressly provided in §16 regarding Retained Rights, upon

this Settlement Agreement becoming final on the Effective Date, the Settling Defendants and each

of their present and former parents, wholly-owned subsidiaries, divisions, "Qualifying Affiliates",

officers, directors, employees, and attorneys  (and the predecessors, heirs, executors, administrators,

successors and assigns of each of the foregoing) (all called the "Released Parties"), shall be released

and forever discharged by the Plaintiffs, Settlement Class Members, and their respective heirs,

assigns, and successors, from those claims, demands, actions, suits, and causes of action that are or

**Page 51 of 64**

could have been pleaded in Plaintiffs' Fourth Amended Complaint regarding economic damage to Toshiba Laptop Computers and floppy disks used therewith caused by the Toshiba floppy disk controller condition which is the subject matter of Plaintiffs' Fourth Amended Complaint, other than (and not being included in the Released Rights) the Retained Rights and the rights and claims created by this Settlement Agreement. The term "Qualifying Affiliates" means Toshiba Corporation's consolidated subsidiaries, insurers, licensees, authorized service providers, resellers, agents, retailers, vendors, suppliers, and customers who are found to have liability for the same economic damage to the same Toshiba Laptop Computers and floppy disks used therewith Owned by the Settlement Class Members caused by the Toshiba floppy disk controller condition that is the subject matter of Plaintiffs' Fourth Amended Complaint and who are found to be bound by §16. By this Settlement Agreement, the members of the Settlement Class intend to settle with and release only the Released Parties as set forth herein and only to the extent that they have liability for the same economic damage to the same Toshiba Laptop Computers and floppy disks used therewith Owned by the Settlement Class Members caused by the Toshiba floppy disk controller condition that is the subject matter of Plaintiffs' Fourth Amended Complaint. This Release (and the Final Judgment) do not release any Released Party from any liability for any damaged computer, or damage caused by any chip, floppy disk controller, or other item not within the express scope of the foregoing. Further, this Release extends only to the damage caused to the Toshiba Laptop Computers and floppy disks used therewith Owned by the Settlement Class Members that is the same damage covered by Plaintiffs' Fourth Amended Complaint. Notwithstanding anything to the contrary, Settlement Class Representatives and Settlement Class Members and their survivors retain claims against the Settling Defendants for unrelated warranty claims and consequential damages to the extent set forth in §16  regarding Retained Rights.

Page 52 of 64

15.2.   Settling Defendants release Plaintiffs, Settlement Class Counsel, and all Settlement Class Members from the counterclaims pleaded by them in this Class Action.

## 16. Retained Rights.

Notwithstanding §15 or the entry of the Final Judgment, individual Settlement Class Members retain the right to bring individual claims for consequential damages against the Settling Defendants, including but not limited to, for the claims, demands, actions, suits, and causes of action pleaded in Plaintiffs' Fourth Amended Complaint (The "Retained Rights"). Further, this Settlement Agreement, the release, and the Final Judgment do not affect any Settlement Class Member's warranty rights with respect to any condition, material, workmanship, or defect other than those pleaded in the Fourth Amended Complaint; and such preserved warranty rights also are included within the meaning of Retained Rights. With respect to any action asserting Retained Rights, the Settling Defendants agree that venue shall lie wherever venue is proper. Settling Defendants waive the right to assert or plead, directly or indirectly, in whole or in part, that this Settlement Agreement, the release contained herein, the Final Judgment, any findings of fact or conclusions of law entered by the Court, or the legal effect of any of the foregoing, is res judicata, collateral estoppel, claims preclusion, judicial admissions, waiver, release, accord and satisfaction, payment, or any other bar of or defense to any Settlement Class Member's assertion of any Retained Rights.

The Settlement Class Members and Settling Defendants do, however, expressly retain the right, to the extent permitted by law and this Settlement Agreement, to plead this Settlement Agreement as a full and complete defense to, or as the basis for an injunction against, any action,

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

suit or other proceeding to recover any claim released by §15, which may be instituted, prosecuted or attempted in breach of this Settlement Agreement.

17. Final Approval Of This Agreement.

This Settlement Agreement shall become final upon the "Effective Date" which is the eleventh (11th) calendar day after the latest date for the occurrence of all of the following three events: (a) the Settlement Agreement is executed and delivered by all parties and approved in all respects by the Court; (b) entry, as provided in §18 herein of the Final Judgment and Order Approving Settlement; and (c) the Final Judgment becomes "Final". "Final" means the occurrence of any of the following: (i) final affirmance on an appeal of the Final Judgment, the expiration of the time for a petition for a writ of certiorari to review the Final Judgment and, if certiorari be granted, final affirmance of the Final Judgment following review pursuant to that grant; or (ii) final dismissal of any appeal from the Final Judgment or the final dismissal of any proceeding on certiorari to review the Final Judgment; or (iii) if no appeal is filed, the expiration of the time for the filing or noticing of any appeal from the Court's Final Judgment, i.e., expected to be thirty (30) days after entry of the Final Judgment (or the expiration of any extension of time for the filing of any appeal as may result from operation of law or order of the Court). If no motion under F.R.App.P. Rule 4(a)(1) or 4(a)(4) is filed by the thirtieth (30th) day from entry of judgment and the Final Judgment is otherwise "Final", then the Final Judgment shall be "Final" for purposes of this Settlement Agreement. If the Final Judgment is set aside, materially modified, vacated or reversed by the Court or by an appellate court, and is not fully reinstated on further appeal, then the Final

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

70

Judgment does not become "Final" and the Effective Date cannot occur. The parties agree to use their best efforts to achieve the Effective Date stated on Exhibit A.

18. <u>Final Judgment</u>.

Subject to the Courts' approval, the order or judgment of approval of this Settlement Agreement (the Final Judgment) shall be substantially in the form attached hereto and incorporated herein by reference as Exhibit C.

The Settling Defendants desire that this settlement result in finality and closure on the issues involved in the Class Action.

The form of Final Judgment may include additional provisions as the Court may direct which are not inconsistent with this Settlement Agreement. In addition to the Final Judgment, the Court may issue such other orders, findings of fact, and conclusions of law as the Court may order, so long as not inconsistent with this Settlement Agreement. Without limiting the foregoing, it is anticipated that there may be additional orders, provisions in the Final Judgment, findings of fact and conclusions of law regarding: objections; attorney fees; costs and expenses; fees to the Class Representatives; and with respect to determinations by the Court on those matters that are to be determined by the Court by the express terms of this Settlement Agreement.

19. <u>Effect Of Failure Of Court To Approve</u>.

19.1.    If the Court fails to approve this Settlement Agreement or any part hereof, or if such approval is modified in any way not permitted by this Settlement Agreement, or set aside on appeal, or if the Court does not enter the Final Judgment as provided for in §18, or if the Court enters the Final Judgment

Page 55 of 64

and appellate review is sought, and on such review, such Final Judgment is not affirmed, then this

Settlement Agreement may be rightfully canceled and terminated, and shall become voidable by either the

Settling Defendants or the Plaintiffs, and the parties shall be restored to their original positions, except as

expressly provided herein. Termination, cancellation, and voiding of this Settlement Agreement as

provided in the foregoing shall not affect any agreement or obligation stated herein to survive termination.

In the event that the Settlement Agreement shall be of no force or effect and, in any event, the parties

hereto agree that this Settlement Agreement, including its exhibits, whether or not it shall become final, and

any and all negotiations, documents and discussions associated with it shall be without prejudice to the

rights of any party, shall not be deemed or construed to be an admission (except as provided in §19.2) or

evidence of any violation of any statute or law of any liability or wrongdoing by any Settling Defendant or

of the truth of any of the claims or allegations contained in the Fourth Amended Complaint or any other

pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether

in the Class Action or in any other action or proceeding, including any action involving Retained Rights.

However, any Settling Defendant or Settlement Class Member may introduce the Final Judgment and

Settlement Agreement for the limited purpose of establishing their rights and obligations under this

Settlement Agreement or that a particular claim is or is not barred by the Final Judgment or Settlement

Agreement. The parties expressly reserve all of their rights if the settlement does not become Final in

accordance with the terms of this Settlement Agreement.

19.2.    Provided that even if §19.1 applies, the Settling Defendants stipulate that : [a] the Settling

Defendants will post the Software Patch on the TAIS web site; and [b] the Settling Defendants will

incorporate the Hardware Fix into new Toshiba Laptop Computers sold in the United States and

manufactured after November 8, 1999, with the exception of computers that do not contain any floppy disk

controller; [c] Plaintiffs and Settlement Class Counsel shall be deemed to have, and Settling Defendants

Page 56 of 64

72

hereby judicially admit that Plaintiffs, mailed the two notices attached hereto and incorporated herein by reference as Exhibit D, on September 23, 1999, and also on the day after conditional certification of the Settlement Class, to all named and described addressees, even though they refrained from mailing such notices to facilitate this settlement. This provision survives termination of this Settlement Agreement.

20. <u>Successors & Assigns</u>.

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, except that the claims preclusive effect of Final Judgment on this Settlement Agreement and the release herein provided only inures to successors and assigns to the extent of the successor liability assumed from the Released Parties with respect to claims within the scope of this Settlement Agreement that are released and not to any other independent liability that the successor or assign may have, even if for allegedly defective floppy disk controllers. Without limiting the generality of the foregoing, each and every covenant and agreement herein made by the Settlement Class Counsel and the Plaintiffs on behalf of themselves and on behalf of the Settlement Class, shall be binding upon all Settlement Class Members.

Shaw.Toshiba Settlement 15.wpd
Last printed 10/27/99

21. <u>Entire Agreement</u>.

This Settlement Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties; it is not subject to any condition not provided for herein. This Settlement Agreement supersedes any prior agreements or understandings between and among Plaintiffs, Settlement Class Members, and the Settlement Class Counsel, and Settling Defendants, and Settling Defendants' Counsel regarding the subject matter of the Class Action or this Settlement Agreement. This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto or by order of the Court to the limited extent expressly provided for in this Settlement Agreement.

22. <u>Exhibits</u>.

All exhibits are incorporated into this agreement by reference. Any inconsistency between this Settlement Agreement and the exhibits attached hereto shall be resolved in favor of this Settlement Agreement.

23. <u>No Presumption Against Drafter</u>.

None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof of the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof. This Settlement Agreement was drafted with substantial input by all parties, and no reliance was placed on any representations other than those contained herein.

Page 58 of 64

74

24. Governing Law.

This Settlement Agreement shall be governed by and shall be construed and enforced in

accordance with federal law, where appropriate, and otherwise pursuant to the laws of the State of

Texas, except for any conflict of law provisions in said laws of the State of Texas that may

otherwise require the application of the laws of a jurisdiction other than that of the State of Texas to

the performance, validity, construction or enforcement of this Settlement Agreement.

25. Continuing Jurisdiction And Exclusive Venue.

25.1.   The Settling Defendants and each Settlement Class Member hereby irrevocably submits to

the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Texas,

Beaumont Division, for any suit, action, proceeding, case, controversy, or dispute relating to this

Settlement Agreement and Exhibits hereto and negotiation and performance or breach of same. All

Settlement Class Members and the Settling Defendants are barred and enjoined from commencing or

continuing any suit, action, proceeding, case, controversy, or dispute relating to this Settlement Agreement

and Exhibits hereto and negotiation, performance or breach of same, in any state or federal court or other

body other than the United States District Court for the Eastern District of Texas, Beaumont Division.

25.2.   It is expressly agreed and stipulated that the United States District Court for the Eastern

District of Texas, Beaumont Division, shall have exclusive jurisdiction and authority to consider, rule upon,

and issue a final order with respect to the subject matter of any of the following actions, suits, or

proceedings whether judicial, administrative or otherwise, which may be instituted by any Person,

individually or derivatively, with respect to [A] the validity or enforceability of this Settlement Agreement,

[B] the authority of any of the Settling Defendants to enter into or perform this Settlement Agreement in

**Page 59 of 64**

accordance with its terms, [C] the remedies afforded by this Settlement Agreement, attorney fees, Class

Representatives fees, costs, and expenses provided for in this Settlement Agreement, or [D] any other

foreseen or unforseen case or controversy in the United States related to or impacted by this Settlement

Agreement other than respecting Retained Rights. This reservation of jurisdiction does not limit any other

reservation of jurisdiction in this Settlement Agreement nor do any other such reservations limit the

reservation in this sub-section.

25.3.    Further, the parties agree that, except for Retained Rights, all cases and controversies

against the Released Parties regarding the Toshiba floppy disk controller in Toshiba Laptop Computers

should be heard only in this Court and that the Putative Class Members should be enjoined from bring any

such suits, except in this Court. This provision does not apply to suits for Retained Rights.

25.4.    The parties agree to move the Court to  include the substance of the foregoing provisions in

its order that certifies a temporary class and sets this Settlement Agreement for final hearing and in the

Final Judgment.  In the event of a case, controversy, or dispute arising out of the negotiation of, approval of,

performance of, or breach of this Settlement Agreement, the Court shall award attorneys fees and costs to

the prevailing party. Solely for purposes of such suit, action or proceeding, to the fullest extent that they

may effectively do so under applicable law, the parties hereto irrevocably waive and agree not to assert, by

way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction

of such court, or that such Court is, in any way, an improper venue or an inconvenient forum.


26. Authority.

The undersigned counsel for the parties to this Settlement Agreement covenant and represent

that they are fully authorized to enter into and to execute this Settlement Agreement, provided that

Page 60 of 64

Settlement Class Counsel's authority is subject to certification of a class and approval of this

settlement by the Court.

27. Currency, Dates & Times.

All values, Coupons, cash, fees, expenses, costs, values, and other amounts stated herein are

to be determined, are stated, and are to be paid in United States legal currency. All dates and times

stated in this Settlement Agreement mean the date and time in Beaumont, Texas.

28. Notices.

All notices to Settlement Class Counsel, the Settling Defendants, and Settling Defendants'

Counsel required under this Settlement Agreement shall be sent by first class U.S. Mail, by hand

delivery, or by facsimile, to the recipient designated in this Settlement Agreement. Timeliness of all

submissions and notices shall be measured by the date of receipt, unless the addressee refuses or

delays receipt. The persons designated to receive notice are as follows:

Frank G. Jones
Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-8263 - phone
(713) 651-5246 - fax
Settling Defendants' Counsel

Walter J. Crawford, Jr.
Crawford & Olesen, L.L.P.
P.O. Box 749
Beaumont, Texas 77704-0749
(409) 833-7343 - phone
(409) 832-9705 - fax
Settling Defendants' Counsel

Wayne Reaud
The Reaud Law Firm
801 Laurel Street
Beaumont, Texas 77701
(409) 838-1000 - phone
(409) 833-8236 - fax
Settlement Class Counsel

Hubert Oxford III
Hubert Oxford III, P.C.
3535 Calder, 3rd Floor
Beaumont, Texas 77706
(409) 833-9182 - phone
(409) 833-8819 - fax
Settlement Class Counsel

Page 61 of 64

Gilbert I. Low
Gary N. Reger
Orgain, Bell & Tucker, L.L.P.
470 Orleans, 4th Floor
Beaumont, Texas 77701
(409) 838-6412 - phone
(409) 838-6959 - fax
Settlement Class Counsel

L. DeWayne Layfield
P.O. Box 3829
Beaumont, Texas 77704-3829
(409) 832-1891 - phone
(409) 832-2156 - fax
Settlement Class Counsel

29. Stay.

Unless and until this Settlement Agreement is terminated pursuant to its provisions, all discovery, motions, pleadings, and other activity in this Settlement Class Action affecting the Settling Defendants shall be stayed except to the extent necessary to effectuate this Settlement.

30. Aggregate Value And Cost.

The parties agree that the evidence supports an approximate total aggregate face value of over $2,100,000,000.00 ($2.1 billion) for this settlement.

31. Sealing & Unsealing.

This Settlement Agreement shall be filed under seal without service on the other defendants, pursuant to the bench order of the Court entered on October 14, 1999. Subject to order of the Court, it is anticipated that, if the Court preliminarily approves this Settlement Agreement and conditionally certifies a Settlement Class, then this Settlement Agreement shall be unsealed and will be served on the other defendants. The parties have no objection to same.

Page 62 of 64

32. Counterparts.

This Settlement Agreement may be executed in counterparts, each of which shall constitute an original. Facsimile signatures shall be considered valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement.

EXECUTED and DELIVERED on or about October 28, 1999, but to be made effective as of the date on which the Court preliminarily approves this Settlement Agreement and conditionally certifies a provisional Settlement Class.

Page 63 of 64

| | |
|---|---|
| Toshiba America Information Systems, Inc. "TAIS"<br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba Corporation<br><br><br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| Toshiba America, Inc.<br><br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba America Electronic Components, Inc.<br><br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| _E̶t̶h̶a̶n̶ ̶S̶h̶a̶w̶_ (signature)<br>_____<br>Ethan Shaw | _____<br>Clive D. Moon |
| FULBRIGHT & JAWORSKI, L.L.P.<br><br><br>By:_____<br>  Frank G. Jones, a partner | THE REAUD LAW FIRM<br><br><br>By:_____<br>  Wayne A. Reaud, its _____ |
| ORGAIN, BELL & TUCKER, L.L.P.<br><br><br>By:_____<br>  Gilbert I. Low, a partner | HUBERT OXFORD III, P.C.<br><br><br>By:_____<br>  Hubert Oxford III, its _____ |
| _____<br>DeWayne Layfield | |

**Page 64 of 64**

| | |
|---|---|
| Toshiba America Information Systems, Inc. "TAIS"<br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba Corporation<br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| Toshiba America, Inc.<br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba America Electronic Components, Inc.<br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| <br><br>_____<br>Ethan Shaw | *Clive D. Moon*<br>_____<br>Clive D. Moon |
| FULBRIGHT & JAWORSKI, L.L.P.<br><br>By:_____<br>   Frank G. Jones, a partner | THE REAUD LAW FIRM<br><br>By:_____<br>   Wayne A. Reaud, its _____ |
| ORGAIN, BELL & TUCKER, L.L.P.<br><br>By:_____<br>   Gilbert I. Low, a partner | HUBERT OXFORD III, P.C.<br><br>By:_____<br>   Hubert Oxford III, its _____ |
| <br><br>_____<br>DeWayne Layfield | |

Shaw.Toshiba Settlement 14A.wpd<br>Last printed 10/27/99

Frank Jones - Shaw.Toshiba Settlement 15.wpd

| Toshiba America Information Systems, Inc.<br>**"TAIS"**<br><br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba Corporation<br><br><br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| Toshiba America, Inc.<br><br><br><br>By:_____<br>Print Name:_____<br>Its:_____ | Toshiba America Electronic Components,<br>Inc.<br><br><br><br>By:_____<br>Print Name:_____<br>Its:_____ |
| _____<br>Ethan Shaw | _____<br>Clive D. Moon |
| FULBRIGHT & JAWORSKI, L.L.P.<br><br><br>By:_____<br>    Frank G. Jones, a partner | THE REAUD LAW FIRM<br><br><br>By:_____<br>    Wayne A. Reaud |
| ORGAIN, BELL & TUCKER, L.L.P.<br><br><br>By:_____<br>    Gary N. Reger | HUBERT OXFORD III, P.C.<br><br><br>By:_____<br>    Hubert Oxford III |
| <br><br><br>_____<br>DeWayne Layfield | |

Shaw.Toshiba Settlement 14B-2.wpd

Last printed 10/27/99

82

| Toshiba America Information Systems, Inc. "TAIS" | Toshiba Corporation |
|---|---|
| By: _____<br>Print Name: __Kozo Wada__<br>~~Its~~ _Secretary of Toshiba Corporation_ | By: _____<br>Print Name: __Kozo Wada__<br>Its: __Corporate Secretary__ |
| Toshiba America, Inc. | Toshiba America Electronic Components, Inc. |
| By: _____<br>Print Name: __Kozo Wada__<br>~~Its~~ _Secretary of Toshiba Corporation_ | By: _____<br>Print Name: __Kozo Wada__<br>~~Its~~ _Secretary of Toshiba Corporation_ |

83

## Exhibit A
### *SHAW V. TOSHIBA*

Proposed Timetable

File Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . October 28, 1999

Agreement Approval Hearing Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . October 28, 1999

Submission Date (notices, etc.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . November 2, 1999

Forms And Notice Approval Hearing Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . November 4, 1999

Notice Date  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . November 10, 1999

Opt-Out Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . January 5, 2000

Objection Date  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . January 5, 2000

Fairness Hearing Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . January 19, 2000

Effective Date (11th day after Final Judgment becomes final) . . . . . . . . . . . . . . . March 3, 2000

Final Claims Bar Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . June 3 , 2000

Last Day To Elect Hardware Replacement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . October 3, 2000

Coupons Expire  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180 days after mailed

Second Installment of Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . March 3, 2001

Closing Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . April 3, 2001

Exhibit.Shaw Toshiba Settlement Timetable8.wpd

# Exhibit B

## Cash Remedy Due Per Unit

|  | Month of Purchase | Cash Remedy Per Unit |
|---|---|---|
| Oldest Units | Mar-98 | $210.00 |
|  | Apr-98 | $221.10 |
|  | May-98 | $232.20 |
|  | Jun-98 | $243.30 |
|  | Jul-98 | $254.40 |
|  | Aug-98 | $265.50 |
|  | Sep-98 | $276.60 |
|  | Oct-98 | $287.70 |
|  | Nov-98 | $298.80 |
|  | Dec-98 | $309.90 |
|  | Jan-99 | $321.00 |
|  | Feb-99 | $332.10 |
|  | Mar-99 | $343.20 |
|  | Apr-99 | $354.30 |
|  | May-99 | $365.40 |
|  | Jun-99 | $376.50 |
|  | Jul-99 | $387.60 |
|  | Aug-99 | $398.70 |
|  | Sep-99 | $409.80 |
|  | Oct-99 | $420.90 |
|  | Nov-99 | $432.01 |
| Newest Units | Dec-99 | $443.21 |

**Total Distributed:**          $597,499,938.86

85

# EXHIBIT C

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | | |
|---|---|---|---|
| (1) | Ethan Shaw and | § | No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § | Jury Demanded |
| | of themselves and all others | § | |
| | similarly situated | § | |
| | | § | |
| VS. | | § | |
| | | § | Class Action Complaint for |
| (1) | Toshiba America Information | § | Equitable Relief and Monetary |
| | Systems, Inc., | § | Damages |
| (2) | NEC Electronics, Inc. | § | |
| (3) | Toshiba Corporation, | § | |
| (4) | Toshiba America, Inc., | § | |
| (5) | Toshiba America Electronic | § | |
| | Components, Inc., and | § | |
| (6) | NEC Corporation | § | |

## ORDER OF FINAL APPROVAL
## AND
## FINAL JUDGMENT

On this _____ day of _____, 2000, the Court considered the [insert title of motion

to be filed moving for final approval] and the Settlement Agreement And Release filed with the

Court preliminarily approved by the Court on October ___, 1999, and objections regarding the

settlement. A copy of the Settlement Agreement And Release (the "Settlement Agreement") is

attached as Exhibit 1 and incorporated herein by reference. When capitalized words are used in

this Final Judgment they have the same meaning as those terms have in the Settlement

Agreement.

**PAGE 1**

86

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Court finds that the Settlement Class, as defined in the Settlement Agreement, meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure ("FRCP 23"), and certifies a Settlement Class defined as follows:

{ INSERT FINAL CLASS DEFINITION}

2.    The Court finds that the members of the Settlement Class are so numerous that joinder of all members would be impracticable.  The Court further finds that there are questions of law and fact common to the claims of the members of the Settlement Class.

3.    The Court finds that Ethan Shaw and Clive D. Moon are designated as class representatives and are found to be adequate representatives with typical claims. Counsel for the class, Wayne Reaud and Mike Jamail of The Reaud Law Firm, Hubert Oxford III of Hubert Oxford III P.C., DeWayne Layfield, and Buddy Low, Gary Reger, Allan Jones, and Jack Carroll of Orgain, Bell & Tucker, L.L.P., and the other members of the foregoing firms who are actively involved in this case are found to be experienced and skilled attorneys capable of adequately representing the Settlement Class.  Plaintiffs and Settlement Class Counsel have no interest antagonistic to or in conflict with the interests of the Settlement Class Members.

4.    The Court finds that certification of the Settlement Class is appropriate pursuant to FRCP 23.  Further, the Court finds that the questions of law or fact common to the class "predominate" over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy and that certification also is appropriate under FRCP Rule 23(b)(3).

**PAGE 2**

*87*

5.     The Court approves the Settlement Agreement and finds that the Settlement Agreement is a reasonable compromise of the claims of the Settlement Class and is fair, just, reasonable and adequate to, and in the best interests of, the Settlement Class.  The settlement achieves a definite and certain result for the benefit of the Settlement Class that is preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay and cost.  The Court also finds that the Settlement Agreement was reached by the parties after extensive discovery and intensive arms-length negotiations involving an independent court appointed mediator, Thomas A. Thomas.

6.     The Court determines that the class action settlement notices were given as required by this Court's orders dated October ___, 1999 and November ___, 1999.  The Court finds that the notice given of the proposed settlement, as approved by the Court's order dated November ___, 1999, was the best practical notice under the circumstances to provide and provided all class members desiring to object to the Settlement Agreement with fair and adequate notice of the terms of the proposed settlement and of the hearing to consider final approval held on _____, 2000.  The Court finds that the notice satisfied the requirements of FRCP 23 and applicable law.

7.     The Court therefore finally approves the Settlement Agreement and its plan of distribution and the parties are directed to implement the Settlement Agreement and its plan of distribution in accordance with its terms.  All terms, definitions and provisions of the Settlement Agreement are adopted and incorporated herein.  The Settlement Agreement is binding on the parties to the Settlement Agreement and the Settlement Class Members.

8.     When this Final Judgment becomes "Final", the Plaintiffs and Settlement Class Members shall be forever barred from bringing or presenting any action or proceeding against

any of the Released Parties (as defined in the Settlement Agreement) that involves or asserts any of the claims expressly released in the Settlement Agreement, and that the Plaintiffs and Settlement Class Members shall be deemed to have released and forever discharged the Released Parties from all claims expressly released in this Settlement Agreement. The Retained Rights (as defined in the Settlement Agreement) are not released or affected by this Final Judgment and are preserved. All relief not expressly granted the Settlement Class Members is denied.

9.     Pursuant to separately filed findings of fact and conclusions of law, the Court hereby awards the following fees and expenses to be paid and secured as provided in the Settlement Agreement and finds that some are fair and reasonable:

    i.     Total attorney fees to Settlement Class Counsel of $_____;

    ii.    $_____ to each Plaintiff as a class representative fee;

    iii.   $_____ to reimburse Settlement Class Counsel for expenses and costs incurred in prosecution of this case;

    iv.    An additional amount for responding to questions of Settlement Class Members as provided in §___ of the Settlement Agreement.

10.     A.     _____ is hereby appointed Claims Administrator pursuant to the Settlement Agreement.

    B.     The Administration Contract dated _____, 1999, by and between the Settling Defendants, Settlement Class Counsel and the Class Administrator, with respect to Claims Administration pursuant to the Settlement Agreement is hereby approved and incorporated herein by reference.

    C.     The Court hereby establishes June 3, 2000 as the "Final Claims Bar Date".

89

D.     The Court hereby establishes April 3, 2001 as the "Closing Date" (as provided in the Settlement Agreement) by which Claims Administration (as defined in the Settlement Agreement) shall be fully completed and closed.

E.     The Claims Administrator (and its owners, officers, directors, partners, shareholders, members, manager, employees, and agents) shall be liable only for

_____.

11.    Any portion of the Guaranteed Fund (as defined in the Settlement Agreement), excluding interest, that is not paid to allowed claims entitled to the Cash Remedy under the Settlement Agreement and any disallowed fees shall be paid to the Charity, as provided in the Settlement Agreement.

12.    Pursuant to and consistent with the Settlement Agreement, judgment is hereby entered dismissing with prejudice to the refiling of same: (i) all claims asserted in the Plaintiffs' Fourth Amended Complaint against the Settling Defendants; and (ii) all claims asserted in this action by the Settling Defendants against the Plaintiffs, Settlement Class Counsel, and the Settlement Class. The claims of the Settlement Class against NEC Corporation and NEC Electronics, Inc. are dismissed without prejudice. All members of the Settlement Class who did not timely and properly exclude themselves from the Settlement Class in the manner provided by the Court's Order of _____, 1999 are bound by the judgment hereby entered. All parties shall bear their own costs and attorneys' fees except as otherwise provided in the Settlement Agreement and this Final Judgment.

13.    The Settlement Agreement controls the terms of this Order and Final Judgment and shall survive this Final Judgment.

PAGE 5

90

14.     Based on the consent and agreement of the Settling Defendants to the entry of the following consent order, the Settling Defendants and their respective successors are hereby ordered as follows: [A] from and after November 8, 1999, no Toshiba Laptop Computer which incorporates a floppy disk controller shall be  manufactured or sold in the United States unless its floppy disk controller incorporates the Hardware Fix (as defined in the Settlement Agreement); and [B] through at least December 31, 2003, the Software Patch (as defined in the Settlement Agreement) shall remain available on TAIS's (or its corporate successors') Internet support web site, free of charge, to all owners of Toshiba Laptop Computers (regardless of model or year of purchase), provided that the access to and use of the Software Patch shall be limited as set forth in §8.1.1 of the Settlement Agreement.

15.     A first, prior, and superior judicial lien and a trust is imposed and granted, in the exclusive favor of the Settlement Class Members who have an allowed claim to the Cash Remedy, on the Guaranteed Fund (excluding interest) to secure and for the exclusive use for payment of allowed claims for the Cash Remedy.

16.     The "Notice of Final Approval" that is attached as Exhibit 2 is hereby approved and the parties are ordered to disseminate and publish it as provided in §6.2 of the Settlement Agreement.

17.     {_____ insert such other determinations as may be made by the Court as provided in the Settlement Agreement_____: such as, but not limited to, with respect to the banks, letter(s) of credit, if any}

18.     Continuing Jurisdiction And Exclusive Venue

A.     The Settling Defendants and each member of the Settlement Class hereby are made subject to the exclusive jurisdiction and venue of the Eastern District of Texas,

Beaumont Division, for any suit, action, proceeding, case, controversy, or dispute relating to this

Settlement Agreement and Exhibits hereto and negotiation and performance or breach of same.

All Settlement Class Members and persons in privity with them, including all persons

represented by them, are barred and enjoined from commencing or continuing any suit, action,

proceeding, case, controversy, or dispute relating to this Settlement Agreement and Exhibits

hereto and negotiation and performance or breach of same, or seeking to raise any objections or

challenges, in any state or federal court or other body other than the Eastern District of Texas,

Beaumont Division.

       B.     This Court shall have exclusive jurisdiction and authority in the United

States to consider, rule upon, and issue a final order with respect to the subject matter of any such

action, suit, or proceeding whether judicial, administrative or otherwise, which may be instituted

by any person or entity, individually or derivatively, with respect to [A] the validity or

enforceability of the Settlement Agreement, [B] the authority of any of the Settling Defendants to

enter into or perform the Settlement Agreement in accordance with its terms, or [C] the remedies

afforded by this Final Judgment and the Settlement Agreement, or the attorney fees,

representatives' fees, costs, and expenses provided for in this Final Judgment, or [D] any other

foreseen or unforeseen case or controversy in the United States related to or impacted by this

Final Judgment and the Settlement Agreement, or [E] the enforcement, construction, or

interpretation of the Settlement Agreement and this Final Judgment.  This reservation of

jurisdiction does not limit any other reservation of jurisdiction in this Final Judgment nor do any

other such reservations limit the reservation in this sub-section.

       C.     Further, all cases and controversies regarding the Toshiba floppy disk

controller in Toshiba Laptop Computers (other than cases and controversies involving only

92

Retained Rights as defined in the Settlement Agreement) shall be filed, heard, and decided only in this Court and all Settlement Class members are permanently enjoined from bringing or continuing the prosecution of any such suits, except in this Court.

SIGNED this _____ day of _____, 2000.


_____
PRESIDING JUDGE

| The Reaud Law Firm<br>801 Laurel<br>Beaumont, Texas 77701<br>409-838-1000 - phone<br>409-833-8236 - fax<br><br><br>By:_____<br>    Wayne A. Reaud<br>    TSB No. _____ | Fulbright & Jaworski, L.L.P.<br>1301 McKinney, Suite 5100<br>Houston, Texas 77010-3095<br>713-651-5151 - phone<br>713-651-5246 - fax<br><br><br>By:_____<br>    Frank G. Jones<br>    TSB No. 10883000 |
| Hubert Oxford III P.C.<br>3535 Calder Avenue, 3rd Fl.<br>P.O. Box 150<br>Beaumont, Texas 77704-0150<br>409-833-9182 – phone<br>409-835-8819 – fax<br><br><br>By:_____<br>    Hubert Oxford III<br>    TSB No. 15392000 | |

PAGE 8

93

Orgain, Bell & Tucker, L.L.P.
470 Orleans, 4th floor
P.O. Box 1751
Beaumont, Texas  77704-1751
409-838-6412 - phone
409-838-6959 - fax


By:_____

   Gilbert I. Low
   TSB No. 12619000
   Gary Neale Reger
   TSB No. 16733200
   D. Allan Jones
   TSB No. 10868500
   Jack P. Carroll
   TSB No. 03886000

Law Office Of L. DeWayne Layfield
P.O. Box 3829
Beaumont, Texas 77704-3829
409-832-1891 - phone
409-832-2156 - fax


By:_____

   L. DeWayne Layfield
   TSB No. 12065710

PAGE 9

EXHIBIT D

The Settling Defendants, Settling Defendants' Counsel, Plaintiffs and  Settlement Class Counsel have identified the described notice between them for the contingency that the provisions of the Settlement Agreement applicable to said notice will become applicable, but they have agreed not to attach the notice to the settlement agreement, but to retain same between them in a sealed envelop. In the event that said contingency occurs then it shall apply to said sealed notice the same as if it actually was attached to this Settlement Agreement. The references in the Settlement Agreement to "two" notices actually refer to "one" notice form that was addressed to multiple parties.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| (1) | Ethan Shaw and | § No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § Jury Demanded |
| | of themselves and all others | § |
| | similarly situated | § |
| | | § |
| | VS. | § |
| | | § Settlement Class Action Complaint for |
| (1) | Toshiba America Information | § Equitable Relief and Monetary |
| | Systems, Inc., | § Damages |
| (2) | NEC Electronics, Inc. | § |
| (3) | Toshiba Corporation, | § |
| (4) | Toshiba America, Inc., | § |
| (5) | Toshiba America Electronic | § |
| | Components, Inc., and | § |
| (6) | NEC Corporation | § |

**FIRST AMENDMENT TO**
**SETTLEMENT AGREEMENT AND RELEASE**

THIS FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE ("First Amendment") conditionally amends that certain Settlement Agreement And Release dated October 28, 1999 ("Settlement Agreement"), subject to approval by the Court, by and among defendants Toshiba America Information Systems, Inc., Toshiba Corporation, Toshiba America, Inc. and Toshiba America Electronic Components, Inc. (collectively, the "Settling Defendants") and plaintiffs Ethan Shaw and Clive D. Moon ("Plaintiffs") and the Settlement Class, as defined in Section 2 of this Settlement Agreement.

WHEREAS, the parties entered into the settlement Agreement which was preliminarily approved by the Court on or about October 28, 1999;

WHEREAS, the parties wish to facilitate the claims process for Settlement Class Members who may have particular problems in complying with the procedures set out in the Settlement Agreement, but who can otherwise establish their claim under the Settlement Agreement to the satisfaction of the Claims Administrator;

NOW THEREFORE, it is agreed by and among the undersigned, on behalf of the Settling Defendants, the Plaintiffs, and the Settlement Class, that the Settlement Agreement be amended as agreed in this First Amendment, subject to the approval of the Court, on the following terms and conditions:

Exhibit 1A

91

**A. Definitions.**

> All words, phrases and defined and capitalized terms used in this First Amendment have the same meaning as those same words, phrases, defined, and capitalized terms have in the Settlement Agreement. The Settlement Agreement is incorporated herein by reference.

**B.   Amendment To Section 12 Of The Settlement Agreement.**

> Section 12 of the Settlement Agreement is amended by adding new sub-section, making conforming numbering changes, and by modifying the existing language to refer to the new sub-sections by substituting the following completely restated Section 12 for the existing Section 12; to wit:

"12. <u>Claims Procedure</u>.

12.1 <u>Required Procedures And Documentation</u>

Subject to §12.2, in order to receive the Per Unit Settlement Package available under §7, a Settlement Class Member must mail to the Claims Administrator, postmarked on or before the Final Claims Bar Date:

(i)     the model number <u>and</u> the serial number of the affected Toshiba Laptop Computer; and

(ii)    a properly completed and executed Claim Form (in a form to be determined at the Forms And Notices Approval Hearing and/or at the Fairness Hearing); and

(iii)   a photograph or photocopy of the entire bottom of the affected Toshiba Laptop Computer Unit; and

(iv)    any other Product Identification Documentation that is expressly required by the applicable sub-section of Section 7 with respect to the particular claim being made.

12.2 <u>Alternative Claim Procedure for Multiple Computers</u>

Notwithstanding the above, Settlement Class Members who intend to file Claim Forms for more than one (1) Unit may do so by submitting to the Claim Administrator one Claim Form with an attachment that lists the model number, serial number, <u>and</u> approximate date of purchase of each Unit that is eligible for a Per Unit Settlement Package and which attaches any other required claim documentation, Proof of Purchase or Product Identification Documentation applicable to the Units, as listed in Sections 12.1, 12.3 and 12.4.

12.3 <u>Alternative To Photocopy As Proof Of Purchase</u>

If the Settlement Class Member who is making a claim for the Cash Remedy does not submit a copy or photograph of the bottom of the Unit, the Settlement Class Member may send the Claim Administrator Proof of Purchase acceptable to the Claim Administrator. Proof of Purchase may include invoices or filled purchase orders.   Proof of Purchase may also include sworn statements from TAIS representatives (approved by Settlement Class Counsel) that TAIS's warranty, support, sales or service records establish that the Settlement Class Member is entitled to the number and type of requested Per Unit Settlement Packages.

12.4 <u>Alternative To Photocopy As Proof Of Existence Or Proof Of Purchase Of Unit</u>

Regardless of whether a Settlement Class Member makes a claim for the Cash Remedy, §12.1(iii) requires a photograph or photocopy of the bottom of each Unit to be submitted. As an alternative to the photograph or photocopy required by §12.1(iii), a Settlement Class Member may submit alternative proof of the existence of the Unit and his right to make the Claim. The form of such alternative proof must be satisfactory to the Claims Administrator, subject to oversight by Settling Defendants and settlement Class Counsel, and ultimate determiniation by the Court if there is a dispute that cannot be resolved by agreement or the Claims Administration appeals process. In administering claims subject to this §12.4, in order to prevent any fraud and to resolve any competing claims, the Claim Administrator may wait until after the Final Claims Bar Date to issue the Per Unit Settlement Packages to claimants who are subject to this §12.4.

12.5 <u>Final Claims Bar Date</u>.

The Final Claims Bar Date shall be determined by the Court. The parties urge the Court to set said date to the Final Claims Bar Date stated on Exhibit A."

**C. References To Section 12 And Affected Procedures And Documentation**

All references to §12 in the Settlement Agreement and the procedures and documentation required or affected thereby shall refer to the above amended §12 and the procedures and documentation required or affected thereby.

**D. Claims Form**

The Claims Forms mailed after the Effective Date will be modified to reflect these amendments, in a form to be approved by the Court at or following the Fairness Hearing.

### E. Settlement Agreement In Force And Effect

Except as expressly amended by this First Amendment, the Settlement Agreement remains in full force and effect in accordance with its written terms, subject to final approval by the Court.

### F. Failure Of Court To Approve Amendment

This First Amendment is subject to approval by the Court. In the event that the Court fails to approve the amendment made by this First Amendment, then the Settlement Agreement shall remain in full force and effect in accordance with its written terms, naffected by this first Amendment, subject to final approval by the Court.

### G. Counterparts

This First Amendment may be executed in counterparts, each of which shall constitute an original. Facsimile signatures shall be considered valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this First Amendment.

EXECUTED and DELIVERED on or about January _19th_, 2000, but to be made effective as of the date on which the Court approves this Settlement Agreement and conditionally certifies a provisional Settlement Class.

| Toshiba America Information Systems, Inc. "TAIS" | Toshiba Corporation |
|---|---|
| By: _____ | By: _____ |
| Print Name:   Kozo Wada | Print Name:   Kozo Wada |
| Secretary of Toshiba Corporation | Its:      Corporate Secretary |
| Toshiba America, Inc. | Toshiba America Electronic Components, Inc. |
| By: _____ | By: _____ |
| Print Name:   Kozo Wada | Print Name:   Kozo Wada |
| Secretary of Toshiba Corporation | Secretary of Toshiba Corporation |
| Ethan Shaw by permission CdR | Clive D. Moon by permission Cd |
| Ethan Shaw | Clive D. Moon |
| FULBRIGHT & JAWORSKI, L.L.P. | THE REAUD LAW FIRM |
| By: Frank Jones by permission DdL | By: _____ |
| Frank G. Jones, a partner | Wayne A. Reaud |
| ORGAIN, BELL & TUCKER, L.L.P. | HUBERT OXFORD III, P.C. |
| By: Gilbert I. Low by permission Cd | By: _____ |
| Gilbert I. Low | Hubert Oxford III |
| DeWayne Layfield | |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| (1) | Ethan Shaw and | § No. 1:99CV0120 |
| (2) | Clive D. Moon, Plaintiffs on behalf | § Jury Demanded |
| | of themselves and all others | § |
| | similarly situated | § |
| | | § |
| | **VS.** | § |
| | | § Settlement Class Action Complaint for |
| (1) | Toshiba America Information | § Equitable Relief and Monetary |
| | Systems, Inc., | § Damages |
| (2) | NEC Electronics, Inc. | § |
| (3) | Toshiba Corporation, | § |
| (4) | Toshiba America, Inc., | § |
| (5) | Toshiba America Electronic | § |
| | Components, Inc., and | § |
| (6) | NEC Corporation | § |

## SECOND AMENDMENT TO
## SETTLEMENT AGREEMENT AND RELEASE

THIS SECOND AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE
("Second Amendment") conditionally amends that certain Settlement Agreement And
Release dated October 28, 1999 ("Settlement Agreement"), subject to approval by the Court,
by and among defendants Toshiba America Information Systems, Inc., Toshiba Corporation,
Toshiba America, Inc. and Toshiba America Electronic Components, Inc. (collectively, the
"Settling Defendants") and plaintiffs Ethan Shaw and Clive D. Moon ("Plaintiffs") and the
Settlement Class, as defined in Section 2 of this Settlement Agreement.

WHEREAS, the parties entered into the settlement Agreement which was
preliminarily approved by the Court on or about October 28, 1999;

WHEREAS, the parties wish to provide additional value to the Settlement Class
Members by extending the expiration date of the Coupons for Toshiba Computer Products by
an additional six (6) months;

NOW THEREFORE, it is agreed by and among the undersigned, on behalf of the
Settling Defendants, the Plaintiffs, and the Settlement Class, that the Settlement Agreement
be amended as agreed in this Second Amendment, subject to the approval of the Court, on the
following terms and conditions:

Exhibit 1B (101)

## A. Definitions.

All words, phrases and defined and capitalized terms used in this Second Amendment have the same meaning as those same words, phrases, defined, and capitalized terms have in the Settlement Agreement. The Settlement Agreement is incorporated herein by reference.

## B. Amendment To Section 7 Of The Settlement Agreement.

Section 7 of the Settlement Agreement is amended by extending the expiration date on all Coupons available under the Warranty Remedy or the Equitable Remedy to one year; to wit:

The thirteenth sentence in Section 7.3.3 shall be amended to read:   "Coupons shall expire one (1) year after mailed to an allowed claimant and bear a corresponding expiration date."

The eleventh sentence in Section 7.4 shall be amended to read:   "Coupons shall expire one (1) year after mailed to an allowed claimant and bear a corresponding expiration date."

## C. Settlement Agreement In Force And Effect

Except as expressly amended by this Second Amendment, the Settlement Agreement remains in full force and effect in accordance with its written terms, subject to final approval by the Court.

## D. Failure Of Court To Approve Amendment

This Second Amendment is subject to approval by the Court. In the event that the Court fails to approve the amendment made by this Second Amendment, then the Settlement Agreement shall remain in full force and effect in accordance with its written terms, unaffected by this Second Amendment, subject to final approval by the Court.

## E.   Counterparts

This Second Amendment may be executed in counterparts, each of which shall constitute an original. Facsimile signatures shall be considered valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Second Amendment.

EXECUTED and DELIVERED on or about January _____ 1 9⁴⁶, 2000, but to be made effective as of the date on which the Court approves this Settlement Agreement and conditionally certifies a provisional Settlement Class.

| Toshiba America Information Systems, Inc. "TAIS" | Toshiba Corporation |
|---|---|
| By: _____<br>Print Name:_____Kozo Wada_____<br>_____Secretary of Toshiba Corporation | By: _____<br>Print Name:_____Kozo Wada_____<br>Its:_____Corporate Secretary_____ |
| **Toshiba America, Inc.** | **Toshiba America Electronic Components, Inc.** |
| By: _____<br>Print Name:_____Kozo Wada_____<br>_____Secretary of Toshiba Corporation | By: _____<br>Print Name:_____Kozo Wada_____<br>_____Secretary of Toshiba Corporation |
| *Ethan Shaw by permission CJ*<br>Ethan Shaw | *Clive Moon by permission CJ*<br>Clive D. Moon |
| **FULBRIGHT & JAWORSKI, L.L.P.**<br><br>By: *Frank Jones by permission DJL*<br>_____Frank G. Jones, a partner | **THE REAUD LAW FIRM**<br><br>By: *Wayne Reaud by permission CJ*<br>_____Wayne A. Reaud |
| **ORGAIN, BELL & TUCKER, L.L.P.**<br><br>By: *Gilbert I Low by permission*<br>_____Gilbert I. Low | **HUBERT OXFORD III, P.C.**<br><br>By: *Hubert Ox-Crd III by permission CJ*<br>_____Hubert Oxford III |
| *DeWayne Layfield* | |

CLAIMS ADMINISTRATION AGREEMENT, dated as of _____ ___, 2000 (this "Agreement") among TOSHIBA CORPORATION, TOSHIBA AMERICA INFORMATION SYSTEMS, INC. (hereinafter referred to collectively as "Toshiba"), CITIBANK, N.A., a national banking association ("Citibank"), as claims administrator (the "Claims Administrator"), and Settlement Class Counsel ("Class Counsel") in the class action, *Shaw, et al v. Toshiba, et al*, in the United States District Court for the Eastern District of Texas, Beaumont Division (the "Court"), Case No. 1:99CV0120 ("the Action").

### ' WITNESSETH:

WHEREAS, Citibank has been requested to act as Claims Administrator by Toshiba and Class Counsel with respect to that certain Settlement Agreement and Mutual Release dated October 28, 1999 (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit A, and any amendments thereto, relating to the claims administration of the class action described therein, United States District Court for the Eastern District of Texas, Beaumont Division (the "Court") No.: 1:99CV0120 (the "Action");

WHEREAS, the Settlement Agreement contemplates the appointment of a claims administrator, and this agreement is subject to the Court appointing Citibank as claims administrator;

WHEREAS, Toshiba and Class Counsel desire to have the Claims Administrator perform certain duties and to provide certain services consistent with the terms of the Settlement Agreement;

WHEREAS, the Claims Administrator has the capacity to provide the services required hereby and is willing to perform such services for Toshiba and Class Counsel on the terms set forth herein and in the Settlement Agreement; and

WHEREAS, in order to facilitate the performance of such services for Toshiba and Class Counsel, Citibank has agreed to serve as deposit bank (in such capacity, the "Bank") pursuant to the terms of that certain Deposit Agreement between Toshiba, as depositor thereunder, and the Bank, and the terms of the Settlement Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Exhibit 2

104

ARTICLE I.

APPOINTMENT; POWERS AND DUTIES OF THE CLAIMS ADMINISTRATOR;
RELEVANT DOCUMENTATION; REPRESENTATIONS AND WARRANTIES

Section 1.1 <u>Appointment; Duties.</u> Subject to the appointment of Citibank as the claims administrator by the Court, Toshiba and Class Counsel, in the exercise of the authority granted to it under the Settlement Agreement, hereby accept the Claims Administrator as its agent to perform on behalf of Toshiba and Class Counsel the administrative services set forth on Schedule I (a preliminary outline of Class Administrator duties and functions) annexed hereto and made a part hereof as modified from time to time, in connection with the claims administration of the Action (all such services being hereinafter referred to as the "Related Services"). By its execution hereof, the Claims Administrator hereby accepts such appointment subject to the terms and conditions set forth herein. In addition, the Claims Administrator will be responsible for (i) causing the maintenance of a website and telephone bank to inform the class of its rights and address inquiries under the Settlement Agreement, and any amendments thereto (ii) the production and mailing of the appropriate notices and forms as directed by the Settlement Agreement and provided to the Claims Administrator pursuant to Section 1.4 herein, and (iii) perform the services required of the Claims Administrator under the Settlement Agreement, including without limitation those services described in paragraph 13 of the Settlement Agreement, and any amendments thereto. The Claims Administrator shall, if reasonably requested by Toshiba and Class Counsel, consult in respect of staffing and the administration of the claims process.

Section 1.2 <u>Deposit</u>. The Claims Administrator shall direct the Bank to distribute the Guaranteed Settlement Funds (as defined in the Settlement Agreement) from time to time as necessary in the performance of the Related Services. The Claims Administrator shall direct the Bank to distribute any remaining funds in the Guaranteed Settlement Fund pursuant to the terms of the Settlement Agreement, and any amendments thereto and consistent with the orders of the Court to the Charity established under the terms of the Settlement Agreement and any amendments thereto.

Section 1.3 <u>Timely Compliance.</u> The Claims Administrator shall carry out in a timely fashion and in accordance with the procedures and requirements of the Settlement Agreement all duties which the Claims Administrator is obligated to perform pursuant to this Agreement. The Claims Administrator may employ attorneys, accountants and other agents to assist it in the duties and obligations under this Agreement and the performance of the Related Services.

Section 1.4 <u>Relevant Documentation.</u> No later than 5 (five) business days prior to the mailing date of any information to potential claimants under the Action, Toshiba or Class Counsel shall deliver, or cause to be delivered to, the Claims Administrator the form for each of the (i) Notice of Pendency, substantially in the form of Exhibit B attached hereto (the "Notice of Pendency"), (ii) Claim Form, substantially in the form of Exhibit C attached hereto (the "Claim Form"), (iii) notification from the Class Counsel advising the Claims Administrator of the mailing date of the Claim Forms to the potential claimants in respect of the Action and (iv) such other relevant information and documentation required by the Claims Administrator in

2

connection with the performance of the Related Services. All mailings hereunder by the Claims Administrator, including all mailings by the Claims Administrator of any form to claimants or potential claimants, shall be made by first-class U.S. mail (not by certified or registered mail), unless otherwise required by the Class Counsel.

Section 1.5 <u>Representations and Warranties of the Claims Administrator.</u> The Claims Administrator represents and warrants as follows:

(a) <u>Due Organization</u>. The Claims Administrator is duly organized and validly existing as a national banking association.

(b) <u>Power and Authority</u>. The Claims Administrator has all necessary power and authority to execute and deliver this Agreement and to perform all of its obligations under this Agreement and the Settlement Agreement, and any amendments thereto, and has all necessary power and authority to own its property and conduct its business as contemplated by this Agreement and the Settlement Agreement and any amendments thereto; and the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action by the Claims Administrator.

(c) <u>Validity and Enforceability</u>. This Agreement constitutes a legal, valid, and binding obligation of the Claims Administrator, enforceable against the Claims Administrator in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability shall be considered in a proceeding in equity or at law, with all such provisions being exercised only under the authority and jurisdiction of the Court.

ARTICLE II.

COMPENSATION; EXPENSES

The Claims Administrator will provide the Related Services called for under this Agreement for such compensation and expense reimbursement as shall be separately agreed to in a fee letter between the Claims Administrator and Toshiba. Copies of all such fee letters and compensation and expense reimbursements documentation shall be furnished to Class Counsel. In addition, notwithstanding anything contained herein or in the Settlement Agreement to the contrary, the Claims Administrator shall be entitled to be reimbursed by Toshiba for all out-of-pocket expenses, disbursements and advances incurred by it in connection with the administration of this Agreement, including reasonable compensation and expenses of its attorneys, agents and other experts in connection with the performance of the Related Services, subject to the approval of the Court. The obligations of Toshiba hereunder to compensate the Claims Administrator and to pay or reimburse the Claims Administrator for expenses, disbursements and advances shall survive the satisfaction and discharge of this Agreement or the earlier resignation or removal of the Claims Administrator and shall remain subject to the authority, jurisdiction and approval of the Court.

106

ARTICLE III.

THE CLAIMS ADMINISTRATOR

Section 3.1 <u>Limitation of Responsibility of the Claims Administrator.</u>

(a)   The Claims Administrator shall have no responsibility under this Agreement other than to (1) render the services called for hereunder and the Settlement Agreement, and any amendments thereto, and (2) to comply with all orders of the Court.  Neither the Claims Administrator nor any of its affiliates, directors, officers, shareholders and employees will be liable to Toshiba, any claimant or others, except by reason of acts constituting breach of contract, actual fraud, negligence, willful misconduct or gross negligence of the Claims Administrator's duties hereunder.  The Claims Administrator makes no representations as to, and shall not be liable for the validity, sufficiency or enforceability of the Claim Forms, the Notice of Pendency, the Settlement Agreement or any materials it receives for further distribution to claimants hereunder other than to the extent the Claims Administrator must comply with the provisions of this Agreement and the Settlement Agreement, and any amendments thereto.

(b)   Neither the Claims Administrator nor any of its officers, directors, employees or agents shall be liable for any action taken or omitted under this Agreement or in connection with the Settlement Agreement, and any amendments thereto except to the extent caused by the Claims Administrator's breach of contract, actual fraud, negligence, gross negligence or willful misconduct, as determined by the final judgment of the Court.  Toshiba  (for itself and any person or entity claiming through it) hereby releases, waives, discharges, exculpates and covenants not to bring suit against the Claims Administrator for any action taken or omitted under this Agreement except to the extent caused by the Claims Administrator's breach of contract, actual fraud, negligence, gross negligence or willful misconduct.  Anything in this Agreement to the contrary notwithstanding, in no event shall the Claims Administrator be liable to Toshiba for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Claims Administrator has been advised of the likelihood of such loss or damage and regardless of the form of action.

(c)   Toshiba shall indemnify, defend and hold harmless the Claims Administrator and its officers, directors, employees, representatives and agents, from and against and reimburse the Claims Administrator for any and all claims, expenses, obligations, liabilities, losses, damages, injuries (to person, property, or natural resources), penalties, stamp or other similar taxes, actions, suits, judgments, reasonable costs and expenses (including reasonable attorney's and agent's fees and expenses) of whatever kind or nature regardless of their merit, demanded, asserted or claimed against the Claims Administrator directly or indirectly relating to, or arising from, claims against the Claims Administrator by reason of its participation in the transactions contemplated hereby, including without limitation all reasonable costs required to be associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by the Claims Administrator's breach of contract, actual fraud, negligence, gross negligence or willful misconduct.  The provisions of this

Section 3.1 shall survive the termination of this Agreement or the earlier resignation or removal of the Claims Administrator.

Section 3.2  Reliance; Rights of Claims Administrator.

(a)  The Claims Administrator shall have no liability in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to have been genuine and presented by the proper party or parties provided same is required by the terms of this Agreement and the Settlement Agreement, and any amendments thereto, provided such is in compliance therewith. The Claims Administrator may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.

(b)  In the performance of its duties and obligations under this Agreement and the Settlement Agreement, and any amendments thereto, the Claims Administrator may, at the expense of Toshiba, act directly or employ and act through agents, attorneys, nominees or custodians and enter into agreements with any of them, written notice of which shall be given to Toshiba and Class Counsel, subject to the continuing jurisdiction of the Court. The Claims Administrator shall ensure that any such agents, attorneys, nominees or custodians comply with the terms and conditions of the Settlement Agreement and any amendments thereto.

(c)  The Claims Administrator shall not be liable for any error of judgment made in good faith by an officer or officers of the Claims Administrator, except to the extent caused by the Claims Administrator's breach of contract, actual fraud, negligence, gross negligence or willful misconduct, as conclusively determined by the Court.

(d)  The Claims Administrator shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with any joint direction of Toshiba and the Class Counsel given under this Agreement or the Settlement Agreement, except to the extent that the Claims Administrator was negligent, grossly negligent, or for actual fraud, breach of contract, or willful misconduct.

(e)  None of the provisions of this Agreement shall require the Claims Administrator to expend or risk its own funds or otherwise to incur any liability, financial or otherwise, in the performance of any of its duties hereunder.

(f)  Whenever in the administration of the provisions of this Agreement the Claims Administrator shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action to be taken hereunder, the Claims Administrator may, in the absence of breach of contract, actual fraud, negligence, gross negligence or wilfull misconduct on the part of the Claims Administrator, conclusively rely upon a certificate signed by an authorized signatory of the Class Counsel or the Court, and delivered to the Claims Administrator and such certificate, in the absence of breach of contract, actual fraud, negligence, gross negligence or wilfull misconduct on the part of

the Claims Administrator, shall be full warrant to the Claims Administrator for any action taken, suffered or omitted by it under the provisions of this Agreement upon the faith thereof

(g) The Claims Administrator shall not, except as specifically required by the terms of this Agreement or the Settlement Agreement, be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, entitlement order, approval or other paper or document, other than to comply with the claims or claims appeal process contained or referenced herein.

(h) . The Claims Administrator shall distribute all amounts received to be paid to claimants as provided by the terms of the Settlement Agreement, the amendments thereto, and the Deposit Agreement; provided, however that such amounts have been deposited pursuant to the Deposit Agreement.

Section 3.3 <u>Resignation and Merger of Claims Administrator.</u>

(a) The Claims Administrator may at any time, subject to Court approval resign by giving thirty 30 days prior written notice of resignation to Toshiba and the Class Counsel such resignation to be effective upon the approval of Toshiba, Class Counsel and the Court, and appointment of a successor Claims Administrator by the Court.

(b) Any corporation into which the Claims Administrator may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Claims Administrator shall be a party, or any corporation succeeding to the business of the Claims Administrator shall be the successor of the Claims Administrator hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

ARTICLE IV.

CLAIMS APPEAL PROCESS

Section 4.1 <u>Claim Denial Notice.</u>  While the claims process contemplates the direction of defect correspondence to claimants on various potential defects in the claims form and proof, the Claims Administrator will timely process and follow up on this correspondence to clear defects and confer benefits in a timely manner.  If the defects can not be cleared or resolved, the Claims Administrator will forward a denial of claim notice to the claimant directing claimant to forward an appeal of disallowed claim within thirty (30) days to the following designated Claims Administrator representative:

Toshiba Class Action Settlement
915 Broadway, 5th Floor
New York, New York 10010
Attn: Claims Administration Department

6

\\09

Section 4.2 Appeal to Claims Administrator. Within fifteen (15) days of receipt of an appeal of disallowed claim, this designated Claims Administrator representative will review the claim file and any additional information received from the claimant to make a determination as to whether the claimant is entitled to the benefits sought and (1) forward notice to the claimant that the claimant's claim has been accepted or (2) in the event of a claims denial, a notice of final action by the Claims Administrator denying the claim and informing the claimant of the claimant's further rights of appeal to the Court, subject to Section 4.3 below. In the event that a notice of final action by the Claims Administrator is sent, the claimant will be provided information in the notice concerning where the claimant's appeal should be directed and providing that this appeal must be made by motion to the Court and filed no later than fifteen (15) days from receipt of the notice of final action from the Claims Administrator. Copies of any notice of final action will be copied and mailed contemporaneously with the forwarding of notice to Class Counsel and Settling Defendants' Counsel.

Section 4.3  Claims Administration Appeals Panel. A panel will be established consisting of the following to assist in the disposition of appeals by claimants to the Claims Administrator: Claims Administrator representative, and two (2) Special Masters appointed by the Court. All appeals to the Claim Administrator are to be ruled upon by this panel. The panel will confer periodically, as necessary to timely address appeals, consider the merits of the appeal and vote to approve or deny the claim. Each member will have one vote weighted equally on each appellate decision. A decision to approve the claim is final. A decision to deny the claim is the subject to an appeal to the Court pursuant to Sections 4.2 and 4.4 of this Agreement provided the claimant pursues such an appeal.

Section 4.4  Appeal to Court. The Court will rule upon the appeal after first providing notice to the claimant, the Claims Administrator, Class Counsel, and Settling Defendants' counsel. The Court may request and the Claims Administrator will provide any additional information which the Court deems necessary in considering the appeal of the claimant.

Section 4.5  Retention of Records. The Claims Administrator will scan any and all defect correspondence, denial of claim notices, and notices of final action by Claims Administrator for inclusion in the claim file established for each claimant. The hardcopy of these items will also be retained consistent with the retention of other records generated or received pursuant to the claims process.

ARTICLE V

MISCELLANEOUS

Section 5.1  Amendments. This Agreement may not be amended, changed, modified, waived or terminated (except as otherwise expressly provided herein) except by means of a writing signed by the parties hereto and approved by the Court.

Section 5.2  Governing Law. The effect and meaning of this Agreement and the rights of all parties hereunder shall be governed by, and construed in accordance with the laws of the State

of Texas, without regard to choice-of-law principles of the law of such state that would require the application of the laws of a jurisdiction other than such state. The Claims Administrator, on behalf of itself and any and all of its agents, hereby submits to the exclusive jurisdiction of the United States District Court for the Eastern District of Texas, Beaumont Division (i.e. the Court) for purposes of all legal proceedings arising out of or relating to this Agreement or the transactions contemplated hereby. The Claims Administrator irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereinafter have to the laying of the venue of such proceeding brought in such Court and any claim that any such proceeding brought in such Court has been brought in an inconvenient forum.

Section 5.3 Notices. All notices, requests, directions and other communications permitted or required hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered or telecopied to the recipient as follows:

If to the Claims Administrator, to:

Citibank, N.A.
111 Wall Street
New York, New York 10043
Attention: Escrow Department
Facsimile: (212) 657-3866/4024

If to Toshiba, to:

Toshiba Corporation
c/o Toshiba America Information Systems, Inc.
9740 Irvine Blvd.
Irvine, California 92618-1697
Attention: Ira Wafel, Esq.
Facsimile: (949) 587-6235

with a copy to:

Fulbright & Jaworski, L.L.P
1301 McKinney, Suite 5100
Houston, Texas 77010
Attention: Frank G. Jones, Esq.
Facsimile: (713) 691-9246

If to the Class Counsel, to:

Settlement Class Counsel
P.O. Box 4047
Beaumont, Texas 77704
Attention: DeWayne Layfield, Esq.
Facsimile: (409) 832-2156

If to the Court, to:

> Clerk, United States District Court, Eastern District of Texas
> 300 Willow Street
> Room 104
> Beaumont, Texas 77704

Each party hereto by notice given in accordance herewith may designate additional or different addresses for subsequent notices or communications as to such party. All such notices shall, when mailed or telecopied, as the case may be, be effective when received.

Section 5.4  Confidentiality. The parties hereby agree to keep all information relating to this Agreement and the transactions contemplated hereby confidential. Notwithstanding anything herein to the contrary, the foregoing shall not be construed to prohibit (i) disclosure of any and all information that is or becomes publicly known, or information obtained by the Claims Administrator from sources other than Toshiba, (ii) disclosure of any and all information (A) if required to do so by any applicable statute, law, rule or regulation, (B) to any government agency or regulatory body having or claiming authority to regulate or oversee any respects of the Claims Administrator's business or that of its affiliates, (C) pursuant to any subpoena, civil investigative demand or authority, arbitrator or arbitration to which the Claims Administrator or an affiliate or an officer, director, employer or shareholder thereof is a party, or (D) to any affiliate, independent or internal auditor, agent, employee or attorney of the Claims Administrator having a need to know the same, provided that Escrow Agent advises such recipient of the confidential nature of the information being disclosed, or (iii) any other disclosure authorized by Toshiba, Class Counsel or the Court. Nothing herein shall prevent Class Counsel from disclosing this Agreement, or the terms of this Agreement to members of the Settlement Class.

Section 5.5  Successors and Assigns. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each of parties hereto.

Section 5.6  Definitions. Terms not otherwise defined in this Agreement shall have the definitions given thereto in the Settlement Agreement or the Deposit Agreement, as the case may be.

Section 5.7  Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute but one and the same instrument.

Section 5.8.  Reports. The Claims Administrator will agree to timely provide reports contemplated in the Related Services section of this Agreement as well as any additional reports ordered by the Court.

Section 5.9  Access to Records. The Claims Administrator will agree to make available upon reasonable prior written notice to the Claims Administration for inspection and audit on a

112

periodic basis, by Class Counsel and Settling Defendants' counsel, records pertaining to claims administration of the Claims Administrator and any of its agents during normal business hours.

Section 5.10  Assignment.  No party may assign any of its rights or obligations under this Agreement without approval of the Court.

Section 5.11  Severability.  The invalidity, illegality, or unenforceability of any provision of this Agreement shall in no way affect the validity, legality, or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

Section 5.12  Waiver.  The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies.  The waiver of any right or remedy hereunder shall not preclude the subsequent exercise of such right or remedy.

Section 5.13  Headings.  The headings contained in this Agreement are for convenience of reference only and shall have no effect on the interpretation or operation hereof.

[SIGNATURE PAGE FOLLOWS]

113

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed effective as of the day first above written.

TOSHIBA CORPORATION

By: _____
      Name:
      Title:

TOSHIBA AMERICA INFORMATION SYSTEMS

By: _____
      Name:
      Title:

SETTLEMENT CLASS COUNSEL, on behalf of itself

And the Settlement Class

By: _____
      Name:
      Title:

CITIBANK N.A., as Claims Administrator

By: _____
      Name:
      Title:

114

01463.094 #148298

115

Exhibit A

Copy of Settlement Agreement

Exhibit B

Form of Notice of Pendency

Exhibit C

Form of Claim Form

01463.094 #148298

118



**A    C    S**

# TOSHIBA

# CLASS ACTION

# PROCESSING PROCEDURES

The Settlement Agreement and its amendments thereto supercede
the processing procedures contained herein and the processing
procedures will be made to conform with same.

## DECEMBER 27, 1999

**Financial & Securities Services**
**212.505.4400  * 212.505.4575 (fax)**
**915 Broadway 5th Floor * New York, NY 10010**

# TABLE OF CONTENTS

|                                                              | Page |
|--------------------------------------------------------------|------|
| RECEIPT OF MAIL PROCESS                                       | 1    |
| OPT-OUT PROCESS                                               | 2    |
| CLAIM PROCESS                                                 |      |
| Scan and Key Claims                                           | 3    |
| Claim Form Examination                                        | 4    |
| System Validation of Claim Form                              | 5    |
| DEFECT PROCESS                                                |      |
| Defect Letter Mailing                                         | 6    |
| Defect Correction Process                                     | 7    |
| COUPON/SOFTWARE ISSUANCE PROCESS                              | 8    |
| COUPON REDEMPTION PROCESS                                     | 9    |
| HARDWARE REPLACEMENT ALTERNATIVE PROCESS                     | 10   |
| CHECK ISSUANCE PROCESS                                        | 11   |
| CORPORATE CLAIM PROCESS                                       | 12   |
| CORPORATE COUPON REDEMPTION PROCESS                          | 13   |
| ATTACHMENTS                                                   |      |
| Cash Remedy Rules and Entitlement                            | A    |
| Warranty Remedy Rules and Entitlement                        | B    |
| Defect Codes and Rules                                        | C    |
| Data Capture – Claim Form, Opt-Out, Coupon Redemption        | D    |
| Three Examples of Photo of Serial # Formats                  | E    |
| Opt-Out Form                                                  | F    |
| Suggested Reports                                             | G    |

\120

RECEIPT OF MAIL PROCESS

1

# RECEIPT OF MAIL PROCESS

This chart shows how mail received from the P. O. Box is processed.

First, all mail that is returned by the post office will be checked to see if a corrected address is provided.  If it is, the address on our database will be corrected and the item will be re-mailed to the corrected address.  If a corrected address is not provided, the envelope will be filed.

Next, items will be divided into four categories, based on the contents of the envelope, and treated as described in the section for each item as follows:

      Claim Form

      Defect Correction

      Opt-Out

      All Other Correspondence

122

# RECEIPT OF MAIL PROCESS



1-A

123

# OPT – OUT PROCESS

2

# OPT – OUT PROCESS

First, all Opt-Out Forms will have an ACS Control Number attached.

The item and the envelope will then be scanned.

If the item is postmarked after the opt-out deadline, a reject letter will be sent and a copy of the opt-out will be sent to counsel.  Scanned copies of the opt-out forms will also be available for viewing through the Internet.

If an opt-out request is submitted on a non-standard form or if the form is completed incorrectly, the opt-out will be rejected.

Opt-outs will then be entered into the system, counsel will be notified of all opt-outs, and a list will be generated of all persons who have elected to opt-out.

# OPT-OUT PROCESS



*Question : Only accept "Opt-Out Form" ?*

2-A

126

## CLAIM PROCESS - SCAN AND KEY CLAIMS

3

# SCAN AND KEY CLAIMS

All claims and the associated documents

    Claim Form
    Proof of Purchase
    Photo
    Envelope

will have the same ACS Control Number affixed to them and then be scanned.

ACS will examine the claim forms from the scanned images and then key the required information (see page D-1) including any defects that have been identified.

All images will be indexed by ACS Control Number, Name and Model and Serial Number for easy retrieval.  These images will be maintained on-line through the Internet for viewing and distributed on a CD at the completion of the job.

All documents, after they are scanned, will be filed in a secured space.

# CLAIM PROCESS - SCAN AND KEY CLAIMS



*Details on pages 4A and 4B*



*At the end of the job produce a CD*

3-A

129

# CLAIM PROCESS - CLAIM FORM EXAMINATION

4

130

# CLAIM FORM EXAMINATION

Each claim form will be thoroughly reviewed as described below.

Is the claim form signed?  If not, a Signature defect code will be assigned.

Are the model and serial number provided on the claim form?  If not, and a clear photo is provided, the serial number on the photo will be used instead.  If a usable photo is not provided either, the claim will be assigned a No Serial Number and a No Photo defect code.

Is the purchase date provided?  If not, ACS will attempt to use the date of manufacture as the date of purchase.  If this is unavailable, the claim will be assigned a No Serial Number and a No Purchase Date defect code.

Is it a Toshiba laptop product?  If not, the claim will be identified as Not A Toshiba Product defect.

Do the Serial Number on the Claim Form and the Photo agree?  If not, the claim will be flagged as a Non-Matching Serial Number defect.

Next, proof of purchase is review to make sure one of the following is provided:
  Photo
  Copy of Check
  Credit Card Receipt
  Copy of Bank Check
  Other receipt
If not, the claim will be assigned a Proof of Purchase defect.

The final check will be to see if the perjury certificate date of purchase is filled in.  If not, it will be assigned a Perjury defect.

Finally, the Claim Form data and defect codes will be entered in the system.

\131\

# CLAIM PROCESS - CLAIM FORM EXAMINATION



4-A

132



Review Proof of Purchase

If serial # is on claim form can I accept claim without proof of purchase ?

Is this critical ?

4-B

133

## CLAIM PROCESS - SYSTEM VALIDATION OF CLAIM FORM

5

134

# SYSTEM VALIDATION OF CLAIM FORM

Each claim form, once entered into the system, will be reviewed by the system for further inconsistencies.

Has the claimant opted-out?  If so, the claim will be identified as an Opt-Out defect and counsel will be notified.

If the Model and Serial Number do not match the complete Toshiba file of laptops manufactured in the United States, the claim will be identified as Serial Number Not Manufactured by Toshiba.

Does the model and serial number duplicate any other claim already submitted?  If it does, both claims will be flagged as Duplicate Claim Defects.  A list will be generated of duplicate claims to determine if:

> It is the same person submitting two claims
> The claim has been submitted by a corporation and an
> > employee.
> Two separate individuals

The next review will be to determine if the proper Remedies have been identified by the claimant.  A comparison of the boxes that have been filled out will be made against proof of purchase date or, if this is unavailable, the date of manufacture.  If the proper boxes have not been filled out, the appropriate Remedy defect will be identified.  The system will retain the claimant requests and the computer determined entitlements.

Finally, if more than one software operating system request box has been filled out, the claim will be flagged as a Software defect.

# CLAIM PROCESS - SYSTEM VALIDATION OF CLAIM FORM



*Cash remedy box checked in error*

*Entitled to cash remedy but didn't check box*

*Warranty remedy box checked in error*

*Entitled to warranty but didn't check box*

5-A



Equitable remedy box
checked in error

Entitled to equitable
remedy but didn't check
box

5-B

137

## DEFECT PROCESS - DEFECT LETTER MAILING

6

# DEFECT LETTER MAILING

On a daily basis, all new defects will be printed out by type to be handled in an agree upon manner, whether by mail or phone.

ACS expects to prepare a list of recommendations on how to handle certain defects.

# DEFECT PROCESS - DEFECT LETTER MAILING



6-A

140

# DEFECT PROCESS - DEFECT CORRECTION PROCESS

7

# DEFECT CORRECTION PROCESS

A separate Post Office Box will be established to receive responses to defects.

When a response is received, the original defect reason will be compared to the submission to see if it has been corrected.

The following will result:

> If the defect is fully corrected, the defect code will be removed.

> If the defect is not resolved the claimant will be re-notified.

> If the defect is partially resolved, the claimant will be notified of the change in status and asked to resolve the remaining defect.

# DEFECT PROCESS - DEFECT CORRECTION PROCESS



7-A

## E-CARD/SOFTWARE ISSUANCE PROCESS

8

144

# E-CARD/SOFTWARE ISSUANCE PROCESS

E-cards will be issued to a claimant within five days after a valid claim is received. If a request has been made to receive the software remedy on a floppy disk, the software will be mailed with the e-cards.

Claimants with claims accepted this week will be identified and divided as follows:

    Claimants receiving a $225 e-card or a $100 e-card

Once this determination has been made, claimants will be further subdivided as follows:

    By operating system, so that the correct software can be enclosed

    If claimants are to receive a defect advice (minor defect) as opposed to being treated as a major defect, this advice will also be included with the e-card.

# E-CARD / SOFTWARE ISSUANCE PROCESS



8-A

146

# E-CARD REDEMPTION PROCESS

9

# E-CARD REDEMPTION PROCESS

The customer will select an item to purchase through one of three methods:  a store, by phone or the internet.

If in a store, the customer gives the e-card to the clerk and the clerk swipes it and enters the amount.  If by phone, the customer tells the e-card # and pin to the clerk and the clerks enters the e-card in a terminal and selects the item.  If over the internet, the customer enters the e-card # and pin and the item selected.

All transactions are looked up in the e-card database.  If the e-card is not valid, a non-approval message will be returned and the transaction deemed complete.

If the e-card is valid, sufficient balance will be determined.  If the balance is sufficient, the e-card will be decremented from the database, an approval message sent and the transaction deemed complete.  If the balance is insufficient, the customer may choose to pay the difference, reduce the purchase or buy nothing.

# E-CARD REDEMPTION PROCESS



9-A

149

# HARDWARE REPLACEMENT ALTERNATIVE PROCESS

10

150

# HARDWARE REPLACEMENT ALTERNATIVE PROCESS

A claimant who is not satisfied with the software remedy, may request a hardware replacement alternative.

The following review will be made prior to honoring this request:

Has the deadline passed?

Has the claimant submitted a sworn statement?

If both of the above is acceptable, did the claimant return both the $225 coupon or a check for $25.  If neither, let the claimant know that the request cannot be honored.

If the coupon is returned, insure that it still outstanding on the system.  If it is, put a "stop" against it, re-issue a $200 coupon and mail it with the hardware.

If a $25 check is returned, deposit the check in a special account for this purpose, insure that the coupon is still outstanding on the system.  If it is, put a "stop" against it, re-issue a $200 coupon and mail it with the hardware.  If the coupon has already been redeemed, let the claimant know the request cannot be honored.

# HARDWARE REPLACEMENT ALTERNATIVE



10-A

152

## CHECK ISSUANCE PROCESS

11

153

# CHECK ISSUANCE PROCESS

On June 13, all claimants that are eligible for the Cash Remedy and do not have a pending defect, will be issued a check for an amount based on their date of purchase as shown in Attachment A.

ACS will also feed this information to Citibank to incorporate in their reconciliation system and ACS will set this up in its reconciliation system in order to provide on-line response to inquiries.

# CHECK ISSUANCE PROCESS



11-A

# CORPORATE CLAIM PROCESS

12

# CORPORATE CLAIM PROCESS

ACS will establish a Corporate Account Manager to interface with major corporations and to receive automated claims with acceptable proof of purchase.

The models and serial numbers on the file will be compared against Toshiba's master list of laptops manufactured in the United States.

The submitted dates of purchase will be compared against the Toshiba dates of manufacture for acceptability.

The model and serial numbers will then be reviewed to see if they duplicate any existing claims on the file.  If so, both claims will be flagged as duplicate and investigated.

Corporate clients will receive a statement listing each serial number, its acceptance/rejection and its entitlement.

# CORPORATE CLAIM PROCESS



Receive automated list from corporation

Does data contain for each laptop: Model & Serial # Date purchased — No → *What other info?*

Yes

Load data into class action system

Are models and serial #s in Toshiba database? — No → *What is acceptable proof of purchase for corporate claims ? Photo, receipt, corporate check, purchase order, statement from vendor, etc.*

Yes

Is purchase date consistent with date of manufacture? — No →

Yes

Are any serial # duplicative ? — Yes → Code each claim as duplicate serial # defect → Generate list of duplicates and identify claimants

No

Is purchase documentation sufficient ? — No → *What is acceptable ?*

Yes

Valid Claim

Have Corporate Account Manager resolve

*Note: A statement will be sent to corporate customers listing entitlements by serial # (or defects ?)*

12-A

158

CORPORATE COUPON REDEMPTION PROCESS

13

159

# CORPORATE COUPON REDEMPTION PROCESS

Once a coupon redemption is identified as a major corporate customer, ACS will validate the submission for proper purchase of Toshiba products, valid receipts and the remaining availability of coupon balance.

Once approved, a check and statement will be mailed to the corporate customer.

# CORPORATE COUPON REDEMPTION PROCESS



13-A

## CASH REMEDY

## RULES

| Month | Serial # (1st digit) | Year (2nd digit) | Entitled to Cash Remedy | Amount |
|---|---|---|---|---|
| January | 1 | 8 | No | |
| February | 2 | 8 | Yes* | |
| March | 3 | 8 | Yes | $210.00 |
| April | 4 | 8 | Yes | $221.10 |
| May | 5 | 8 | Yes | $232.20 |
| June | 6 | 8 | Yes | $243.30 |
| July | 7 | 8 | Yes | $254.40 |
| August | 8 | 8 | Yes | $265.50 |
| September | 9 | 8 | Yes | $276.60 |
| October | X | 8 | Yes | $287.70 |
| November | Y | 8 | Yes | $298.80 |
| December | Z | 8 | Yes | $309.90 |
| January | 1 | 9 | Yes | $321.00 |
| February | 2 | 9 | Yes | $332.10 |
| March | 3 | 9 | Yes | $343.20 |
| April | 4 | 9 | Yes | $354.30 |
| May | 5 | 9 | Yes | $365.40 |
| June | 6 | 9 | Yes | $376.50 |
| July | 7 | 9 | Yes | $387.60 |
| August | 8 | 9 | Yes | $398.70 |
| September | 9 | 9 | Yes | $409.80 |
| October | X | 9 | Yes | $420.90 |
| November | Y | 9 | Yes | $432.01 |
| December | Z | 9 | Yes | $443.21 |

*If photocopy shows February, 1998 claimant is entitled to March, 1998 cash remedy of $210.00

A

## WARRANTY REMEDY

### RULES

| Month | Serial # (1st digit) | Year (2nd digit) | Warranty | Entitled to Warranty Remedy | Warranty | Entitled to Warranty Remedy |
|---|---|---|---|---|---|---|
| January | 1 | 8 | -1 | No | -3 | Yes |
| February | 2 | 8 | -1 | No | -3 | Yes |
| March | 3 | 8 | -1 | Yes | -3 | Yes |
| April | 4 | 8 | -1 | Yes | -3 | Yes |
| May | 5 | 8 | -1 | Yes | -3 | Yes |
| June | 6 | 8 | -1 | Yes | -3 | Yes |
| July | 7 | 8 | -1 | Yes | -3 | Yes |
| August | 8 | 8 | -1 | Yes | -3 | Yes |
| September | 9 | 8 | -1 | Yes | -3 | Yes |
| October | X | 8 | -1 | Yes | -3 | Yes |
| November | Y | 8 | -1 | Yes | -3 | Yes |
| December | Z | 8 | -1 | Yes | -3 | Yes |
| January | 1 or 01 | 7 | -1 | No | -3 | Yes |
| February | 2 or 02 | 7 | -1 | No | -3 | Yes |
| March | 3 or 03 | 7 | -1 | No | -3 | Yes |
| April | 4 or 04 | 7 | -1 | No | -3 | Yes |
| May | 5 or 05 | 7 | -1 | No | -3 | Yes |
| June | 6 or 06 | 7 | -1 | No | -3 | Yes |
| July | 7 or 07 | 7 | -1 | No | -3 | Yes |
| August | 8 or 08 | 7 | -1 | No | -3 | Yes |
| September | 9 or 09 | 7 | -1 | No | -3 | Yes |
| October | X or 10 | 7 | -1 | No | -3 | Yes |
| November | Y or 11 | 7 | -1 | No | -3 | Yes |
| December | Z or 12 | 7 | -1 | No | -3 | Yes |
| January | 1 or 01 | 6 | -1 | No | -3 | No |
| February | 2 or 02 | 6 | -1 | No | -3 | No |
| March | 3 or 03 | 6 | -1 | No | -3 | Yes |
| April | 4 or 04 | 6 | -1 | No | -3 | Yes |
| May | 5 or 05 | 6 | -1 | No | -3 | Yes |
| June | 6 or 06 | 6 | -1 | No | -3 | Yes |
| July | 7 or 07 | 6 | -1 | No | -3 | Yes |
| August | 8 or 08 | 6 | -1 | No | -3 | Yes |
| September | 9 or 09 | 6 | -1 | No | -3 | Yes |
| October | X or 10 | 6 | -1 | No | -3 | Yes |
| November | Y or 11 | 6 | -1 | No | -3 | Yes |
| December | Z or 12 | 6 | -1 | No | -3 | Yes |

B

163

## DEFECT CODES

## RULES

### Major

No photo or photocopy
Not a Toshiba photo or product
No serial number on photo or not clear
Claim form serial # not the same as photo submitted
No proof of purchase          (only if cash remedy checked)
No signature
Multiple software disks requested
Duplicate serial number
Perjury Certification requesting date of purchase on claim form missing

### Minor (ACS will correct)

Serial number on photo not equal to serial number written on claim form
(ACS will use photo?)

### System Identified Defects

Wrong boxes checked on claim form (based on Model and Serial number – ACS will determine correct boxes (based on serial number), assume these are correct and notify claimant when coupon is mailed

No boxes checked on claim form – ACS will determine correct boxes (based on serial number), assume these are correct and notify claimant when coupon is mailed

C

164

TOSHIBA LAPTOP CLAIM CAPTURE – Salt Lake City

| Description | Length |
|---|---|
| Last Name | 30 |
| First Name | 15 |
| Middle Initial | 1 |
| Company Name | 35 |
| Address 1 | 35 |
| Address 2 | 35 |
| City | 20 |
| State | 2 |
| Zip Code | 9 |
| Day Phone Number | 10 |
| Fax Number | 10 |
| E-mail Address | 30 |
| Model Number | 8 |
| Serial Number | 10 |
| (1) Cash Remedy (Y/N) | 1 |
| (2) Warranty Remedy (Y/N) | 1 |
| (3) Equitable Remedy (Y/N) | 1 |
| (4) Software Patch (Y/N) | 1 |
| Operating System | 1 |

    -(0) Microsoft Windows 3.x
    -(1) Microsoft Windows 95
    -(2) Microsoft Windows 98
    -(3) Microsoft Windows NT 4.0
    -(4) Microsoft Windows 2000
    -(5) DOS 5.x
    -(6) DOS 6.x
    -(7) FreeBSD 3.x
    -(8) Linux 2.0
    -(9) Linux 2.2

| Description | Length |
|---|---|
| Certification On or About Date | 8 |
| Signed (Y/N) | 1 |
| Date Signed | 8 |
| Postmark Date | 8 |
| ACS Control Number | 10 |
| Proof of Purchase OK | 1 |

Claim Capture (continued)

| Description | Length |
|---|---|
| Warranty Number of Years | 1 |
| Claim Mailed or Through Internet (M/I) | 1 |
| Link Number | 10 |
| Model Number from Photo | 8 |
| Serial Number from Photo | 10 |
| Opt-out (Y/N) | 1 |
| System Generated Defects (SLC) | 10 |
| Manual Defects (SLC) | 10 |

D1

TOSHIBA LAPTOP OPT-OUT CAPTURE

| Description | Length |
|---|---|
| ACS Control Number | 10 |
| Last Name | 30 |
| First Name | 15 |
| Middle Initial | 1 |
| Company Name | 35 |
| Address 1 | 35 |
| Address 2 | 35 |
| City | 20 |
| State | 2 |
| Zip Code | 9 |
| Phone Number | 10 |
| Fax Number | 10 |
| E-mail Address | 30 |
| Model Number | 8 |
| Serial Number | 10 |
| Date of Purchase | 8 |
| Signed (Y/N) | 1 |
| Opt-Out Box Checked (Y/N) | 1 |
| Opt-Out Form Not Used | 1 |

D2

TOSHIBA LAPTOP COUPON REDEMPTION CAPTURE

| Description | Length |
|---|---|
| Coupon Number | 10 |
| ACS Control Number | 10 |
| Corporate Number | 10 |
| Link Number | 10 |
| Date Issued | 8 |
| Expiration Date | 3 |
| Date Redeemed | 8 |
| Amount Redeemed | 3 |
| Postmarked Date | 8 |
| Retailer Number | 10 |
| Retailer Name | 30 |
| Address 1 | 35 |
| Address 2 | 35 |
| City | 20 |
| State | 2 |
| Zip Code | 9 |
| Model Number | 8 |
| Serial Number | 10 |
| Reason for Disapproval | 1 |

      1-Not Toshiba Product
      2-Received After Expiration Date
      3-No proof of Purchase

D3

168

## SUGGESTED REPORTS

### Claims Received Analysis

Number of Claims Received

Total
Good
Defect

Cash Remedy
Warranty Remedy
Equitable Remedy

Mailed claim form or Internet generated claim form

Software requested by operating system

List of claimants with multiple (greater than 10?) claims

### Claim Volume Analysis

By Day, Week or Month

### Defect Analysis

Number of defects by type of defect

Cash and Coupon value of defects

Duplicate Claim Number report (with claimant names)

### Opt-Out List

Claimants who have opted-out

### Coupons Distributed

### Hardware Replacement Alternative Requests

G

169

_____ __, 2000


ACS Financial & Securities Services
915 Broadway, 5th Floor
New York, New York 10010


Ladies and Gentlemen:

        Reference is made to that certain Claims
Administration Agreement dated as of _____ __, 2000 (the
"Agreement") between Toshiba America Information Systems, Inc.
and Citibank, N.A. (the "Claims Administrator"). Capitalized
terms used herein and not defined shall have the meanings
assigned to such terms in the Agreement or in the Settlement
Agreement described therein.

        This engagement letter (this "Letter Agreement")
hereby sets forth the terms and conditions under which ACS
Financial & Securities Services (the "Agent") shall act as agent
on behalf of the Claims Administrator for the performance of the
functions, duties, undertakings and responsibilities of the
Claims Administrator under the terms of the Agreement.

        1.    Appointment.  The Claims Administrator hereby
appoints the Agent, and the Agent hereby agrees to act, as agent
for the Claims Administrator to perform all of the functions,
duties, obligations, undertakings and responsibilities of the
Claims Administrator pursuant to the Agreement.

        2.    Services to be Performed.  The Agent shall
perform all of the functions, duties, obligations, undertakings
and responsibilities of the Claims Administrator set forth in
the Agreement on behalf of and as agent of the Claims
Administrator. The Agent shall be bound by all of the terms and
conditions set forth in the Agreement and the Settlement
Agreement and further agrees to be bound by the standard of care
required of the Claims Administrator in the Agreement.  The
Agent acknowledges that it has received and reviewed a copy of
the Agreement and the Settlement Agreement and is fully familiar
with the terms and conditions set forth in the Agreement and the

Exhibit 2A

170

Settlement Agreement and the scope of its functions, duties, obligations, undertakings and responsibilities thereunder.  The Agent hereby represents and warrants to the Claims Administrator that it is currently in the business of performing the functions, duties and obligations of the same type as those subject to the Agreement and is authorized and willing and able to provide such services in accordance with the terms and conditions of the Agreement.

     3.  <u>Compensation</u>.  Notwithstanding anything to the contrary contained in the Agreement, as compensation for its activities and obligations under the Agreement, the Agent shall be entitled to receive the fees set forth on Schedule I attached hereto (the "Agent Fees").  The Agent Fees shall be payable in accordance with Schedule I commencing with the execution of this Letter Agreement.  The Agent shall be required to pay all costs and expenses (including all legal fees and expenses) incurred by it in connection with its activities with respect to the Agreement and shall not be entitled to reimbursement therefor. The Agent Fees shall be payable solely to the extent that funds are received by the Claims Administrator under the terms of the Agreement, and the Claims Administrator shall have no liability for any shortfall between such amounts so received and the amount of the Agent Fees to which the Agent is entitled hereunder.

     4.  <u>Indemnification</u>.  The Agent hereby agrees to indemnify and hold the Claims Administrator and its affiliates, directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever ("Losses") incurred by reason of any action by or omission of the Agent with respect to or in connection with the performance of its obligations under the Agreement or hereunder or under any documents, instruments or agreements contemplated thereby or hereby, <u>provided</u>, <u>however</u>, that the Agent shall have no obligation to indemnify the Claims Administrator hereunder for any Losses incurred by the Claims Administrator by reason of its breach of contract, actual fraud, negligence, gross negligence or willful misconduct.  The obligations of the Agent under this paragraph 4 shall survive the termination of this Letter Agreement and the Agreement.

     5.  <u>Term</u>.  The term of this Letter Agreement shall continue and remain in full force and effect until the satisfaction and discharge of the Agreement pursuant to the

terms thereof.  Notwithstanding the foregoing or anything in the
Agreement to the contrary, the Claims Administrator may
terminate this Letter Agreement in its discretion upon 30 days
prior written notice to the Agent, subject to the approval of
the Court.  The Agent may at any time during the term of this
Letter Agreement resign by giving 60 days prior written notice
to the Claims Administrator thereof provided however that in no
event shall any such resignation be effective unless the Agent
shall have provided the Claims Administrator with a successor
which is acceptable to the Claims Administrator and the Court
and such successor shall agree, by written instrument delivered
to the Claims Administrator, acceptable to it, to be bound by
all of the terms and conditions of this Letter Agreement.

          6.  <u>Access to Records</u>.  The Agent shall afford to the
Claims Administrator and the Settlement Class Counsel, and their
respective agents, employees, accountants and counsel, access at
reasonable times during normal business hours to all books,
records, documents and other information concerning the conduct
and performance of the Agent of its obligations hereunder and
with respect to the Agreement.

          7.  <u>Confidentiality</u>.  The existence of this Letter
Agreement and the transactions contemplated hereby shall be
regarded as confidential by the Agent, and its directors,
officers, employees and agents, and shall not be disclosed to
any third parties provided however that nothing herein to the
contrary shall be construed to prohibit disclosure of any and
all information (i) if required to do so by applicable statute,
law, rule or regulation, (ii) to any government agency or
regulatory body, (iii) pursuant to any subpoena, civil
investigative demand or similar demand or request of any court,
regulatory authority, arbitrator or arbitration or (iv) to any
affiliate, independent or internal auditor, agent, employee or
attorney of the Agent or the Claims Administrator having a need
to know the same, provided that the Agent or the Claims
Administrator advises such recipient of the confidential nature
of the information being disclosed.

          8.  <u>Assignment; Successors and Assigns</u>.  This Letter
Agreement shall not be assignable by the Agent without the
written consent of the Claims Administrator and the Court.  This
Letter Agreement is intended for the exclusive benefit of the
Claims Administrator and the Agent and their respective
successors and permitted assigns, and nothing herein shall be
construed as creating any rights or benefits in or to any third
party.

9.    <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.  This Letter Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without regard to the conflict of laws provisions of such State.  Each of the Claims Administrator and the Agent hereby submits to the exclusive jurisdiction of the United States District Courts for the Eastern District of Texas, Beaumont Division for purposes of all legal proceedings arising out of or relating to this Letter Agreement or the transactions contemplated hereby.  The Agent irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereinafter have to the laying of the venue of any such proceeding brought in the Court and any claim that any such proceeding brought in the Court has been brought in an inconvenient forum.  Each of the Claims Administrator and the Agent hereby irrevocably waives, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Letter Agreement or the transactions contemplated hereby.  The Agent hereby agrees to submit to the continuing jurisdiction of the Court.

10.    <u>The Agent</u>.  The Agent shall be obligated only for the performance of such duties as are specifically set forth in this Agreement and no implied covenants or duties shall be read into this Agreement against the Agent.  The Agent may conclusively rely and shall be fully protected in acting or refraining from acting on any written notice, request, waiver, consent or instrument believed by it to be genuine and to have been signed or presented by an authorized signatory of the Claims Administrator pursuant to this Agreement.  The Agent shall not be liable for any error of judgment made in good faith except for its own breach of contract, actual fraud, negligence, gross negligence, willful misconduct or bad faith.  None of the provisions of this Agreement shall require the Agent to risk or except its own funds.

　　　　If the foregoing sets forth your understanding of the terms of the engagement described herein please acknowledge your agreement by executing a copy of this Letter Agreement and delivering it to the undersigned.  This Letter Agreement may be countersigned in any number of counterparts, each executed counterpart constituting an original but together only one instrument.  Facsimile signatures shall be deemed to be original signatures for all purposes hereunder.

　　　　　　　　　　　　　　　CITIBANK, N.A., as
　　　　　　　　　　　　　　　Claims Administrator


　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　Name:
　　　　　　　　　　　　　　Title:


ACKNOWLEDGED AND AGREED:

ACS FINANCIAL & SECURITIES SERVICES,
　　　as Agent


By:_____
　　Name:
　　Title:

Schedule I

Agent Fees

<u>Fee Schedule</u>

01463.094 #140174

**ATTENTION: ANY PERSON ( INDIVIDUAL, BUSINESS, GOVERNMENT OR OTHER ENTITY) IN THE UNITED STATES THAT OWNS OR LEASES A TOSHIBA LAPTOP OR NOTEBOOK COMPUTER**

**YOU MAY BE ENTITLED TO CASH, COUPONS AND OTHER BENEFITS BECAUSE OF THE SETTLEMENT OF A CLASS ACTION LAWSUIT**

**THE COURT HAS APPROVED THE SETTLEMENT AND YOU NEED TO MAKE YOUR CLAIM NOW**

## The Settlement

A class action lawsuit has been settled in the U.S. District Court for the Eastern District of Texas, Beaumont Division.  This class action claimed that Toshiba acted improperly in various ways regarding the floppy disk controller contained in the Toshiba laptop and notebook computers.  Toshiba denied the allegations and asserted numerous affirmative defenses.  The Court has approved a settlement giving rights to owners and lessors of 5,000,000 Toshiba laptop or notebook computers, and dismissing with prejudice the claims against Toshiba.

## Do You Qualify For Benefits From This Settlement?

**Yes**, if you (a person, business, government or other legal entity) own or lease any model of Toshiba laptop or notebook computer manufactured on or after January 1, 1985 that was sold or distributed by Toshiba America Information Systems, inc. ("TAIS") which has a floppy disk drive or floppy disk controller.

**No**, if you purchased or leased a new Toshiba laptop or notebook computer after November 8, 1999, that has a serial number ending in the letter "U;" or if you purchased or leased a Toshiba Libretto computer, since it does not contain internal floppy disk drives or internal floppy disk controllers.

Look on the bottom of the outside case of your Toshiba Laptop or Notebook Computer for this information.

## Summary of Settlement

There are three different categories of benefits contained in the Settlement.

**Category One.**  If you own a Toshiba laptop or notebook computer that was purchased new **on or after March 5, 1998,** you are eligible to receive the following benefits for **each** such computer:

1. Cash in an amount up to $443.21 depending upon when you bought your computer; **and**
2. All the benefits described in Category Two below.

Exhibit 3

**Category Two.** If you own a Toshiba laptop or notebook computer that was under warranty (registered or not) **at any time on or after March 5, 1999,** you are eligible to receive the following benefits for **each** such computer:

1. A software patch downloaded from www.computers.toshiba.com, or mailed to you on disk if you do not have access to the internet
2. If you are dissatisfied with the software patch, you will be entitled to your choice of one of the following hardware alternatives:
    a. An external PCMCIA floppy disk drive that bypasses the internal floppy disk controller
    
    **-or-**
    
    b. A replacement of the floppy disk controller chip in your Toshiba laptop or notebook computer if you comply with the necessary shipping requirements

3. **In addition**, you will receive an electronic coupon that can be used to purchase any Toshiba computer product (batteries, extra memory, carrying cases, new laptop computers, etc.) distributed by TAIS. The electronic coupon will be valued at $225 if you choose to use the software patch. The electronic coupon will be valued at $200 if you choose the external PCMCIA drive or the floppy disk controller replacement. The electronic coupons can be used by anyone and can be assigned by you to someone else. The value of multiple electronic coupons can be combined on a single electronic coupon.

**Category Three.** If you own a Toshiba laptop or notebook computer for which the warranty expired **before March 5, 1999,** you are eligible to receive the following benefits for **each** computer:

1. A solution for the floppy disk controller condition in the form of a software patch downloaded from www.computers.toshiba.com, or mailed to you on disk if you do not have access to the internet

2. **In addition**, you will receive an electronic coupon that can be used to purchase any Toshiba computer product (including batteries, extra memory, carrying case, new laptop computers, etc.) distributed by TAIS. This electronic coupon will have a value of $100. The electronic coupon can be used by anyone and the value of multiple electronic coupons can be combined on a single electronic coupon.

**What Should I Do To Claim My Benefits?**

By **June 12, 2000**, you *must* obtain, complete and return a Claim Form to be eligible for these remedies.  Claim Forms and more information about the settlement packages may be obtained by either:

**1) Phone:**
Call the Claims Administrator at **1-888-353-8138** or Settlement Class Counsel at **1-888-353-8139**

**-or-**

**2) Mail:**
Send a written request including your name and mailing address by regular mail to **FDC Class Litigation Claims Administration, P.O. Box 9344, Garden City, NY 11530-9344**

**-or-**

**3) Internet:**
Retrieve the Claim Form and information from the internet website maintained by Settlement Class Counsel at **www.fdc-class-settlement.com** -or- maintained by Toshiba at **www.computers.toshiba.com**

**Do Not Contact The Court Or The Clerk's Office For Information.**


**If I Already Sent In a Claim Form, Should I Send In Another Claim Form?**

**No.**  You need to submit only one Claim Form covering each Toshiba Laptop or Notebook Computer you own.  Please do not send in more than one Claim Form per computer.

**What If I Don't Send In a Claim From by June 12, 2000?**

You will be losing valuable rights.  You will not receive the cash, electronic coupons, or other benefits that might have been rightfully yours to claim.

## TOSHIBA CLASS ACTION SETTLEMENT CLAIM FORM

### INSTRUCTIONS

**It is important to read and follow these instructions carefully.  Failure to follow the instructions could result in losing benefits to which you would otherwise be entitled.**

**1) If you have not already filed a claim form for benefits under this Toshiba Class Action Settlement,** in order to receive your benefits, you **must** complete and mail the attached Claim Form **postmarked on or before June 12, 2000** to:

> **FDC Class Settlement Claims Administration**
> **P.O. Box 9344**
> **Garden City, New York  11530-9344**

**2)** If you **do not** return a claim form postmarked by **June 12, 2000**, your claim will be **rejected** and you will have **waived all rights** to receive any of the settlement benefits.

**3)** Unless you requested exclusion from the Settlement Class, you are bound by the terms of the Settlement whether or not you return a Claim Form.

**4) Leased Computers:** If you leased a Toshiba laptop or notebook computer, your status as a Settlement Class Member is based upon your lease agreement.

**5) Model Number and Serial Number**: The model number and serial number required for completing the Claim Form are located on a label on the bottom of your computer.  Your Claim will not be honored if the model number and serial number are missing or incorrect.  Note that the product name (i.e., Satellite 2545, Portege 7020, Tecra 8000, etc.) is not the same as the model number.

**6) Proof of Purchase**: A Proof of Purchase is also required for completing the Claim Form if you are eligible for the Cash Remedy described in Section C.  The Claims Administrator will consider any of the following as satisfactory Proof of Purchase: a photograph or photocopy of the bottom of the Toshiba laptop or notebook computer clearly and legibly showing the model number and serial number of the computer; registration on or appearance in Toshiba's warranty, support, or service records; a copy of a receipt; a negotiated check; a bank copy or bank generated record of a negotiated check; a credit card bill or receipt evidencing the purchase of a Toshiba laptop or notebook computer; invoices; filled purchase orders; and sworn statements from Toshiba's representatives that Toshiba's warranty, support, sales or service records establish that you are entitled to the number and type of Per Unit Settlement Packages (approved by Settlement Class Counsel).

**7) Photograph or Photocopy of the Bottom of the Computer**:  If you do not attach one of the other types of Proof of Purchase, you must attach a photograph or photocopy of the bottom of the Toshiba laptop or notebook computer that clearly and legibly shows the model number and serial number of the computer.

**8) Multiple Purchases:** If you purchased or leased **more than one** Toshiba laptop or notebook computer, **you do not have to fill out a separate Claim Form for each computer**. Instead, you may **submit one Claim Form with an attachment** that lists all the information requested in Section B of the Claim Form, and, if required, "Proof of Purchase" for each computer.  You may also use a copy of the Claim Form for each claim with each different model and serial number listed.

**9) Questions:** If you have questions about how to complete the following Claim Form information, contact the FDC Settlement Class Counsel at **1-888-353-8138 or 1-888-353-8139** or visit **www.fdc-class-settlement.com.**

Exhibit 4

179

# TOSHIBA CLASS ACTION SETTLEMENT CLAIM FORM

**COMPLETE EACH OF THE FOLLOWING SECTIONS (A-D) AND RETURN BY JUNE 12, 2000, TO:** FDC Class Settlement, Claims Administration, P.O. Box 9344, Garden City, N.Y. 11530-9344

**SECTION A:    CLAIMANT INFORMATION**          *Please print clearly*

_____          _____
Last Name                                                    First Name, Middle Initial

_____
Company Name (if Computer(s) Purchased or Leased for business use)

_____
Street Address                      (Apartment Number, if applicable)

_____          (____)_____-_____
City                    State      Zip Code        Daytime Phone Number

**SECTION B:   TOSHIBA LAPTOP OR NOTEBOOK COMPUTER PURCHASE OR LEASE INFORMATION**
*Please print clearly*

_____
Model Number of Toshiba Laptop or Notebook Computer (located on the bottom of your computer)

_____
Date of Computer Purchase or Lease (Month, Day (if known), Year)

_____
Serial Number (located on the bottom of your computer)

_____
Product Name (i.e, Satellite 2545, Portege 7020, Tecra 8000, etc.)

**SECTION C: PER UNIT SETTLEMENT PACKAGES**

Unless you requested to be excluded from the Settlement Class, **you are entitled to receive one or more of the following Per Unit Settlement Packages for each Toshiba laptop or notebook computer you own**, depending upon when you purchased or leased your Toshiba laptop or notebook computer.

**1.  THE CASH REMEDY**: If you bought a new Toshiba laptop or notebook computer after March 5, 1998, you can receive a Cash Remedy of $210 to $443.10 in cash for each computer.  In order to receive the Cash Remedy you **must** submit a "Proof of Purchase" with this Claim Form.  For additional information, contact the FDC Settlement Class Counsel at **1-888-353-8138 or 1-888-353-8139** or visit **www.fdc-class-settlement.com**.

**2.  THE WARRANTY REMEDIES**: If your Toshiba laptop or notebook computer was under warranty by Toshiba as of March 5, 1999 or later, you can receive a Warranty Remedy consisting of a software or hardware solution to the floppy disk controller condition and an electronic coupon with a value up to $225 toward the purchase of any Toshiba computer product.  *Your Toshiba laptop or notebook computer may be under warranty even if you did not register it.*  See Section 2.3 of the November 10, 1999 Class Notice for instructions about how to determine whether your Computer was under warranty on or after March 5, 1999.  For additional information, contact the FDC Settlement Class Counsel at **1-888-353-8138 or 1-888-353-8139** or visit **www.fdc-class-settlement.com**.

**If you do not have access to the Internet**, and you want the Software Patch to be sent to you on a floppy disk (free of charge), please **check #4** and complete the information requested.

When the electronic coupon is mailed to you, you will also receive instructions about how to claim the hardware replacement alternative in the event that you are dissatisfied with the Software Patch.  If you have already downloaded and evaluated the Software Patch and are dissatisfied with the patch, indicate the reason you are dissatisfied and sign

180

immediately below, and you will be sent the materials you need to claim the hardware solution now. If you choose the hardware replacement now, you will receive your $200 electronic coupon with the hardware replacement materials. If you determine that you are dissatisfied with the Software Patch after you have received the $225 electronic coupon, you will need to exchange your $225 electronic coupon for a $200 electronic coupon. If you no longer have the entire $225 coupon, you will be instructed to send the Claims Administrator a check for $25, if and when you claim your hardware replacement. If you are satisfied with the Software Patch and do not request the hardware replacement you will receive and get to keep the $225 electronic coupon.

I declare under oath that the reason for dissatisfaction with the

Software Patch is: _____

Signature: _____        Date: _____


**3. THE EQUITABLE REMEDY:** If you own a Toshiba laptop or notebook computer but do not qualify for either of the above remedies, you are still entitled to a Software Patch for the floppy disk controller condition and an electronic coupon with a value of $100 toward the purchase of any Toshiba computer product. For additional information, contact the FDC Settlement Class Counsel at **1-888-353-8138 or 1-888-353-8139** or visit *www.fdc-class-settlement.com*.

If you do not have access to the Internet, and you want the Software Patch to be sent to you on a floppy disk (free of charge), please **check #4** and complete the information requested.

**4. REQUEST FOR SOFTWARE PATCH ON DISK:**

_____ Please send me a Software Patch (free of charge) on a floppy disk to the address indicated in Part A of this Claim Form, since I do not have access to the Internet.

I use the following computer operating systems on my Toshiba laptop or notebook computer:

___Microsoft®Windows®3.x        ___Microsoft®Windows®2000    ___Linux 2.0
___Microsoft®Windows®95         ___DOS 5.x                   ___Linux 2.2
___Microsoft®Windows®98         ___DOS 6.2
___Microsoft®Windows®NT4.0      ___FreeBSD 3.x

**REMINDER: ANY CASH, COUPONS, AND HARDWARE ALTERNATIVES WILL NOT BE SENT TO YOU UNTIL AFTER JUNE 12, 2000.**


**SECTION D: CERTIFICATION UNDER PENALTY OF PERJURY**

**I declare under penalty of perjury that:**

1. I lawfully own (or I am an authorized representative of the lawful owner of) the Toshiba laptop or notebook computer(s) listed in this Claim Form.
2. To the best of my knowledge, the Toshiba laptop or notebook computer(s) was/were distributed or sold, directly or indirectly, by Toshiba America Information Systems, Inc.; or was/were originally purchased in the United States of America.
3. The Toshiba laptop or notebook computer listed in or attached to this Claim Form was bought or leased on or about the dates indicated in or attached to this Claim Form.
4. I am eligible to request one or more of the Per Unit Settlement Package(s) relating to the Toshiba laptop or notebook computer(s) covered by this Claim Form.
5. The documentation submitted with this Claim Form are true and correct copies of the originals.
6. I have not requested and will not request exclusion from the Settlement Class for the Toshiba laptop or notebook computers listed in this Claim Form, and I have not previously filed a Claim Form with respect to the Toshiba laptop or notebook computer(s) listed in this Claim Form.
7. I have read and understand the contents of this Claim Form.
8. The statements made in the Claim Form are true and correct.
9. I am over the age of eighteen (18) and am of sound mind.

_____        _____        _____
Signature                          Printed name                     Date

181

**DEPOSIT AGREEMENT**

**among**

**SETTLEMENT CLASS**
**TOSHIBA CORPORATION**

**and**

**CITIBANK, N.A.**

**Dated as of January ___, 2000**

01463.094 #147871(v.1/27/00SK)

Exhibit 5

182

**DEPOSIT AGREEMENT** made this _____ day of January, 2000 (the "Deposit Agreement") by and among CITIBANK, N.A. (the "Bank"), the Settlement Class Counsel ("Settlement Class Counsel") acting pursuant to court order for the benefit of and as attorneys for those members of the Settlement Class who are entitled to the Cash Remedy under the Settlement Agreement and TOSHIBA CORPORATION (herein called "Toshiba" or the "Depositor").

WHEREAS, Citibank, N.A. has been requested to act as claims administrator (in such capacity, the "Claims Administrator") on behalf of Toshiba Corporation and the Settlement Class with respect to that certain Settlement Agreement and Mutual Release executed on or about October 28, 1999, as amended (the "Settlement Agreement"), relating to the claims administration of the class action described therein (United States District Court for the Eastern District of Texas, Beaumont Division (the "Court"), No.:1:99CV0120) (the "Action");

Whereas, capitalized terms used in this Deposit Agreement have the same meaning as those capitalized terms have in the Settlement Agreement unless otherwise defined herein, as provided in Paragraph 30 of the Terms and Conditions herein.

WHEREAS, pursuant to §7.2.1 of the Settlement Agreement, Toshiba has elected to deposit the full amount of the $597.5 million Guaranteed Fund (as defined therein) in a bank mutually acceptable to the parties to the Settlement Agreement and approved by the Court;

WHEREAS, Toshiba desires to have the Claims Administrator perform certain duties and to provide certain services consistent with the terms of the Settlement Agreement;

WHEREAS, Citibank, N.A. has been requested to hold the Guaranteed Fund hereunder as the sole property of and for the exclusive benefit of the Settlement Class Members entitled to the Cash Remedy under the Settlement Agreement; and

WHEREAS, Citibank, N.A. has the capacity to provide the services required hereby and is willing to perform such services for Depositor and the Settlement Class on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## I.    INSTRUCTIONS:

**1.    Deposit**

183

The funds deposited with the Bank by the Depositor, as ordered by the Court and for the exclusive benefit of the Settlement Class Members entitled to the Cash Remedy under the Settlement Agreement, is Five-Hundred Ninety-Seven Million Five-Hundred Thousand Dollars ($597,500,000.00) in immediately available United States cash, being the amount this date deposited by Toshiba under the Settlement Agreement for the account of and as the sole property of and for the exclusive benefit of the members of the Settlement Class who are entitled to the Cash Remedy under the Settlement Agreement (the "Guaranteed Fund").

The foregoing cash plus all interest, income, dividends and other distributions and payments thereon (collectively the "Distributions") received by the Bank, less any property and/or funds distributed or paid in accordance with this Deposit Agreement, are collectively referred to herein as the "Deposit". The Bank shall have no duty to solicit the Deposit.

The Deposit is held in the name of and for the exclusive benefit of and as the sole and exclusive property of the Settlement Class Members who are entitled to the Cash Remedy under the Settlement Agreement. Without limitation, the Deposit is not the property of Toshiba and Toshiba has no direct or indirect interest therein. Conditioned on Toshiba not being in breach of its obligations to the Settlement Class Members and Settlement Class Counsel and there being no diminution in the Guaranteed Fund (other than for proper payment of allowed claims to members of the Settlement Class who are entitled to the Cash Remedy under the Settlement Agreement), and after transfer of the balance of the Guaranteed Fund to the Charity, Toshiba will take title to the interest and income earned on the Deposit (in excess of any interest or income necessary to restore and maintain the Guaranteed Fund less proper payments of allowed claims to members of the Settlement Class who are entitled to the Cash Remedy under the Settlement Agreement) on the Closing Date specified by the Court in the Final Judgment (the "Final Judgment") (a copy of which is attached as Exhibit A).

2.    **Investment of Deposit**

The Bank shall, upon the written direction of Toshiba, invest or reinvest the Deposit, without distinction between principal and income, in one of the following investments: (i) certificates of deposit issued by Citibank, N.A., (ii) time deposits issued by Citibank, N.A., and (iii) obligations issued by, or the principal of and interest on which is fully guaranteed by, the United States of America (each such investment, a "Permitted Investment"). The choice of the investment (among these three Permitted Investments) shall be made solely by Toshiba, but may not be changed without prior approval of the Court. Any such Permitted Investment must mature no later than the date which is ten (10) days after the Final Claims Bar Date as designated by the Court in the Final Judgment. Upon the maturity of such Permitted Investment, the Bank shall, pending distribution pursuant to the terms hereof and the Settlement Agreement, invest the

184

Guaranteed Fund and all interest income accrued thereon in the Citibank Money Market Deposit Account. However, after the Final Claims Bar Date and after the Depositor, Settlement Class Counsel, and the Claims Administrator agree that all Settlement Class Members who are entitled to the Cash Remedy under the Settlement Agreement have received their Cash Remedy payments, Toshiba may reinvest the remaining principal in a Permitted Investment with a maturity date of no later than the Closing Date as designated by the Court in the Final Judgment. Interest and income earned on the Deposit shall first be applied to restore any loss or diminution in the Guaranteed Fund that results from any event, condition, act or omission other than proper payments of allowed claims to members of the Settlement Class who are entitled to the Cash Remedy under the Settlement Agreement. Any excess interest or income earned conditionally shall be transferred to the Depositor after the Closing Date as provided herein.

The Bank shall have no obligation to invest or reinvest the Deposit if deposited with the Bank after 11:00 a.m. (E.S.T.) on such day of deposit. Instructions received after 11:00 a.m.(E.S.T.) will be treated as if received on the following business day.

The Bank shall have the power to sell or liquidate the foregoing investments whenever the Bank shall be required to release the Deposit pursuant to the terms hereof. Requests (or instructions) received after 11:00 a.m. (E.S.T.) by the Bank to liquidate the Deposit will be treated as if received on the following business day. Any interest or other income received on such investment and reinvestment of the Deposit shall become part of the Deposit. If a selection is not made, the Deposit shall remain uninvested with no liability for interest therein. It is agreed and understood that the entity serving as the Bank may earn fees associated with the investments outlined above in accordance with the terms of such investments; provided that Toshiba is solely liable for any such fees and such fees and shall not be a liability of the Settlement Class, Settlement Class Counsel or the Court, nor be paid or reimbursed from, nor in any foreseen or unforeseen event deplete or reduce or be a charge, lien or encumbrance on, the Deposit or Guaranteed Fund, even if unpaid by Toshiba.

Provided that, Toshiba is responsible for assuring that the Deposit is invested in investments with appropriate maturities and liquidity so that the Deposit may be liquidated without loss of principal or penalty as and when required to pay claims of the Settlement Class Members as and when required by the Claims Administrator in order to timely pay allowed Cash Remedy claims under the Settlement Agreement. The Bank will provide Settlement Class Counsel with such reports and information as they may reasonably request in order to monitor compliance with this paragraph. If Toshiba does not comply with the investment directions contained in the first paragraph of this section , above, the Court may override Toshiba's investment directions by order entered after motion and notice to Toshiba's counsel, Fulbright & Jaworski, L.L.P.

185

The Bank shall have no liability for any loss of interest arising from or related to any such investment other than in accordance with the terms of this Agreement.

The Bank is liable to the Settlement Class Members who are entitled to the Cash Remedy under the Settlement Agreement for the Bank's investment of the Deposit into any investment other than those permitted by this Agreement, and the Bank's transfer of any amounts from the Deposit except as and when permitted herein, and the Bank's transfer of funds to Toshiba except after payment of any remainder of the Deposit to the Charity as and when and for the purposes herein permitted, and any other breaches by the Bank of its express obligations under this Agreement (herein called the "Bank's Liability To Settlement Class"). The Deposit (now existing and as may exist in the future) is subject to the first, prior and superior trust and judicial lien imposed in the exclusive favor of the Settlement Class Members entitled to the Cash Remedy under the Settlement Agreement by the Final Judgment . Without limitation, the Bank waives any security interest, lien, encumbrance, trust, charge, and right of setoff which it or any of its affiliates may now or hereafter have or claim subject to the further provisions of this Agreement relating to interest earned in, on, or with respect to the remaining part of the Deposit that is transferred from the Deposit for the account of the Depositor after payment of any remainder of the Guaranteed Fund to the Charity.

Without limiting the foregoing, the Bank, Toshiba, and the Settlement Class Counsel agree that it, they and the Deposit are and shall remain subject to the continuing and exclusive authority and jurisdiction of the Court and subject to the Final Judgment.

3.     **Distribution of Deposit**

The Bank is directed to hold and distribute the Deposit in accordance with the directions of the Court. As provided in the Final Judgment, the Court has authorized the Claims Administrator pursuant to the Claims Administration Agreement and with the prior written acknowledgement of the Settlement Class Counsel to so instruct the Bank for the purpose of paying allowed Cash Remedy claims to those Settlement Class Members entitled to same; provided however that the Court may revoke such authority at any time, such revocation to be effective upon receipt of written notice by the Bank.

4.     **Addresses and Account Information**

Notices, instructions and other communications shall be sent to the Bank, the Depositor, the Court and the Settlement Class Counsel as follows:

The Bank:                          Citibank, N.A.

186

111 Wall Street, 5th Floor
New York, New York 10043
Attention:  Global Agency and Trust Services
Telephone No.:        (212) 657-5923
Facsimile No.: (212) 657-

The Depositor:            Toshiba Corporation
                         c/o Fulbright & Jaworski L.L.P.
                         1301 McKinney, Suite 5100
                         Houston, Texas 77010-3095
                         Attention:  Frank G. Jones
                         Telephone No.:        713/651-5151
                         Facsimile No.:        713/651-5246

With a copy to:           Toshiba America Information Systems, Inc.
                         9740 Irvine Blvd.

                         Irvine, California 92618-1697
                         Attention: Ira Wafel, Esq.
                         Facsimile: 949-587-6235

The Court:                United States District Court
                         Eastern District of Texas, Beaumont Division
                         Jack Brooks Federal Building
                         300 Willow Street
                         Beaumont, Texas 77704
                         Attention:      District Clerk

Settlement Class Counsel:  The Reaud Law Firm
                          801 Laurel Street
                          Beaumont, Texas 77701
                          Attention:  Wayne Reaud
                          Telephone No.:        (409) 838-1000
                          Facsimile No.: (409) 833-8236

                          Hubert Oxford III, P.C.
                          3535 Calder, 3rd Floor
                          Beaumont, Texas 77706
                          Attention:  Hubert Oxford III
                          Telephone No.:        (409) 833-9182

Facsimile No.: (409) 833-8819

Orgain, Bell & Tucker, L.L.P.
470 Orleans, 4th Floor
Beaumont, Texas 77701
Attention: Gilbert I. Low/Gary N. Reger
Telephone No.:        (409) 838-6412
Facsimile No.: (409) 838-6959

L. DeWayne Layfield
P.O. Box 3829
Beaumont, Texas 77704-3829
Attention:      DeWayne Layfield
Telephone No.:        (409) 832-1891
Facsimile No.: (409) 832-2156

**5.**     **Distribution of Deposit Upon Termination**

Upon termination of this Deposit Agreement, any portion of the Deposit then held
hereunder shall be distributed in accordance with an order from the Court.

**6.**     **Compensation**

Settlement Class, Settlement Class Counsel and the Court shall have no liability
for any fees or expenses and disbursements incurred in connection with this
Deposit Agreement. Any fees, charges, disbursements, taxes, or other expenses,
shall be paid for the benefit of the Settlement Class and Settlement Class Counsel
by, and as the exclusive and sole liability of, Toshiba all in accordance with that
separate letter agreement between Citibank, N.A. and Toshiba dated December 7,
1999, a true and correct copy of which is attached hereto and incorporated herein
by reference as Exhibit B. Provided that any such fees charges, taxes,
disbursements, or other expenses shall be paid by and be the sole obligation of
Toshiba and shall not be a liability of Settlement Class, Settlement Class Counsel,
or the Court, nor be paid or reimbursed from, nor in any foreseen or unforeseen
event deplete or reduce or be a charge, lien, or encumbrance on, the Deposit or
Guaranteed Fund, even if unpaid by Toshiba.

## II.     TERMS AND CONDITIONS

1.  This Agreement, the Bank, the Deposit, the Guaranteed Fund, and Depositor are
    subject to the authority and exclusive jurisdiction of the Court. The Bank shall
    comply with all orders of the Court and in no event shall have any claim against the
    Settlement Class, Settlement Class Counsel, the Court or the Deposit, for
    reimbursement, compensation, expenses, fees, indemnity, or otherwise.

188

2. This Agreement is for the exclusive benefit of the Settlement Class Members who are entitled to the Cash Remedy under the Settlement Agreement, and their respective permitted successors and assigns, and the Charity that is entitled to any unclaimed Cash Remedy. This Agreement shall not give, either express or implied, any legal or equitable right, remedy, or claim to any other entity or person. The Bank may only disburse the Deposit in a manner consistent with the Settlement Agreement.

3. If at any time the Bank is served with any judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process which in any way affects the Deposit (including but not limited to orders of levy, attachment or garnishment or other forms of levies or injunctions or stays relating to the transfer of the Deposit), the Bank must simultaneously notify Settlement Class Counsel and the Court and shall resist by all available legal means compliance therewith except as may be permitted by order of the Court. Any expenses incurred by the Bank with respect to the foregoing shall be paid by and be the sole obligation of Toshiba and shall not be a liability of Settlement Class, Settlement Class Counsel, the Court or the Deposit nor be paid or reimbursed from, nor in any foreseen or unforeseen event deplete or reduce or be a charge, lien, or encumbrance on, the Guaranteed Fund or Deposit.

4. The Bank shall provide to the Court, Settlement Class Counsel, the Claims Administrator, and the Depositor monthly statements identifying in detail the transactions, transfers and balance of the Deposit and the Guaranteed Fund.

5. At any time the Bank may make such motions to the Court (with service on Settlement Class Counsel and Toshiba Corporation), regarding any matter arising in connection with its duties and obligations hereunder.

6. Notices, instructions or other communications shall be in writing in English and shall be given to the address set forth in the "Addresses" provision herein (or to such other address as may be substituted therefor by written notification to the Bank or the Depositor). Notices to the Bank shall be deemed to be given when actually received by the Bank (Global Agency Trust), unless the Bank refuses delivery or disables its fax machine in which case notice is received when sent. The Bank is authorized to comply with and rely upon any notices, instructions or other communications believed by it to have been sent or given by the Depositor or by a person or persons authorized by the Depositor which is consistent with the terms of this Deposit Agreement and which would not result in a breach of the Bank's Liability To Settlement Class. Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday, or a banking holiday in New York, such time shall be extended to the next day on which the Bank is open for business.

7. The Deposit shall be held by the Bank either directly or through the Federal Reserve/Treasury Book-Entry System for United States and federal agency securities (the "Book-Entry System"), The Depository Trust Company, a clearing agency

registered with the Securities and Exchange Commission ("DTC"), or through any other clearing agency or similar depository (a "Clearing Agency"). The Bank shall have no responsibility and shall not be liable for ascertaining or acting upon any calls, conversions, exchange offers, tenders, interest rates changes, or similar matters relating to securities held at DTC or with any Clearing Agency unless the Bank shall have received actual and timely notice of the same, nor shall the Bank have any responsibility or liability for the actions or omissions to act of the Book-Entry System, DTC or any Clearing Agency. Provided that, the Bank's Liability To Settlement Class is unaffected by this paragraph to the extent it may be asserted as an excuse for avoiding or a defense to the Bank's Liability To Settlement Class.

8. The duties, responsibilities and obligations of the Bank shall be limited to those expressly set forth herein and no duties, responsibilities or obligations shall be inferred or implied. The Bank shall not be subject to, nor required to comply with, any other agreement to which the Depositor is a party, other than the Claims Administration Agreement and the Settlement Agreement, even though reference thereto may be made herein, or to comply with any direction or instruction (other than those contained herein or delivered in accordance with this Deposit Agreement) from the Depositor or an entity acting on its behalf. Provided that, Bank shall be responsible for complying with all applicable orders of the Court.

9. This Deposit Agreement is for the exclusive benefit of the parties hereto and their respective permitted successors and assigns hereunder, and shall not be deemed to give, either express or implied, any legal or equitable right, remedy, or claim to any other entity or person whatsoever except as provided in paragraph 14 hereof with respect to the resignation of the Bank

10. (a) Except for the Bank's Liability To Settlement Class, the Bank shall not be liable for any action taken or omitted or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder in the absence of breach of contract, actual fraud or negligence on its part. In no event shall the Bank be liable (i) for acting in accordance with or relying upon any instruction, notice, demand, certificate or document from the Depositor, Settlement Class Counsel or any entity acting on behalf of the Depositor or the Settlement Class Counsel which is consistent with the terms of this Deposit Agreement and which would not result in a breach of the Bank's Liability To Settlement Class, (ii) for the investment or reinvestment of any cash held by it hereunder, in each case in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its breach of contract, actual fraud or negligence) in the investment or reinvestment of the Deposit, or any loss of interest incident to any such delays, or (iii) for an amount in excess of the value of the Deposit, valued as of the date of deposit, but only to the extent of direct money damages.

(b)   If any fees, expenses or costs incurred by, or any obligations owed to, the Bank or its counsel hereunder are not promptly paid when due, the Bank may reimburse itself therefor from any interest earned and maintained in respect of the Deposit and may sell, convey or otherwise dispose of any investment in respect of the Deposit for such purpose, provided that the balance of the Guaranteed Fund is not used or diminished for such purpose.  The Bank may in its sole discretion withhold from any distribution of any interest earned and maintained in respect of the Deposit an amount it believes would, upon sale or liquidation, produce proceeds equal to any unpaid amounts to which the Bank is entitled to hereunder (provided that the balance of the principal of the Guaranteed Fund is not used or diminished for such purpose) or which are required to maintain or restore the balance of the Guaranteed Fund.  The obligation to use interest and income to restore any loss or diminution of the Guaranteed Fund has priority over the Bank's right to apply same to any unpaid amounts to which the Bank is entitled to hereunder.

(c)   As security for the Guaranteed Fund and Toshiba's obligations to the Settlement Class under this Agreement, Toshiba Corporation hereby pledges, assigns and grants to the Bank and Settlement Class Members entitled to the Cash Remedy under the Settlement Agreement a continuing security interest in, and a lien on, any interest earned in respect of the Deposit. The security interest of the Bank and the Settlement Class Members shall at all times be valid, perfected and enforceable by the Bank and the Settlement Class Members entitled to the Cash Remedy under the Settlement Agreement against Toshiba Corporation and all third parties in accordance with the terms of this Deposit Agreement.  The security interest and lien granted by this paragraph shall be and remain inferior to the lien and trust imposed by the Court in the Final Judgment.

(d)   Except with respect to the Bank's Liability To Settlement Class, the Bank shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of the Bank (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war, or the unavailability of the Federal Reserve Bank wire or facsimile or other wire or communication facility).

(e)   The Bank shall be entitled to rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder which is consistent with the terms of this Deposit Agreement and which would not result in a breach of the Bank's Liability To Settlement Class without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. The Bank may act in reliance upon any instrument or signature believed by it to be genuine which is consistent with the terms of this Deposit Agreement and which would not result in a breach of the Bank's Liability To Settlement Class and may assume that any person purporting to give receipt or advice to make any statement or execute any

document in connection with the provisions hereof has been duly authorized to do so.

11. The Bank shall provide to the Depositor, the Claims Administrator and Settlement Class Counsel monthly statements identifying transactions, transfers or holdings of the Deposit and each such statement shall be deemed to be correct and final upon receipt thereof by the Depositor, the Claims Administrator and Settlement Class Counsel unless the Bank is notified in writing, by the Depositor, the Claims Administrator or Settlement Class Counsel, to the contrary within forty-five (45) business days of the date of receipt of such statement.

12. The Bank shall not be responsible in any respect for the form, execution, validity, value or genuineness of documents or securities deposited hereunder, or for any description therein, or for the identity, authority or rights of persons executing or delivering or purporting to execute or deliver any such document, security or endorsement. The Bank shall not be called upon to advise any party as to the wisdom in selling or retaining or taking or refraining from any action with respect to any securities or other property deposited hereunder.

13. The Depositor shall be liable for and shall reimburse and indemnify the Bank (and any successor Bank) and hold the Bank harmless from and against any and all claims, losses, actions, liabilities, costs, damages or expenses (including reasonable attorneys' fees and expenses) (collectively "Losses") arising from or in connection with its administration of this Agreement, provided, however, that nothing contained herein shall require the Bank to be indemnified for Losses caused by its own gross negligence or own willful misconduct for which the Bank has assumed liability pursuant to preceding subparagraph (a) of paragraph 10 hereof. In addition, when the Bank acts on any information, instructions, communications, (including, but not limited to, communications with respect to the delivery of securities or the wire transfer of funds) sent by telex or facsimile, the Bank, absent gross negligence, shall not be responsible or liable in the event such communication is not an authorized or authentic communication of the Depositor or is not in the form the Depositor sent or intended to send (whether due to fraud, distortion or otherwise). The Depositor shall indemnify the Bank against any loss, liability, claim or expense (including legal fees and expenses) it may incur with its acting in accordance with any such communication. This paragraph shall survive the termination of this Deposit Agreement or the removal of the Bank. Provided that nothing in this paragraph reduces or affects the Bank's Liability To Settlement Class.

14. (a)  The Court may remove the Bank at any time. The Bank may resign at any time by giving the Depositor, the Court and Settlement Class Counsel fifty (50) calendar days' prior written notice thereof.

   (b)  Within fifty (50) calendar days after giving the foregoing notice of removal to the Bank or receiving the foregoing notice of resignation from the Bank, the

-10-

192

Court shall by order give Bank instructions for transferring the remaining balance of the Deposit.

(c) Upon actual delivery of the Deposit in accordance with the order of the Court, the Bank shall have no further duties, responsibilities or obligations hereunder. The foregoing shall not release the Bank from any liability or obligations for acts and omissions prior to delivery of the Deposit.

15. In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Bank hereunder, the Bank may, in its sole discretion, refrain from taking any action other than retain possession of the Deposit, unless the Bank receives written instructions from the Court which eliminates such ambiguity or uncertainty.

16. This Deposit Agreement shall be interpreted, construed, enforced and administered in accordance with the internal substantive laws (and not the choice of law rules) of the State of Texas and is performable in Beaumont, Jefferson County, Texas. The Settlement Class, Toshiba, Settlement Class Counsel, and the Bank hereby submit to the personal jurisdiction of, and each agrees that all proceedings relating hereto shall be brought only in, the Court. The Settlement Class, Settlement Class Counsel, the Depositor, and the Bank each waive personal service of process and consents to service of process by certified or registered mail, return receipt requested, directed to it at the address last specified for notices hereunder, and such service shall be deemed completed ten (10) calendar days after the same is so mailed. Any Court order shall be certified and be accompanied by such other documentation (such as a copy of the docket sheet) requested by the Bank from which the Bank can determine that the order is final and non-appealable. The Bank shall have no obligation to act on such Court order until it has received the documentation reasonably requested and reasonably required for its determination.

17. Toshiba shall pay or reimburse the Bank upon request for any transfer taxes or other federal, state, or local taxes relating to the Deposit and interest or income, whether or not received by Toshiba, thereon incurred in connection herewith and shall indemnify and hold harmless the Depositor, Settlement Class Counsel, and the members of the Settlement Class from any amounts that it is obligated to pay in the way of such taxes. Any payments of income from the Deposit shall be subject to withholding regulations then in force with respect to United States taxes. The Depositor will provide the Bank with appropriate W-9 forms for tax I.D., number certifications, or W-8 forms for non-resident alien certifications. This paragraph shall survive notwithstanding any termination of this Deposit Agreement or the resignation or removal of the Bank.

18. Any such taxes shall be paid by and be the sole obligation of Toshiba Corporation and shall not be a liability of Settlement Class, Settlement Class Counsel, or the Court, nor be paid or reimbursed from, nor in any foreseen or unforeseen event deplete or reduce or be a charge, lien, or encumbrance on, the Guaranteed Fund. This

paragraph shall survive notwithstanding any termination of this Agreement or the transfer of the Deposit to another Bank or the Charity.

19. Except as otherwise permitted herein, this Deposit Agreement may be modified only by a written amendment signed by all the parties hereto and approved by the Court, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged.

20. The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies. The waiver of any right or remedy hereunder shall not preclude the subsequent exercise of such right or remedy.

21. The Bank and the Depositor each hereby represents and warrants (a) that this Deposit Agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation and (b) that the execution, delivery and performance of this Deposit Agreement by it does not and will not violate any applicable law or regulation. Settlement Class Counsel represents and warrants that the Court has authorized and directed them to execute and deliver this Agreement in the capacity herein stated.

22. The invalidity, illegality or unenforceability of any provision of this Deposit Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

23. This Deposit Agreement, the Final Judgment attached as Exhibit A and the Settlement Agreement shall constitute the entire agreement of the parties with respect to the subject matter and supersedes all prior oral or written agreements in regard thereto.

24. This Deposit Agreement shall terminate upon the distribution of the Deposit from the account established hereunder in accordance with a subsequent order of the Court. The provisions of this Deposit Agreement shall survive termination of this Deposit Agreement and/or the resignation or removal of the Bank (or both).

25. Other than notices and communications between the parties and affected persons, notices and communications to the Settlement Class, and pleadings filed with the Court, no printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank, N.A." by name or the rights, powers, or duties of the Bank under this Deposit Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Bank.

26. The headings contained in this Deposit Agreement are for convenience of reference only and shall have no effect on the interpretation or operation hereof.

194

27. This Deposit Agreement may be executed by each of the parties hereto in any number of counterparts, each of which counterpart, when so executed and delivered, shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

28. No party may assign any of its rights or obligations under this Deposit Agreement without the written consent of the other parties. Provided that, Settlement Class Members may freely assign the remedies available to them under the Settlement Agreement.

29. Any corporation into which the Bank may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Bank shall be a party, or any corporation succeeding to the business of the Bank shall be the successor of the Bank hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

30. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

**IN WITNESS WHEREOF**, each of the parties have caused this Deposit Agreement to be executed by a duly authorized officer as of the day and year first written above.

**TOSHIBA CORPORATION,**
**as Depositor**

By: _____
　　　　Name:
　　　　Title:

**CITIBANK, N. A., as the Bank**

By: _____
　　　　Name:
　　　　Title:

**SETTLEMENT CLASS COUNSEL, on behalf of itself and the Settlement Class**

By: _____
　　　　Name:
　　　　Title:

DRAFT 01/27/00 p.m.

Irrevocable Standby Credit
Standby LC No.:
Date of Issue:

BENEFICIARIES:

The Reaud Law Firm
801 Laurel
Beaumont, Texas 77701

Orgain, Bell & Tucker, L.L.P.
470 Orleans
4th Floor
Beaumont, Texas 77701

DeWayne Layfield
P.O. Box 3829
Beaumont, Texas 77704-3829

Hubert Oxford III, P.C.
3535 Calder Av.
3rd Floor
Beaumont, Texas 77704-0150

Dear Sirs:

By order of our client Toshiba Corporation ("Client"), 1-1 Shibura 1-Chome, Minato-Ku, Tokyo 105-8001, Japan, we Citibank, N.A., New York hereby issue our irrevocable Standby Letter of Credit No. _____ in your joint, several, and collective favor, as Beneficiaries, for an amount not to exceed in the aggregate SEVENTY-THREE MILLION SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS AND ZERO/100 ($73,750,000.00), effective from March 10, 2000, and expiring at our office on April 12, 2001 (the "expiry date"). The Beneficiaries of this Letter Of Credit are The Reaud Law Firm, Orgain, Bell & Tucker, L.L.P., Hubert Oxford III, P.C., and DeWayne Layfield, and their respective heirs, successors, trustees, estates, and transfers (jointly, severally and collectively, the "Settlement Class Counsel" or "Beneficiaries").

This Letter of Credit is irrevocable and transferable by any one or more of the Beneficiaries.

In order for Citibank N.A. to comply with the U.S. Treasury and U.S. Department of Commerce regulations, this credit is only transferable at our office.

Funds under this Letter of Credit are available to you against your sight Draft(s) drawn on us, mentioning thereon our Letter of Credit No. _____. Each such draft must be

Exhibit 6

1

197

purportedly signed by at least three of the Settlement Class Counsel and accompanied by the following document(s):

One or more affidavits that state(s) to the effect that, there has been a breach by the Settling Defendants of their obligation to pay the second installment of attorney fees owed under that certain Settlement Agreement And Release approved by the District Court For The Eastern District Of Texas in Case Number 1:99CV0120 and that payment is due, and which designates the financial institution and account to which the funds are to be wired by Issuer for the account of Settlement Class Counsel. It shall not be necessary for the Beneficiaries to present an original of this Letter Of Credit.

Said draft and affidavit(s) must be signed by at least three of the Settlement Class Counsel; provided that an affidavit or draft signed by a person who or which appears to be a Settlement Class Counsel, or a partner, manager, managing partner, or authorized officer of a Settlement Class Counsel, or an heir, executor, trustee, successor, or legal representative of a Settlement Class Counsel shall conclusively be an affidavit signed by the Settlement Class Counsel for which the person signing appears to act and Issuer may not demand evidence of identity or authority beyond that required by applicable law and ISP98 §4.07. Provided that, under Tex. Bus. & Com. Code §5-108(i)(5) Issuer remains liable to Beneficiaries if Issuer pays against documents on which a required signature of the Beneficiaries is forged and the foregoing does not waive, release, or affect Issuer's liability to Beneficiaries under Tex. Bus. & Com. Code §5-108(i)(5) in the event that the Issuer pays against documents on which a required signature of the Beneficiaries is forged.

We hereby undertake and absolutely and unconditionally agree with you to honor, in immediately available U.S. currency, each draft drawn under and in compliance with the terms of this Letter of Credit, if duly presented to the Issuer at [to be filled in with appropriate place for presentation that does not create independent state income tax] together with the documents specified above on or before the stated expiration date of April 12, 2001. The expiration date and time for presentation automatically shall be extended for three (3) business days on which the Issuer is open for business following the ending of any suspension under ISP98 §6.13 or entry of a final nonappeable order by the Court which resolves any dispute in the event of any dispute. Any drawing under this Letter of Credit will be paid from our general funds and not directly or indirectly from funds or collateral deposited with or for our account by the Client or its affiliates, or pledged with or for our account by the Client. This Letter of Credit is not affected by, nor affects nor satisfies, Client's and the other Settling Defendants' primary, joint and several liability to Beneficiaries.

Payment shall be by wire transfer, for the account of all the above named Settlement Class Counsel, of immediately available funds (U.S. currency) to the financial institution and account to be specified in the affidavit(s) that accompanies the sight draft as provided above.

DRAFT 01/27/00 p.m.

This transferable Standby Letter of Credit is transferable in its entirety only, and said transfer shall become effective upon our receipt of (i) the original of this transferable Standby Letter of Credit and any amendments thereto, (ii) our attached transfer application properly completed and signed by the Beneficiaries and (iii) a check payable for ¼ of 1% of the aggregate amount transferred, representing our transfer fee.

This Standby Letter of Credit is subject to the International Standby Practices 1998 (ISP98), ICC Publication No. 590, and as to matters not addressed by the ISP98 or when Texas law conflicts with ISP98, shall be governed by and construed in accordance with the laws of the State of Texas and applicable U.S. Federal Law.

The following disputes and matters are subject to the exclusive authority and jurisdiction of the District Court For The Eastern District Of Texas, Beaumont Division (the "Court") and the exclusive jurisdiction reserved in, and the injunction ordered in, the Final Judgment entered by the Court in that class action styled *Shaw et. al v. Toshiba et. al*, Cause Number 1:99CV0120 pending in the Court; to wit: All disputes arising under or affecting this Letter of Credit affecting or regarding: the Beneficiaries or their rights under this Letter of Credit; or the ability to draw and be timely paid under this Letter of Credit; or an action or threat to enjoin, sequester, attach or otherwise directly or indirectly delay, prevent or affect honor of this Letter of Credit; or an action or threat to prevent or which would affect the unencumbered receipt by Beneficiaries of the proceeds of this Letter Of Credit; or sufficiency of the Beneficiaries' presentation of drafts or documents; or honor or dishonor of this Letter of Credit; or alleged fraud in the underlying transaction or drawing or presentation; an action or threat to declare or determine rights, obligations, liability, or duties under or the terms of this Letter Of Credit. Without limiting the foregoing, the exclusive forum for settling disputes arising out of this Letter Of Credit is the Court. Issuer submits to personal jurisdiction of the Court regarding any and all of the foregoing.

This date Issuer has delivered to Beneficiaries an opinion of outside legal counsel, addressed to and for the benefit of the Beneficiaries, that the person signing this Letter of Credit for Issuer has actual authority to do so and that this Letter of Credit is duly executed and delivered by Issuer and is binding on Issuer and its successors and assigns in accordance with its terms.

{signature block}

199